## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| JASON VOLLMECKE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:23-cv-00644-WBG |
| | ) | |
| v. | ) | |
| | ) | |
| THE SCHOOL DISTRICT OF THE CITY OF | ) | |
| INDEPENDENCE DISTRICT NO. 30 (a/k/a | ) | |
| INDEPENDENCE SCHOOL DISTRICT), | ) | |
| BOARD OF EDUCATION OF INDEPENDENCE | ) | |
| SCHOOL DISTRICT, and | ) | |
| DALE HERL, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## SUGGESTIONS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

## Table of Contents

I.   Introduction ...................................................................................................1

II.   Statement of Facts ..........................................................................................2

   A.   Public Comments Addressed to the Board of Education .................................3

   B.   Dr. Vollmecke's Arrest ...............................................................................5

   C.   Superintendent Herl Bans Dr. Vollmecke from the School District.............................6

III.   Argument ......................................................................................................9

   A.   Standard for Preliminary Injunction ..............................................................9

   B.   A Fair Chance of Prevailing on the Merits of All Three Claims ...................................10

     1.   Defendants' categorical ban of Dr. Vollmecke from all School District property is
not reasonable in light of the purposes served by the limited public forums on the
property (Count I)...................................................................................10

     2.   The Ban operates as a prior restraint in violation of the First Amendment because it
gives unbridled discretion to Superintendent  Herl to grant Dr. Vollmecke permission to
speak or not (Count I)...............................................................................14

     3.   The Ban violates the First Amendment because it was imposed in retaliation for Dr.
Vollmecke's protected speech (Count II)........................................................15

     4.   The Ban violates the Due Process Clause because Dr. Vollmecke had no notice or
opportunity to be heard (Count III). ..............................................................17

   C.   Remaining Dataphase Factors.....................................................................19

   D.   Security ...................................................................................................20

IV.   Conclusion...................................................................................................20

## Table of Authorities

Page(s)

Cases

5:14-CV-140-RP,
   2015 WL 13716013 (W.D. Tex. Sept. 30, 2015) ...................................................13, 14, 18
*Am. C.L. of Missouri Found. v. Lombardi*,
   23 F. Supp. 3d 1055 (W.D. Mo. 2014)...........................................................................14, 17
*Anderson v. Hansen*,
   489 F. Supp. 3d 836 (E.D. Wis. 2020) ...........................................................................17, 19
*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963) .....................................................................................................................14
*Barrett v. Walker Cnty. Sch. Dist.*,
   872 F.3d 1209 (11th Cir. 2017) ..............................................................................................14
*Bowman v. White*,
   444 F.3d 967 (8th Cir. 2006) ....................................................................................................10
*Bukaka, Inc. v. City of Benton*,
   852 F. Supp. 807 (D. Minn. 1993)...........................................................................................20
*City of Lakewood v. Plain Dealer Pub. Co.*,
   486 U.S. 750 (1988) ..................................................................................................................14
*City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rels. Comm'n*,
   429 U.S. 167 (1976) ..................................................................................................................11
*Coffelt v. Omaha Sch. Dist.*,
   309 F. Supp. 3d 629 (W.D. Ark. 2018) ...........................................................................11, 13
*Cyr v. Addison Rutland Supervisory Union*,
   60 F. Supp. 3d 536 (D. Vt. 2014) ....................................................................................... Passim
*D.M. by Bao Xiong v. Minnesota State High Sch. League*,
   917 F.3d 994 (8th Cir. 2019) ......................................................................................................9
*Dakotans for Health v. Anderson*,
   2023 WL 3968218 (D.S.D. June 13, 2023) ...........................................................................20
*Dataphase Sys., Inc. v. C L Sys., Inc.*,
   640 F.2d 109 (8th Cir. 1981) ......................................................................................................9
*Doe v. South Iron R-1 School Dist.*,
   453 F. Supp. 2d 1093 (E.D. Mo. 2006) ..................................................................................20
*Elrod v. Burns*,
   427 U.S. 347 (1976) ..................................................................................................................19
*Francis Howell Sch. Dist.*,
   599 F. Supp 3d.................................................................................................................10, 11
*Free & Fair Election Fund v. Missouri Ethics Comm'n*,
   252 F. Supp. 3d 723 (W.D. Mo. 2017)...................................................................................10
*Green v. Nocciero*,
   676 F.3d 748 (8th Cir. 2012) ....................................................................................................11
*Jacobsen v. Petersen*,
   728 F. Supp. 1415 (D.S.D. 1990) ............................................................................................18
*Johnson v. Perry*,
   859 F.3d 156 (2d Cir. 2017) .....................................................................................................11
*L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, Mo.*,
   673 F.3d 799 (8th Cir. 2012) ....................................................................................................16
*Lane v. Lombardi*,

2012 WL 5873577 (W.D. Mo. Nov. 15, 2012) ...................................................19

*Madsen v. Women's Health Ctr.*,
   512 U.S. 753 (1994) ...................................................................................14

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ...................................................................................18

*McBreairty v. School Board of RSU 22*,
   616 F. Supp. 3d 79 (D. Me. 2022)..............................................................12

*McNeally v. HomeTown Bank*,
   2022 WL 2220922 (D. Minn. June 21, 2022) ...........................................15

*Phelps-Roper v. Nixon*,
   545 F.3d 685 (8th Cir. 2008)......................................................................20

*Planned Parenthood Minn. v. Rounds*,
   530 F.3d 724 (8th Cir. 2008) .......................................................................9

*Rinne v. Camden Cnty.*,
   65 F.4th 378 (8th Cir. 2023) .......................................................................15

*Rinne v. Camden Cnty.*,
   2021 WL 5921465 (W.D. Mo. Nov. 19, 2021) .........................................16

*Rodgers v. Bryant*,
   942 F.3d 451 (8th Cir. 2019) ................................................................9, 19

*Schnekloth v. Deakins*,
   2022 WL 1050380 (W.D. Ark. Apr. 7, 2022) ...........................................11

*Swipies v. Kofka*,
   419 F.3d 709 (8th Cir. 2005) ......................................................................18

*Turning Point USA at Ark. State Univ. v. Rhodes*,
   973 F.3d 868 (8th Cir. 2020) ......................................................................10

*United States v. Playboy Entm't Grp., Inc.*,
   529 U.S. 803 (2000) ...................................................................................10

*Williams v. City of Carl Junction*,
   480 F.3d 871 (8th Cir. 2007) ......................................................................15

*Worthley v. Sch. Comm. of Gloucester*,
   2023 WL 371034 (D. Mass. Jan. 24, 2023).................................................13

*Zeyen v. Pocatello/Chubbuck Sch. Dist. #25*,
   2018 WL 2224053 (D. Idaho May 15, 2018) ...........................................11

# I.     Introduction

Plaintiff Jason Vollmecke is a longtime resident of Independence, Missouri. He is a graduate of Independence School District and a parent of a future student. For years, Dr. Vollmecke has been an active and valued volunteer in the school community. More recently, Dr. Vollmecke has also been a vocal critic of the Board of Education and Superintendent Dale Herl in public Board meetings. He criticized their handling of the COVID-19 pandemic, removal of a book from the school library, failure to address the discrimination lawsuits filed against the District, and proposed move to a four-day school week.

On January 10, 2023, Dr. Vollmecke arrived at a Board meeting to speak during the public comment period. He sent notice that he would a few minutes late—however, the Board had moved past the public comment item on the agenda by the time he entered just a few minutes past the start of the meeting. To avoid interruption, Dr. Vollmecke waited until the end of the meeting to address the Board. When he raised his hand to speak, however, Board members adjourned the meeting. Dr. Vollmecke approached the podium asking to speak and then, after being denied, stated he would simply read his comments for those in the room who wished to listen. After a brief disagreement over whether he had the right to do so, Superintendent Herl had Dr. Vollmecke escorted out of the meeting room and arrested for trespassing. The next day, Superintendent Herl sent a letter to Dr. Vollmecke banning him from "being present at or attending any event on Independence School District property" for one year. Dr. Vollmecke was not given any way to contest or appeal the ban.

The ban of Dr. Vollmecke from school property and events violates his constitutional rights to freedom of speech and due process. A preliminary injunction is necessary to restore his rights while this case proceeds. And as many similar cases demonstrate, Dr. Vollmecke has a fair chance of prevailing on the merits of all his claims. First, open meetings of the Board and District events that are open to the general public are, at least, limited public forums. The

categorical ban of Dr. Vollmecke from school property for entire year is not reasonable in light of the purposes of these limited public forums. Second, the ban is an unlawful prior restraint on Dr. Vollmecke's speech that gives Superintendent Herl complete, unfettered discretion whether to allow Dr. Vollmecke to speak again at Board meetings. Third, the ban was imposed in retaliation for Dr. Vollmecke's criticisms of Defendants. For each of these reasons, the ban violates the First Amendment. Finally, the ban violates the Due Process Clause of the Fourteenth Amendment because Dr. Vollmecke was deprived of his First Amendment rights without notice and without an opportunity to contest the ban.

## II.  Statement of Facts

Plaintiff Jason Vollmecke is a resident of Independence, Missouri. (Exhibit A, Jason Vollmecke Decl. ¶ 3, Sept. 5, 2023.) As a graduate of the School District who is grateful for the education he was provided and a parent of a future student in the district, Dr. Vollmecke is interested in the policies and actions of the School District and Board of Education. (*Id.* ¶ 13.)

As a chiropractic physician and Certified Medical Examiner, Dr. Vollmecke has volunteered his time and medical expertise to assist the District, teachers, and students. (*Id.* ¶¶ 6, 8.) He has been regularly invited to schools within the School District to conduct guest lectures, participate in career counseling, advise students on science projects, provide physicals and scoliosis screenings, and assist with teaching courses. (*Id.* ¶ 9.) He has also been involved in the School District's ISD Academies, one of which offers a science, technology, engineering, and math program ("STEM Academy") for students interested in pursuing careers in the sciences. (*Id.* ¶ 10.) From September 2018 until this year, Dr. Vollmecke served as Chair of the School District's Biomedical Sciences Advisory Committee, which advises the School District's STEM Academy on the curriculum and budgeting. (*Id.* ¶ 11.) In 2018, the School District's annual ISD Academy Awards recognized Dr. Vollmecke as Business Partner of the Year Honoree. (*Id.* ¶ 12.)

2

### A. *Public Comments Addressed to the Board of Education*

In December 2021, Dr. Vollmecke began regularly attending open public meetings of the Board of Education. (*Id.* ¶ 15.) Board meetings are held monthly on the second Tuesday of the month on school property at the School District Central Office. (Exhibit B, Policy G-155-P; Exhibit C, ISD Website, Board Meetings, Aug. 11, 2023.) Board meetings must be open to the public, except when the Board is permitted by law to enter an executive session. (Ex. B, Policy C-135-P, G-155-P; Ex. D, Policy 0410 (prior policy in effect until July 11, 2023).)

Board policy states that the Board is "accountable to the public" by, among other things, serving as "a liaison between the District and the community." (Ex. B, Policy G-100-P.) At each regular meeting, Board Policy provides that "up to thirty minutes will be allotted for public comment." (Ex. B, Policy C-140-P; Ex. D, Policy 0412 (prior policy providing for up to thirty minutes of public comment for District residents and staff who seek to address the Board regarding an item on the meeting agenda).) Individuals who wish to speak at a Board meeting send a notice to the Board and Office of Superintendent of their intent to address the Board by Friday before the meeting. (Ex. B, Policy C-140-P.)

Dr. Vollmecke started raising concerns at Board meetings with the District's approach to COVID-19 and other District actions and policies. (Ex. A ¶ 16.) Deciding to become more active, he filed his candidacy for a seat on the Board of Education in December 2021. (*Id.* ¶ 17.) In an open forum of the candidates, Dr. Vollmecke said he was running for the Board to restore accountability through transparency and communication, to enforce the Board's duty to provide effective oversight of the superintendent, and to eliminate the hostile workplace and fear of retaliation among teachers in the District. (*Id.* ¶ 18.)

While he was not elected to the Board that year, Dr. Vollmecke remained engaged in issues relating to the School District. (*Id.* ¶ 20.) He spoke during the public comment period at a Board meeting on April 12, 2022, telling the Board members that their failure to make

independent evaluations of issues facing the district was dangerous. (*Id.* ¶¶ 21-23.) He showed them a stack of statements from teachers and students describing mistreatment and a hostile work environment, which he stated they either knew about or, if not, they had no idea what was going on in the schools. (*Id.* ¶ 24.) He cited an increase in discrimination lawsuits against the School District since Superintendent Herl took office. (*Id.* ¶ 25.) He pointed to problems with teacher retention, student test scores, and student safety. (*Id.* ¶¶ 26-28.)

On August 9, 2022, Dr. Vollmecke again addressed the Board during the public comment period and criticized the Board's decision to remove a book from elementary school libraries. (*Id.* ¶ 30.) He said the Board's decision was unconstitutional and failed to recognize the challenges of students in the LGBTQI+ community. (*Id.* ¶ 31.) He described the Board's stated justification for the book ban as "asinine" said it "brings into question your ability to make logical decisions for this district." (*Id.* ¶ 32.) Dr. Vollmecke stated: "As a board, you failed to show due diligence, insight and basic cultural competency in what amounts to be an embarrassingly ignorant decision." (*Id.* ¶ 34.)

Before a Board meeting on September 13, 2022, Dr. Vollmecke told Superintendent Herl that he held him responsible for the death of a school nurse who contracted COVID while working at the school. (*Id.* ¶ 35.)

In late 2022, Dr. Vollmecke learned of the School District's plans to move to a four-day school week. (*Id.* ¶ 36.) The day of the last Board meeting, December 13, 2022, he emailed Superintendent Herl and the Board members pointed questions and comments about the proposed move. (Exhibit F, Jason Vollmecke Email to Board, Dec. 13, 2022.) He said teachers were leaving "to get away from our current superintendent" and that low survey responses were due to "fear of retaliation" and the belief that the Board will "just do whatever [Superintendent Herl] wants anyway." (*Id.*)

4

Dr. Vollmecke was then scheduled to address the Board at the next meeting, on January 10, 2023. (Ex. A ¶ 42.)

## B. Dr. Vollmecke's Arrest

On his way to the January 10, 2023 meeting, Dr. Vollmecke was delayed leaving his workplace and not able to arrive by the 6:00 p.m. start time. (*Id.* ¶ 43.) The public comment period was listed as the second item on the agenda for that night's meeting. (*Id.* ¶ 44.) Because he knew the public comment period was typically early in the meeting, Dr. Vollmecke notified others who were in attendance that he was running late and asked them to advise the Board that he was on his way. (*Id.* ¶ 45.)

Dr. Vollmecke arrived at about 6:03 p.m. and entered the Board meeting room at about 6:04 p.m. (*Id.* ¶¶ 47, 48.) As he entered, the Board had moved to other agenda items. (*Id.* ¶ 49.) Dr. Vollmecke did not want to interrupt, so he sat down with other members of the public and waited to address the Board. (*Id.* ¶ 49.)

When a member of the Board made a motion to adjourn the open meeting and move into closed session, Dr. Vollmecke raised his hand seeking to address his comments to the Board and walked to the podium. (*Id.* ¶ 50.) Members of the public remained seated in the audience, as the Board typically took a short break between the open and closed portions of its meetings. (*Id.* ¶ 51; Exhibit K, Wendy Baird Decl. ¶ 9, Aug. 31, 2023; Exhibit L, Brent Clark Decl. ¶¶ 8-10, Aug. 28, 2023.)

Several members of the Board and School District staff began speaking to Dr. Vollmecke at once, saying the Board was adjourned. (Ex. A ¶ 52.) Dr. Vollmecke responded that he had given notice of his intent to address the Board. (*Id.* ¶ 53.) Members of the Board said they had waited for him at the beginning of the meeting, but he would no longer be allowed to give public comments at that meeting. (*Id.* ¶ 54; Exhibit G, Wendy Baird Video, Jan. 10,

2023.) Either Superintendent Herl or a member of the Board stated, "We're adjourned." (Ex. A ¶ 55.)

Dr. Vollmecke, understanding there would be the usual break between the open public meeting and the closed public meeting, said he would just stand and read his comments to anyone who wants to listen. (*Id.* ¶ 56.) He began to read his comments. (*Id.* ¶ 57.) Many members of the public were still seated in the room. (*Id.* ¶ 58.) A man who Dr. Vollmecke would later learn was Director of Public Safety Dennis Green approached the podium and told Dr. Vollmecke that he needed to leave. (*Id.* ¶ 59.) No other members of the public were asked to leave. (*Id.* ¶ 59.)

Dr. Vollmecke responded that he believed he had a right to be there. (*Id.* ¶ 60.) Mr. Green repeated he did need to leave, and if he did not, he would be arrested for trespassing. (*Id.* ¶¶ 60, 61; Exhibit H, Sch. Dist. Video, Jan. 10, 2023.) Dr. Vollmecke offered his hands to the school resource officer, who escorted him from the room and placed him under arrest. (Ex. A ¶ 62; Ex. H, Sch. Dist. Video; Ex. I, Brent Clark Video, Jan. 10, 2023.)

Dr. Vollmecke did not raise his voice, use aggressive language, harass, exhibit violent behavior, or have physical contact with any School District employee or other individual during the January 10, 2023 Board of Education meeting. (Ex. A ¶ 64; Ex. G, Baird Video; Ex. H, Sch. Dist. Video; Ex. I, Clark Video; Ex. K ¶ 6; Ex. L ¶ 6.)

While the school resource officer walked Dr. Vollmecke out of the meeting room, other members of the public were allowed to remain. (Ex. A ¶ 65; Ex. I, Clark Video.)

### C. *Superintendent Herl Bans Dr. Vollmecke from the School District*

The next day, Dr. Vollmecke received a letter from Superintendent Herl ("Ban Letter,"). (Ex. A ¶ 66; Ex. J, Ban Letter, Jan. 11, 2023.) The Ban Letter states that due to Dr. Vollmecke's conduct on January 10, 2023, he may not be present at any event or be present on any School District property until January 10, 2024 (the "Ban"). (Ex. J.) The Ban further

prohibits Dr. Vollmecke from any involvement in ISD Academies, including "all interactions with students and any committees in which [he has] served upon," including the Biomedical Sciences Advisory Committee. (*Id.*) If Dr. Vollmecke "enter[s] school property" without Superintendent Herl's permission "it will be considered trespassing by the School District and local law enforcement authorities will be called." (*Id.*)

Superintendent Herl and the members of the Board were aware of Dr. Vollmecke's frequent, sharp criticisms of their policies when Superintendent Herl banned him from all school property. (Ex. A ¶¶ 16, 18-19, 21-28, 30-35, 41, 67.)

Superintendent Herl's Ban Letter does not set out any process to contest or appeal the Ban, nor was any such process available. (Ex. J.) The Ban Letter cites Board of Education Policy 1431 as authority for the Ban. (*Id.*) Policy 1431 stated "employees, parents, patrons, and visitors will be expected to conduct themselves in a manner reflective of a positive role model for children. Public displays contrary to this expectation as provided in Regulation 1431 will result in sanctions which will limit a person's access to school activities and school premises." (Ex. D, Policy 1431.)[1] The revised code-of-conduct Policy C-155-P gives complete discretion over bans from school property and events to the Superintendent: "The Superintendent or designee may limit or revoke permission to visit school property or parts of school property *at any time*. The Superintendent or designee may inform the visitor that he or she is not welcome back on District property or at District events *indefinitely* or for a specific period of time." (Ex. B, Policy C-155-P (emphasis added).)

Further, according to the Ban Letter, if Dr. Vollmecke enters any school property without Superintendent Herl's permission, "it will be considered trespassing by the School

---

[1] Policy 1431 is continued as revised Policy C-155-P, "Visitors to District Property and Events." (Ex. B, Policy C-155-P.) Policy C-155-P provides that "[a]ll visitors to school property or events must demonstrate appropriate behavior as good role models for the District's students." (*Id.*) It further states: "Visitors who engage in disruptive conduct or exceed the scope of permission granted may be considered trespassers and subject to arrest and prosecution." (*Id.*)

7

District and local law enforcement authorities will be called." (Ex. J.) Failure to comply with the restrictions will result in the School District "pursu[ing] all available civil or criminal remedies." (*Id.*) The Ban Letter provides Superintendent Herl with exclusive authority to determine whether Dr. Vollmecke will be allowed on School District property. (*Id.*)

Before January 10, 2023, Dr. Vollmecke had never been asked to leave or been removed from School District property. (Ex. A ¶¶ 68-70.) The Ban has prevented him from attending Board of Education meetings that he would have otherwise attended since February (at least nine meetings so far) and prevents him from attending all future meetings until the end of the Ban in January 2024. (*Id.* ¶ 71.)

But for the Ban, Dr. Vollmecke would have attended Board of Education meetings to learn about Board and School District activities and proposals, interacted with other concerned residents at those meetings, and spoken during public comment periods. (*Id.* ¶ 72.) But for the Ban, Dr. Vollmecke would have continued his leadership as Chair of the School District's Biomedical Sciences Advisory Committee, as well as providing his medical expertise and recommendations to the Committee. (*Id.* ¶ 73.) But for the Ban, Dr. Vollmecke would have continued conducting guest STEM lectures for students, providing physicals and scoliosis screenings, and assisting with the teaching of various courses. (*Id.* ¶ 74.)

The Ban also prevents Dr. Vollmecke from being present on School District property at times and during events that are otherwise open to the general public. (*Id.* ¶ 75.) He was not able to attend high school athletic events on School District property, which prevented him from seeing kids he coached in youth sports play. (*Id.* ¶ 78.) He cannot take his son, who is turning two this month, to a playground on the weekend or start his son's swimming lessons. The playground and public pool are on School District property. (*Id.* ¶¶ 76-77.)

Enforcement of the Ban will prevent Dr. Vollmecke from running for a seat on the Board of Education in the next election on April 2, 2024. (*Id.* ¶ 79.) While Dr. Vollmecke is

otherwise qualified (*id.* ¶ 80), Board policy requires applicants to file for office in the Superintendent's office by the 14th Tuesday before the election, which will be on December 26, 2023 (*see* Ex. B, Policy G-235-P). Applicants must also declare their intent to become a candidate, and obtain a petition form, in person with the Board Secretary. (Ex. B, Policy G-235-P.)[2] Yet Dr. Vollmecke cannot step foot on school property, much less enter Superintendent Herl's office or meet the Secretary, without risking arrest. (Ex. J.)

## III.  <u>Argument</u>

### A.  *Standard for Preliminary Injunction*

A temporary injunction can prevent "irremediable injury to some of the parties before their claims can be investigated and adjudicated." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). In considering a motion for preliminary injunction, a court must determine: (a) whether the plaintiff is likely to prevail on the merits; (b) whether there is a threat of irreparable harm to the plaintiff absent the injunction; (c) the balance between the irreparable harm and the injury that the injunction's issuance would inflict upon defendant, and (d) what is in the public interest. *Id.* at 114. In a case challenging a policy, as opposed to "a duly enacted state statute," the Eighth Circuit applies a less rigorous standard to the first factor, under which the plaintiff need only show a "fair chance of prevailing" on the merits. *Planned Parenthood Minn. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc); *D.M. by Bao Xiong v. Minnesota State High Sch. League*, 917 F.3d 994, 999 (8th Cir. 2019) (noting that a fair chance of prevailing "applies in most instances").

If a plaintiff shows a likely violation of his or her First Amendment rights, the remaining three factors are generally deemed to have been satisfied. *See Rodgers v. Bryant*,

---

[2] Policy G-235-P allows candidates to file by certified mail only if they are unable to file their declaration of candidacy and other paperwork in person due to physical disability or because they are members of the U.S. Armed Forces on active duty. It does not allow filing by certified mail for any other reason, such as a ban from school property. (Ex. B, G-235-P.)

942 F.3d 451, 456-457 (8th Cir. 2019); *accord Free & Fair Election Fund v. Missouri Ethics Comm'n*, 252 F. Supp. 3d 723, 737 (W.D. Mo. 2017). When the government restricts speech, it bears the burden of proving the constitutionality of its actions. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000).

### B. A Fair Chance of Prevailing on the Merits of All Three Claims

#### 1. Defendants' categorical ban of Dr. Vollmecke from all School District property is not reasonable in light of the purposes served by the limited public forums on the property (Count I).

When a school district chooses to open certain property to the public for expressive purposes, the First Amendment rights of the public are at stake. In this case, the School District holds meetings of the Board of Education open to the public, and Board policy invites the public to provide comments on the Board's agenda items at meetings. The School District also holds regular sporting events that are open to the community. Defendants may not categorically prohibit individuals like Dr. Vollmecke from exercising their rights in those forums.

The extent to which the government may regulate expression on public property depends on the nature of property at issue. *E.g.*, *Turning Point USA at Ark. State Univ. v. Rhodes*, 973 F.3d 868, 875 (8th Cir. 2020). Speech restrictions on property that is *traditionally* open for free expression, or that is *designated* as an open forum to all speakers and topics, is subject to heightened scrutiny. *Id.* at 875. Property that is neither by tradition nor designation open for public expression is a nonpublic forum, and the government has broader discretion to regulate speech. *Id.* at 875-876. Between those ends of the spectrum is property that allows expressive activity, albeit limited to certain kinds of speaker or certain subjects. *Id.* at 876. This is known as a *limited public forum* or *limited designated public forum*.[3] *See id.* Any speech restrictions on a limited public forum must be reasonable and viewpoint-neutral. *Id.*; *Francis*

---

[3] The Eighth Circuit has described the limited public forum as a subcategory of the designated public forum, often combining the names into *limited designated public forum*. *See, e.g.*, *Bowman v. White*, 444 F.3d 967, 975 (8th Cir. 2006).

*Howell Sch. Dist.*, 599 F. Supp 3d at 803; *Schnekloth v. Deakins*, No. 21-CV-5131, 2022 WL 1050380, at *5 (W.D. Ark. Apr. 7, 2022).

Open, public board meetings, and, in particular, the public comment period of such meetings, are, at the least, limited public forums. *E.g.*, *Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012) ("For First Amendment purposes, the School Board meeting was what has variously been called a nonpublic or a limited public forum."); *Brooks v. Francis Howell Sch. Dist.*, 599 F. Supp. 3d 795, 803 (E.D. Mo. 2022) (finding that patron comment section of school-board meetings constituted limited public forum); *see also City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rels. Comm'n*, 429 U.S. 167, 174–75 (1976) (finding that the First Amendment protects the rights of speakers at school-board meetings). Here, Board meetings are generally open to the public (Ex. B, Policy C-135-P, Policy G-155-P), and each meeting includes a period of up to 30 minutes for members of the public to address the Board regarding any item on the agenda (Ex. B, Policy C-140-P; Ex. D, Policy 0412).

Sporting events held on school property and open to the public are also limited public forums. *See, e.g., Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017) (holding that school gymnasium during interschool basketball games was a limited public forum, as "persons attending the game are expected to engage in expressive activity, chanting and cheering for whichever team they favor"); *Coffelt v. Omaha Sch. Dist.*, 309 F. Supp. 3d 629, 638 (W.D. Ark. 2018) (finding that school district created "a limited/designated public forum by making a conscious decision to open an otherwise nonpublic forum (a school) to the general public for events, including school board meetings, athletic events, pageants, and other community functions"); *Zeyen v. Pocatello/Chubbuck Sch. Dist. #25*, No. 4:16-CV-00458-DCN, 2018 WL 2224053, at *8 (D. Idaho May 15, 2018) (finding that school created limited public forums in school events to which the public was invited, including basketball and football games). Here,

the District holds sporting events open to the public where members of the community cheer and voice support for the student athletes. (Ex. A ¶ 69.)

The sweeping Ban of Dr. Vollmecke from all School District property and activities for an entire year—including from public Board meetings and sporting events open to the general public—is not reasonable in light of the purposes of these forums. Dr. Vollmecke did not disrupt the Board meeting on January 10, 2023. (*Id.* ¶¶ 55, 64.) He waited until the end of the meeting to *avoid* disruption. (*Id.* ¶ 49.) He was scheduled to speak and believed he had that right, even if it was only to other members of the public still in the room. (*Id.* ¶¶ 53, 56, 60.) When he was placed under arrest, he walked quietly out of the meeting with the school resource officer. (*Id.* ¶¶ 62, 64, 65.)

Even if Dr. Vollmecke's isolated conduct at the January 2023 meeting could be considered disruptive, that does not justify a categorical ban from future meetings. As the U.S. District Court for the District of Maine explained in enjoining a school district's eight-month ban of a plaintiff from school property based on repeated alleged violations of the rules for public comments at board meetings, "[s]ingling out one individual, banning his (perhaps disfavored) speech, and essentially preventing him from engaging in a form of civil discourse that is available to everyone else in [the school district] is unreasonable." *McBreairty v. School Board of RSU 22*, 616 F. Supp. 3d 79, 93-96 (D. Me. 2022); *see also Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 541, 548 (D. Vt. 2014) (explaining "a categorical ban on expressive speech singling out an individual does not even satisfy the lower threshold of reasonableness review").

Here, Superintendent Herl's Ban of Dr. Vollmecke singles out one individual and prevents him from participating in public forums that are open to everyone else. But this Ban is even more unreasonable than the one in *McBreairty*. It is for an entire year, not just eight months, and is based a single instance of allegedly not following the District's code-of-conduct

policy at the January 10, 2023 meeting. (Ex. J.) Courts have repeatedly rejected similarly broad bans from school property—even when the conduct involved profanity directed at school officials and conduct perceived to create a safety risk. *See Coffelt v. Omaha Sch. Dist.*, 309 F. Supp. 3d 629, 632 (W.D. Ark. 2018) (preliminarily enjoining school district from enforcing a ban on plaintiff attending events on school property open to the general public where ban was based on plaintiff's heated argument with superintendent and coach, calling them a "liar" and "chicken shit"); *Worthley v. Sch. Comm. of Gloucester*, No. 22-CV-12060-DJC, --- F. Supp. 3d ----, 2023 WL 371034, at *6 (D. Mass. Jan. 24, 2023) (preliminarily enjoining ban from school property imposed based on plaintiff's communications with a minor that the district alleged were inappropriate); *Cyr*, 60 F. Supp. 3d at 548-49 (blanket ban on individual from all school property during all hours, including school board meetings, based unspecified safety risk to certain employees was not reasonable). Even an alleged assault on a school official by grabbing his fingers during a hostile conversation was not sufficient to justify a complete ban of a plaintiff from participation in the public comment of school board meetings. *Wilson v. N.E. Ind. Sch. Dist.*, 5:14-CV-140-RP, 2015 WL 13716013, at *1, 5-6 (W.D. Tex. Sept. 30, 2015). At least "*some tailoring*" of restrictions is required for restrictions to be reasonable in light of the purpose of the forum. *Id.* at *5.

Singling out Dr. Vollmecke and excluding him from all School District property was not a reasonable response to his peaceful attempt to offer public comments at the January 10 Board meeting. He has more than a fair chance of prevailing on the merits, and the School District's Ban should be lifted immediately.

**2. The Ban operates as a prior restraint in violation of the First Amendment because it gives unbridled discretion to Superintendent Herl to grant Dr. Vollmecke permission to speak or not (Count I).**

The Ban prospectively silences all of Dr. Vollmecke's speech at public Board meetings unless he is granted permission to return from Superintendent Herl. This is the definition of an unconstitutional *prior restraint* on speech.

A restriction that targets the speech of a specific individual "is equivalent to an injunction against speech, and as the Supreme Court has explained, '[i]njunctions … carry greater risks of censorship and discriminatory application than do general ordinances.'" *Wilson*, 2015 WL 13716013, at *5 (quoting *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 764 (1994)). Any system of prior restraints of expression bears a heavy presumption against its constitutional validity. *E.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). "Affording unbridled discretion to a government official or agency to determine whether a person may engage in speech 'constitutes a prior restraint and may result in censorship.'" *Am. C.L. of Missouri Found. v. Lombardi*, 23 F. Supp. 3d 1055, 1061 (W.D. Mo. 2014) (quoting *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988)). Allowing school officials to grant or deny a specific individual permission to participate in a public forum constitutes a prior restraint on First Amendment freedom of expression. *Wilson*, 2015 WL 13716013 at *6 (finding categorical ban excluding plaintiff from school board meetings without written permission was a prior restraint and granting summary judgment on plaintiff's First Amendment claim); *see also Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1227-1229 (11th Cir. 2017) (policy that prohibited public comments at school board meetings by individuals who did not satisfy certain criteria was a prior restraint). Such pre-approval requirements are particularly concerning because they pose the risk that speech would be chilled or censored on the basis of content or viewpoint. *Barrett*, 872 F.3d at 1229.

14

The Ban on Dr. Vollmecke is a prior restraint that not only singles him out but gives Superintendent Herl unfettered discretion as to whether he can exercise his First Amendment rights. The Ban operates as a pre-approval requirement that poses the risk that Dr. Vollmecke's speech is being chilled or censored on the basis of viewpoint.

### 3. The Ban violates the First Amendment because it was imposed in retaliation for Dr. Vollmecke's protected speech (Count II).

The School District's Ban was imposed in retaliation for Dr. Vollmecke's exercise of his First Amendment rights to criticize Defendants. To establish a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in a protected activity, (2) a government official took adverse action against him that would chill a person of ordinary firmness from continuing the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Rinne v. Camden Cnty.*, 65 F.4th 378, 383 (8th Cir. 2023).

Here, Dr. Vollmecke engaged in protected speech. He had been addressing Superintendent Herl and the Board on many matters of public concern (e.g., lack of transparency, hostile work environment, book ban, four-day school week). (Ex. A ¶¶ 18-41.) Such "criticism of public officials and the administration of governmental policies 'lies at the heart of speech protected by the First Amendment.'" *Rinne*, 65 F.4th at 383 (quoting *Williams v. City of Carl Junction*, 480 F.3d 871, 874 (8th Cir. 2007)).

The Ban from all School District property, under threat of arrest and further legal action, would chill a person of ordinary firmness. In *Rinne*, the Eighth Circuit found that a prohibition on plaintiff from "entering county property is a concrete consequence that would objectively chill a person of ordinary firmness from criticizing county commissioners." *Rinne*, 65 F.4th at 384. Both "the prohibition itself and threat of enforcement" were sufficient to produce a chilling effect. *Id.* at 384. Likewise, the Ban on Dr. Vollmecke from entering School District property on threat of arrest and legal action produces a chilling effect. *See also McNeally v. HomeTown Bank*, No. 21-CV-2614 (ECT/DTS), 2022 WL 2220922, at *6 (D. Minn. June 21,

15

2022) (chilling effect on speech where superintendent barred plaintiff from school district property).

The School District's Ban was motivated by Dr. Vollmecke's frequent, caustic criticisms of Superintendent Herl and the Board. The Eighth Circuit has found that the chronology of events can support an inference of retaliatory motive. *L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 809 (8th Cir. 2012). This Court has found evidence of retaliation based on the defendant's disproportionate response to criticism. *Rinne v. Camden Cnty.*, No. 2:21-CV-04076-MDH, 2021 WL 5921465, at *4 (W.D. Mo. Nov. 19, 2021), *appeal dismissed as moot*, 65 F.4th 378 (8th Cir. 2023) (finding that plaintiff's conduct "did not even remotely approach actions which would justify infringement of his rights to participate in public affairs, visit public property, and enjoy the basic rights of citizenship that were directly impacted by the ban").

Dr. Vollmecke argued publicly that Board needed to provide oversight of the superintendent and was allowing "hostile work environment" in the District. (Ex. A ¶¶ 18-19, 23-24.) He told the Board that its failure to make independent evaluations was "dangerous" (*id.* ¶ 23) and its removal of a book was "asinine" and an "embarrassingly ignorance decision" (*id.* ¶ 32). He accused Superintendent Herl of causing the death of a school nurse. (*Id.* ¶ 35.) Just before the Ban, he asked critical questions about the four-day school week and said teachers were leaving the School District "to get away from our current superintendent." (*Id.* ¶ 36-41; Ex. F, Jason Vollmecke Email to Board, Dec. 13, 2022.) The *Kansas City Star* called Dr. Vollmecke "a perpetual thorn in the side of Herl and the board's members." (Ex. E, *The Kansas City Star* Editorial Board, "All he did was criticize Independence school board. He didn't deserve to be arrested," *The Kansas City Star*, May 24, 2023.)

Dr. Vollmecke's conduct on January 10, 2023, did not even remotely approach actions which would justify infringement of his rights. He was purportedly banned for trying to speak

16

to the Board and other residents after the meeting was adjourned. (Ex. A ¶¶ 52-55.) Other residents sat in the same room. (*Id.* ¶¶ 58, 65; Ex. I, Brent Clark Video.) In his years of public involvement with the School District, attending Board meetings, sporting events, voting, and teaching, Dr. Vollmecke had never previously been removed from District property. (Ex. A ¶¶ 8-9, 68-70.) Now he cannot enter School District property to vote, run for Board of Education in the next election, attend high school athletic events, or even take his son to the school playground or start swimming lessons. (*Id.* ¶ 75-81.)

The timing of the Ban and the disproportionate nature of the punishment in relation to Dr. Vollmecke's peaceful conduct—trying to speak in a public forum about matters concerning the School District—strongly indicate retaliatory animus. *Cf. Anderson v. Hansen*, 489 F. Supp. 3d 836, 843 (E.D. Wis. 2020) (complete ban of plaintiff from school property had "no rational connection to enforcing restrictions on citizen comments at board meetings and thus can only be viewed as a way of punishing the plaintiff").

### 4. The Ban violates the Due Process Clause because Dr. Vollmecke had no notice or opportunity to be heard (Count III).

Dr. Vollmecke was provided no warning or notice that he would be banned from all School District property for attempting to read his comments on January 10. Neither Superintendent Herl nor the Board provided him with an opportunity to be heard in response to the Ban. He was offered no way to contest or appeal the Ban. (Ex. J, Ban Letter.)

A plaintiff can establish a procedural due process claim by demonstrating a deprivation of a liberty interest and that such "deprivation was without sufficient process." *Am. Civil Liberties of Mo. Found. v. Lombardi*, 23 F. Supp. 3d 1055, 1062 (W.D. Mo. 2014). Freedom of speech is a liberty interest protected by the Due Process Clause. *Id.*; *see also Cyr*, 60 F. Supp. 3d at 550-51 (recognizing plaintiff's liberty interest in attending school board meetings where he had a right to express himself). The due process clause requires that an individual subject to a deprivation of a liberty interest be provided "the opportunity to be heard at a meaningful time

17

and in a meaningful manner." *Swipies v. Kofka*, 419 F.3d 709, 715 (8th Cir. 2005) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). In determining what process is required, courts must consider "the risk of an erroneous deprivation of [a private] interest through the procedures used," the value of additional safeguards, and the burden of imposing additional procedural requirements upon the government. *Mathews*, 424 U.S. at 335.

Defendant's Ban of Dr. Vollmecke imposed a high risk of erroneous deprivation of his right to speak in a public forum and right to declare his candidacy for the Board. The Ban was issued pursuant to Policy 1431, which broadly allowed for sanctions to limit access to school activities and premises based on any conduct that is not "reflective of a positive role model for children." (Ex. D, Policy 1431.) Policy 1431 did not give any guidance regarding what may or may not be considered "reflective of a positive role model for children" in general, much less after a public Board meeting after school hours. Whether and how to sanction Dr. Vollmecke for speaking was left to the unfettered discretion of Superintendent Herl, who proceeded to enforce Policy 1431 in an arbitrary manner. This type of "broad discretion to ban members of the public from school premises and, consequently, school board meetings" increases the risk of erroneous deprivation. *See Cyr*, 60 F. Supp. 3d at 551.

The risk of erroneous deprivation is also high because neither the Ban Letter, Policy 1431, nor Policy C-155-P offers the opportunity for a hearing or any type of appeal of a decision to ban an individual. (Ex. J, Ban Letter; Ex. D, Policy 1431; Ex. B, Policy C-155-P.) This lack of any procedural safeguards before an individual is deprived of their First Amendment rights violates due process. *See Wilson*, 2015 WL 13716013, at *7 (finding risk of erroneous deprivation was high where school officials had broad discretion to ban members of the public and school "failed to provide any genuine process" for appeal); *Jacobsen v. Petersen*, 728 F. Supp. 1415, 1423 (D.S.D. 1990) ("In light of the important First Amendment interests at stake in this case, and the lack of *any* existing procedural safeguards … the only

conclusion that this Court can reach is that [plaintiff's] due process rights were violated."); *see also Cyr*, 60 F. Supp. 3d at 552 (finding failure to provide any meaningful opportunity to contest ban from school property contributed to "high risk of erroneously depriving [plaintiff] of his First Amendment right to freedom of expression"). Given the broad discretion to ban individuals from school property and the lack of *any* process, the value of additional procedural safeguards, such as an opportunity to challenge the ban, is high. There is no reason to believe that such safeguards would impose a significant burden, particularly as weighed against the high costs of a yearlong deprivation of First Amendment rights.

## C. Remaining Dataphase Factors

When a plaintiff has shown a likely violation of his First Amendment rights, the remaining three *Dataphase* factors for a preliminary injunction are generally deemed to have been satisfied. *See, e.g., Rodgers v. Bryant*, 942 F.3d 451, 457 (8th Cir. 2019). There is no basis for departing from the general rule here.

Dr. Vollmecke has already been harmed—he has been banned from all School District property since January 11. A "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). Dr. Vollmecke will continue to suffer irreparable harm under the Ban if this Court does not issue an injunction. *See Anderson v. Hansen*, 489 F. Supp. 3d 836, 844–45 (E.D. Wis. 2020) ("[F]orcing the plaintiff to obtain permission before entering school property is itself a form of irreparable harm. … [T]he District's policy thus singles the plaintiff out in a way that stigmatizes and demeans her."). Where such an injury is threatened and occurring at the time of a motion for preliminary injunction, and the movant has shown a sufficient probability of success, a preliminary injunction is appropriate. *Lane v. Lombardi*, No. 2-12-cv-4219-NKL, 2012 WL 5873577, at *6 (W.D. Mo. Nov. 15, 2012).

19

"The balance of equities … generally favors the constitutionally-protected freedom of expression." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) (en banc). Issuance of a preliminary injunction will cause no harm to the School District, which has no real interest in enforcing the Ban. The Ban is likely unconstitutional, and as other courts have observed, the School District retains the ability to remove any truly disruptive individual.

Finally, "it is always in the public interest to protect constitutional rights." *Phelps-Roper*, 545 F.3d at 690. The public interest supports preventing a governmental entity from violating the Constitution. *Doe v. South Iron R-1 School Dist.*, 453 F. Supp. 2d 1093, 1103 (E.D. Mo. 2006). The public interest would be served here by preventing the unconstitutional enforcement of the Ban and Board policies while this case proceeds on the merits.

### D. Security

Plaintiff requests the Court waive any security because there would be no costs incurred by Defendants for granting the injunction and there are important First Amendment interests at stake. *See Bukaka, Inc. v. City of Benton*, 852 F. Supp. 807, 813 (D. Minn. 1993) (noting that the plaintiff was seeking to vindicate important First Amendment rights and waiving security); *Dakotans for Health v. Anderson*, No. 4:23-CV-04075-RAL, 2023 WL 3968218, at *16 (D.S.D. June 13, 2023) (waiving security).

### IV.  Conclusion

For the foregoing reasons, Plaintiff Jason Vollmecke respectfully requests that this Court enter a preliminary injunction enjoining Defendants from enforcing the Ban and restoring Dr. Vollmecke's access to all Independence School District property that is held open to the general public.

20

DATED: September 15, 2023   Respectfully Submitted,

*/s/ Benjamin J. Wilson*
Lisa S. Hoppenjans, #63890 (MO)
Benjamin J. Wilson, #63329 (MO)
First Amendment Clinic
Washington University in St. Louis
 School of Law
One Brookings Drive
St. Louis, MO 63130
Phone: (314) 935-8980
lhoppenjans@wustl.edu
benwilson@wustl.edu

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

  I certify that a copy of the foregoing document and exhibits are being served on Defendants Independence School District, Board of Education of Independence School District, and Dale Herl by hand delivery at the following address:

Independence School District
c/o Dr. Dale Herl, Superintendent
201 North Forest Avenue, Suite 200
Independence, Missouri 64050

*/s/ Benjamin J. Wilson*
Attorney for Plaintiff