# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JASON VOLLMECKE, | ) |
| Plaintiff, | ) Case No. 4:23-cv-00644-BP |
| v. | ) |
| THE SCHOOL DISTRICT OF THE CITY OF INDEPENDENCE DISTRICT NO. 30, *et al.*, | ) |
| Defendants. | ) |

## REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Defendants' response misunderstands the nature of Dr. Vollmecke's claims and cites to inapplicable case law. Dr. Vollmecke does not assert an unfettered right of access to school property, but instead asserts the right to access school property that is used as a public forum, the right to due process before he is deprived of that protected liberty interest, and the right to be free from unlawful retaliation for exercising his First Amendment rights. Additionally, Dr. Vollmecke's claims are not, as Defendants suggest, premised on his arrest for trespass, but rather on his yearlong ban from school property. Defendants' attempt to rationalize this Ban by citing prior incidents (unmentioned in the Ban Letter itself) does not diminish the strength of Dr. Vollmecke's claims, but rather bolsters them by demonstrating that the Ban was motivated at least in part by Dr. Vollmecke's protected speech.

## ARGUMENT

### I. Dr. Vollmecke Need Only Show a Fair Chance of Prevailing on the Merits.

A party challenging a school board policy must demonstrate only a "fair chance of prevailing" on the merits. *See Planned Parenthood Minn.* v. *Rounds*, 530 F.3d 724, 732 (8th Cir.

2008) (en banc). School board policies are not the type of "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes" that are entitled to a higher degree of deference. *Rounds*, 530 F.3d at 732 (quoting *Able* v. *United States*, 44 F.3d 128, 131 (2d Cir. 1995)); *L.H.* v. *Independence Sch. Dist.*, No. 4:22-cv-00801-RK, 2023 WL 2192234, at *3 n.3 (W.D. Mo. Feb. 23, 2023) (applying "fair chance" standard to school board policy and regulations); *Brooks* v. *Francis Howell Sch. Dist.*, 599 F. Supp. 3d 795, 802 (E.D. Mo. 2022) (concluding the "fair chance" standard applies to a school board policy). Only "where a preliminary injunction is sought to enjoin the implementation of a duly enacted state statute, must district courts make a threshold finding that a party is likely to prevail on the merits." *Rounds*, 530 F.3d at 732–33. Therefore, although Dr. Vollmecke can show that he is likely to succeed on his claims, he need only show a fair chance of prevailing.

    **II.**    **Dr. Vollmecke Has a Fair Chance of Prevailing on All Three of His Claims Pursuant to Section 1983.**

Defendants rely on an unpublished opinion, which itself relies on isolated language from an unpublished, out-of-circuit opinion, to claim that "no cause of action exist[s] under 1983 for parent who was banned from school property," since "a parent's constitutional rights are not violated if a school bans that parent from school property." Defs.' Suggs. in Opp., Doc. 16 at 11 (quoting *Miller* v. *Montgomery County R-II School District*, No. 2:10 CV 78 DDN, 2011 U.S. Dist. LEXIS 35913, at *13 (E.D. Mo. Apr. 1, 2011) (quoting *Thomas* v. *Helms Mulliss Wicker PLLC*, No. 3:07 CV 52, 2007 U.S. Dist. LEXIS 24986, 2007 WL 1033358, at *2 (W.D.N.C. Apr. 3, 2007))). *Miller* does not stand for a blanket proposition that plaintiffs may not use § 1983 to challenge a ban from school property and, in any case, it is distinguishable.

Unlike the present case, *Miller* did not involve any claim that a ban from school property excluded plaintiff from a public forum. Instead, the *Miller* plaintiff's § 1983 challenge alleged

2

Case 4:23-cv-00644-BP   Document 21   Filed 10/24/23   Page 2 of 11

violations of procedural due process and denial of the "right to associate with other school parents, visitors, school children, and other entities related to or occurring on School District property." *Miller*, 2011 U.S. Dist. LEXIS 35913 at *6–7. The *Miller* court found no violation of procedural due process because "[a] parent does not have the right to unfettered access to school property." *Id.* at *6, *9–10. The *Miller* court also found no violation of the plaintiff's right to intimate association, because the plaintiff had "not alleged any concrete relationships, or any relationships with a definite size, degree of selectivity, or seclusion from others, that were burdened by the School District's actions." *Id.* at *11–12. Consequently, *Miller* found that because the plaintiff had not shown a violation of his federal rights, he could not state a claim under § 1983. *Id.* at *13.

The circumstances and claims here are distinct from those in *Miller*. Dr. Vollmecke is not claiming his rights were violated because he has an unfettered right to access school property. Instead, Dr. Vollmecke claims his rights were violated because: (1) he has been excluded from public forums on school property; (2) the entire Ban was retaliation for protected speech; and (3) he has been deprived of a protected liberty interest—the right to participate in public forums—without sufficient process. Courts have repeatedly recognized the viability of these types of claims under § 1983 when an individual has been banned from public forums on school property. *E.g.*, *McNeally* v. *HomeTown Bank*, No. 21-CV-2614 (ECT/DTS), 2022 WL 2220922 (D. Minn. June 21, 2022) (holding plaintiff plausibly alleged First Amendment retaliation under § 1983 based on her ban from school property); *Cyr* v. *Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536 (D. Vt. 2014) (granting summary judgment in plaintiff's favor on free expression in a public forum and due process claims under § 1983 against ban from school property); *Hotchkiss v. Cedar Rapids Comm. Sch. Dist.*, No. 23-CV-33-CJW-MAR, 2023 WL 6163487 at *7 (N.D. Iowa Sept. 21, 2023) (recognizing plausible retaliation claim under § 1983 based on ban from school property). Because

Dr. Vollmecke has a fair chance at proving a violation of his federal rights, and because Defendants do not contest that they acted under color of state law in enforcing the Ban and Board policies, Dr. Vollmecke has a fair chance at prevailing on a theory of § 1983 liability.

**III.   Dr. Vollmecke Has a Fair Chance of Prevailing on His Claim that Defendants' Blanket Ban Is an Unreasonable Restriction on His First Amendment Right to Access a Public Forum.**

As explained in Plaintiff's prior briefing, school board meetings are at the very *least* a limited public forum. *Bowman v. White*, 444 F.3d 967, 975 (8th Cir. 2006); Pl.'s Suggestions in Supp., Doc. 5, at 1. Defendants do not dispute that a limited public forum analysis applies. *See* Doc. 16 at 11. Restrictions on speech in a limited public forum must be viewpoint-neutral and reasonable.[1] *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 679 (2010). Here, Defendants have unreasonably placed a yearlong ban on Dr. Vollmecke's access to School District property.

The Ban Letter received by Dr. Vollmecke refers only to his conduct at the January 10, 2023 meeting as the basis for the Ban. Ex. 1 to Compl., Doc. 1-1. Defendants now claim, however, that the Ban was in fact based on that incident as well as three others, and was required to promote safety of students, employees, and other patrons, as well as the Board's ability to conduct business. *See* Doc. 16 at 4-5.

Assuming the School District did, contrary to the Ban Letter, take Dr. Vollmecke's alleged prior conduct into account, none of this conduct suggests that he posed any sort of safety risk. Dr. Vollmecke's alleged prior conduct can be categorized as a brief interruption at one meeting a year before the Ban, "glaring" and crossing his arms at another meeting, and engaging in protected

---

[1] In addition to being unreasonable as explained above, the Ban is also retaliatory viewpoint discrimination. *See infra* pp. 7-9. Should the Court not find the Ban to be a form of retaliatory viewpoint discrimination, it is nonetheless an unreasonable violation of Dr. Vollmecke's First Amendment rights.

4

criticism of a school official. Doc. 16 at 4-5. This conduct cannot be reasonably interpreted as a safety threat. Indeed, while Defendants suggest Dr. Vollmecke crossing his arms and "glaring" at Dr. Herl was an intimidation tactic, Dr. Herl himself did not seem intimidated since he immediately sought out Dr. Vollmecke for a private conversation. Doc. 16-2 ¶ 5. Nor does Dr. Vollmecke's conduct at the January 2023 meeting suggest any safety risk. Dr. Vollmecke did not make any threats, use any intimidation tactics, or use any profanity. Doc. 5-1 ¶ 64. He sat quietly during the meeting, did not attempt to speak until the board completed its agenda, and then approached the podium attempting to discuss issues he had already received permission to speak on. When Dr. Vollmecke was told he had to cease speaking or be arrested, he silently offered his hands and was quietly escorted out of the room. *Id.* ¶ 62; *see also* Docs. 5-8, 5-9. Finally, while there is no evidence to support a safety risk here, even a perceived safety risk could not support the district's sweeping ban. For example, in *Coffelt* v. *Omaha Sch. Dist.*, the court preliminarily enjoined a blanket ban imposed on a parent as the result of a heated closed-door meeting involving profanity and a perceived safety risk to a school coach. 309 F. Supp. 3d 629, 642-43 (W.D. Ark. 2018). The court explained, "that a heated discussion in a closed-door meeting would produce such a sweeping and restrictive response from the District gives the Court pause." *Id.* at 643.

The Ban is also not reasonably related to the interest of allowing the District to conduct its business in an orderly fashion. Defendants rely on *Green v. Nocciero* to support a right to remove "unruly or disruptive audience members" from a school board meeting. Doc. 16 at 11. However, *Green* involves an individual's one-time removal from a school board meeting in response to an alleged disruption at that same meeting; it does not suggest that a school board may respond to a disruption at a meeting by removing an individual and then banning them from all school property for an entire year. 676 F.3d 748, 749, 753, 755 (8th Cir. 2012).

5

Here, only two of the incidents cited by Defendants relate to conduct that could be construed as relating to the ability to conduct a meeting. The interruption at the January 11, 2022 meeting was so brief and minimal that one could not reasonably characterize it as impeding on the board's ability to conduct business or as reasonably justifying a one-year ban. Decl. of Jason Vollmecke, Ex. M ¶ 13; *see also* Decl. of Wendy Baird (2), Ex. N ¶¶ 7-8. At the January 2023 meeting, Dr. Vollmecke specifically *avoided* interrupting or disrupting the meeting in any way. Doc. 16-2 ¶ 5. While Defendants claim Dr. Vollmecke delayed the board from moving into closed session, the evidence reflects that there was often a pause between the adjournment of the open session of board meetings and the beginning of closed session. *See* Doc. 5-1 ¶¶ 51, 56; Doc. 5-11 ¶ 9; Doc 5-12 ¶¶ 8-9. Video recordings of the meeting show that many people were still in the room at this time engaged in discussions, as is often the case during the break before the closed meeting. *See* Doc. 5-9. These isolated incidents, a year apart, do not reasonably support prohibiting Dr. Vollmecke from attending public board meetings for one year.

The ban is also unreasonable because it operates as a prior restraint on speech. This is true even if, as Defendants now contend, Dr. Vollmecke can somehow request permission from Dr. Herl to access school property. Doc. 16 at 18. "Affording unbridled discretion to a government official or agency to determine whether a person may engage in speech constitutes a prior restraint and may result in censorship." *Am. Civil Liberties of Mo. Found.* v. *Lombardi*, 23 F. Supp. 3d 1055, 1061 (W. D. Mo. 2014) (internal quotation marks omitted).

Defendants' arguments to the contrary rely on *C.K.-W* v. *Wentzville R-IV Sch. Dist.*, 619 F. Supp. 3d 906 (E.D. Mo. 2022) (discussing removal of books from a school library) and *Henerey ex rel. Henerey* v. *City of St. Charles, Sch. Dist.*, 200 F.3d 1128, 1134 (8th Cir. 1999) (regarding the disqualification of a student from school government election). These cases, however, involve

speech within the public school curricular contexts, which is subject to different standards than speech within the context of a limited public forum. As *Henerey* notes, "When the expressive conduct at issue occurs in the context of a school-sponsored activity that is not also a public forum, the authority of schools to exercise control over the content of speech is at its greatest." *Henerey*, 200 F.3d at 1132 (concluding there was no evidence the school intended to designate the student election as a forum for public expression) (internal quotation omitted). Accordingly, Defendants' cases are inapplicable to the blanket ban imposed here.

### IV. Dr. Vollmecke Has a Fair Chance of Prevailing on His Claim that the Ban is Impermissible Retaliation for Activity Protected by the First Amendment.

A First Amendment retaliation claim requires a showing: (1) a plaintiff engaged in a protected activity, (2) a government official took adverse action against them that would chill a person of ordinary firmness from continuing the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Rinne* v. *Camden Cnty.*, 65 F.4th 378, 383 (8th Cir. 2023). The record reflects Dr. Vollmecke has a fair chance of satisfying all three elements.

First, Defendants' justifications for the Ban are founded in protected activity—what Defendants mischaracterize as an alleged "series of escalating disruptions." Doc. 16 at 16; *see also id.* at 12 (citing an alleged "pattern of refusing to abide by the Board of Education's reasonable rules for decorum and conduct during its meetings"). At least two of four instances cited by Defendants constitute activity protected by the First Amendment. Dr. Vollmecke's comment to Dr. Herl between the open and closed sessions of a Board meeting—that the School District's COVID-19 policies caused the death of a school nurse—is protected speech. "The criticism of public officials lies at the heart of speech protected by the First Amendment." *Williams* v. *City of Carl Junction, Missouri*, 480 F.3d 871, 874 (8th Cir. 2007).

7

Additionally, Dr. Vollmecke's expressions and body language at a Parent Teacher Association Council meeting are protected under the First Amendment. Conduct that is "sufficiently imbued with elements of communication" is protected by the First Amendment. *Redlich* v. *City of St. Louis*, 51 F.4th 283, 287 (8th Cir. 2022) (quoting *Texas* v. *Johnson*, 491 U.S. 397, 404 (1989)). In deciding "whether conduct is sufficiently imbued with communicative elements to be protected, courts ask "whether '[a]n intent to convey a particularized message was present and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Redlich* at 287. Physical gestures and body language can meet this standard. *See, e.g. Holloman ex rel. Holloman* v. *Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004) (raising a fist clearly expressed a generalized message of disagreement with a school official); *V.A.* v. *San Pasqual Valley Unified Sch. Dist.*, No. 17-CV-02471-BAS-AGS, 2017 WL 6541447, at *5 (S.D. Cal. Dec. 21, 2017) ("…kneeling during the National Anthem is speech").

Here, Dr. Vollmecke attended the PTA meeting, in part, because he was aware that Dr. Herl would be presenting. Ex. M ¶ 16. At the time, Dr. Vollmecke was running for school board because he was dissatisfied with the School District's leadership. His attendance at the meeting, his "glare" and crossed arms were all interpreted by Dr. Herl to express this dissatisfaction, demonstrating their expressive nature. See Doc. 16 at 5 ("Dr. Herl could tell [Dr. Vollmecke] was upset with him…").

Second, Defendants do not dispute that a yearlong ban and the threat of arrest and further legal action under the Ban would chill a person of ordinary firmness from engaging in such protected activity.

Finally, the Ban "was motivated at least in part" by Dr. Vollmecke's exercise of protected activities. *See Rinne*, 65 F.4th at 383 (internal quotation and citation omitted). Retaliation does not

need to be the "sole motive" for an adverse action—it only needs to have been a "substantial factor" in the decision. *Baribeau* v. *City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010) (internal quotation and citation omitted). Here, by identifying at least two instances of protected activity as the basis for the Ban, Defendants concede that Dr. Vollmecke's protected activity was a substantial factor in their decision to impose the Ban.

**V. Dr. Vollmecke Has a Fair Chance of Prevailing on His Claim that Being Subject to a Blanket Ban Without Notice or Opportunity to Be Heard Violates the Due Process Clause.**

Defendants claim that because "[a] parent does not have the right to unfettered access to school property," the School District "is not required to conduct a hearing before banning plaintiff from entering School District Property." Doc. 16 at 11; *Miller*, 2011 U.S. Dist. LEXIS 35913, at \*9. *Miller* is inapposite. First, Dr. Vollmecke does not assert a right to have the Board conduct a hearing, but merely the right to some opportunity to be heard or to appeal the ban in some way. Second, as discussed above, the present case implicates distinct First Amendment liberty interests and due process concerns that were not present in *Miller*.

When officials have "broad discretion to ban members of the public from school premises, and, consequently, school board meetings," there is an increased risk of erroneous deprivation. *Cyr*, 60 F. Supp. 3d at 551. Defendants do not contest that Policy 1431 did not give any guidance regarding what may or may not be considered "reflective of a positive role model for children," nor that Dr. Herl had unfettered discretion to enforce Policy 1431. This broad discretion increases the risk of erroneous deprivation of Dr. Vollmecke's right to speak in a public forum.

Defendants also do not dispute that neither the Ban Letter, nor Policy 1431, nor Policy C-155-P offer the opportunity to be heard or to appeal a ban. Ban Letter, Doc. 5-10; Policy 1431, Doc. 5-4 at 6; Policy C-155-P, Doc. 5-2 at 9. As courts have repeatedly held, this lack of procedural safeguards before an individual is deprived of their right to attend school board meetings violates

due process. See *Wilson* v. *N.E. Ind. Sch. Dist.*, 5:14-CV-140-RP, 2015 WL 13716013, at *7 (W.D. Tex. Sept. 30, 2015) (finding risk of erroneous deprivation was high where school officials had broad discretion to ban members of the public and school "failed to provide any genuine process" for appeal); *Cyr*, 60 F. Supp. 3d at 552 (finding failure to provide any meaningful opportunity to contest ban from school property contributed to "high risk of erroneously depriving [plaintiff] of his First Amendment right to freedom of expression."). Accordingly, Dr. Vollmecke has a fair chance of prevailing on his due process claim.

**VI. Dr. Vollmecke Is Subject to Irreparable Harm Because the Ban Is a Prior Restraint on His Ability to Speak at School Board Meetings.**

Neither the Ban Letter nor any Board policy states that Dr. Vollmecke may request any exceptions to the Ban. Even if such a process is available, however, that Dr. Vollmecke has not yet requested permission from Dr. Herl to enter School District property is inconsequential. Forcing Dr. Vollmecke "to obtain permission before entering school property is itself a form of irreparable harm." See *Anderson* v. *Hansen*, 489 F. Supp. 3d 836, 844–45 (E.D. Wis. 2020); *see also Hershey* v. *Jasinski*, No. 20-06088-CV-W-BP, 2021 WL 10366325, at *6 (W.D. Mo. Jan. 27, 2021) (holding that a system requiring non-students to seek permission before speaking on a university campus is a prior restraint). Even if Dr. Vollmecke is granted permission on one occasion to enter School District property, the harm is continuous because he would have to obtain permission to enter School District property on subsequent occasions. Accordingly, Dr. Vollmecke suffers from and is under the threat of irreparable harm each day the Ban is in effect.

**CONCLUSION**

For the reasons stated above and in Plaintiff's Suggestions in Support, Plaintiff respectfully requests this Court grant a preliminary injunction enjoining Defendants from enforcing the Ban during this lawsuit and for such other and further relief this Court deems just and proper.

DATED: October 24, 2023                    Respectfully Submitted,

                */s/ Benjamin J. Wilson*
Lisa S. Hoppenjans, #63890 (MO)
Benjamin J. Wilson, #63329 (MO)
Max Comer (law student authorized under Local Rule 83.8)
Ariana Katz (law student authorized under Local Rule 83.8)
Emma Kenny-Pessia (law student authorized under Local Rule 83.8)
First Amendment Clinic
Washington University in St. Louis
  School of Law
One Brookings Drive
MSC 1120-250-102
St. Louis, MO 63130
Phone: (314) 935-6040
lhoppenjans@wustl.edu
benwilson@wustl.edu

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that the foregoing was filed with the Court's CM/ECF system on October 24, 2023, which electronically serves all counsel of record.

                */s/ Benjamin Wilson*