IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JASON VOLLMECKE, | ) |
| Plaintiff, | ) |
| v. | ) No. 23-00644-CV-W-BP |
| INDEPENDENCE SCHOOL DISTRICT, *et al.*, | ) |
| Defendants. | ) |

## ORDER GRANTING PRELIMINARY INJUNCTION

After Plaintiff Jason Vollmecke caused an incident at a school board meeting, Defendants prohibited him from entering school property for one year. In this case, Plaintiff alleges that prohibition violates his federal constitutional rights. (*See* Doc. 1.)

Now pending is Plaintiff's Motion for Preliminary Injunction. (Doc. 3.) As discussed below, the Court finds Defendants' prohibition likely violates Plaintiff's First Amendment free speech rights at public events held on school property, and so it will grant the injunction.

### I.     Background

The Court finds the below facts are undisputed for present purposes and thus cites the Record only as necessary or helpful.[1]

Defendants are: (1) the School District of the City of Independence District No. 30, commonly known as the Independence School District (the "District"); (2) the District's Board of Education (the "Board"); and (3) the District's Superintendent, Dale Herl. The Board's meetings are open to the public except for when the Board enters closed session. Each Board meeting

---

[1] Citations are to the Court's CM/ECF docket system and the page numbers generated by it.

includes a public comment time, and individuals who wish to speak must give advance notice to the Board and Superintendent Herl's Office.

Plaintiff is a critic of the Board and Superintendent Herl and has expressed his criticisms in person on various occasions. Apparently, on some instances, Plaintiff expressed his criticism without incident. However, on other instances, Plaintiff caused some degree of incident. The first was on January 11, 2022, during a Board meeting, when Plaintiff interrupted another person's presentation. The second was sometime later, during a Parent Teacher Association Council meeting, when Superintendent Herl was presenting and Plaintiff glared at him with arms crossed. And the third was on January 10, 2023, during a Board meeting, as discussed below.

Before that meeting, Plaintiff gave notice of his intention to speak during the Board meeting's open session and was placed on the meeting agenda. On January 10, the Board started its meeting as scheduled and proceeded according to its agenda. When it was Plaintiff's allotted time to speak, he was not present, so the Board's President called his name several times and then the Board proceeded with its meeting.

A few moments later Plaintiff arrived and sat in the audience. Thereafter, the Board concluded its public business, at which point several things happened in rapid succession: the Board formally moved to close its public session and enter closed session; Plaintiff raised his hand to speak; the Board's motion was seconded and passed, meaning the Board had adjourned its public meeting and was poised to begin its closed session; and Plaintiff went to the podium.

Once Plaintiff was at the podium, he was approached by the District's Public Safety Director and an off-duty Independence police officer. Plaintiff stated he was scheduled to speak and intended to do so, but the Board's President responded he could not, as during his allotted time

2

he was not present and now the public meeting was adjourned. Regardless, Plaintiff began to address the audience. The Director of Public Safety instructed Plaintiff to stop and leave or he would be arrested for trespassing. Plaintiff refused, so the police officer, at the instruction of the Public Safety Director, escorted Plaintiff from the meeting and then arrested him. Throughout this sequence, Plaintiff was not violent or otherwise aggressive. Later that day, the Public Safety Director cited Plaintiff for trespassing, and Plaintiff was transported to jail.[2]

The next day—January 11, 2023—Superintendent Herl issued Plaintiff a letter imposing "a restriction of your access to school property[,]" (the "Restriction Letter"), which stated, in part:

> Effective immediately, you are to refrain from being present at or attending any event on [District] property. Pursuant to Adult Code of Conduct (Board of Education Policy 1431), due to your conduct on January 10, 2023 I am restricting you from being present on any [District] property until January 10, 2024.
>
> If you enter school property without my permission, it will be considered trespassing by the [District] and local law enforcement authorities will be called.

Doc. 5-10.[3])

In September 2023, Plaintiff filed this lawsuit, alleging—as relevant to this Order—that the Restriction Letter violates his First Amendment free speech right at public fora.[4] (Doc. 1

---

[2] Subsequently, the City of Independence prosecuted Plaintiff for trespassing and a May 2023 bench trial resulted in a conviction. The parties' briefing indicates Plaintiff's challenges to this conviction are ongoing, with a *de novo* jury trial scheduled to begin in January 2024.

[3] The referenced Policy 1431 provides, in part: "All employees, parents, patrons, and visitors will be expected to conduct themselves in a manner reflective of a positive role model for children. Public displays contrary to this expectation as provided in Regulation 1431 will result in sanctions which will limit a person's access to school activities and school premises." (Doc. 5-4, p. 9.)

[4] Plaintiff also alleges the Restriction Letter was issued in retaliation for exercising his First Amendment free speech rights and in violation of the Constitution's Due Process clause. However, in this Order, the Court need not address those claims, because Plaintiff "need only establish a likelihood of succeeding on the merits of any one of [his] claims." *See Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Engineers*, 826 F.3d 1030, 1040 (8th Cir. 2016) (cleaned up).

3

¶¶ 107-124.) Now pending is Plaintiff's Motion for a Preliminary Injunction, (Doc. 3). This Motion is fully briefed, (Docs. 5, 16, 21), and below the Court addresses the parties' arguments.

## II. Legal Standard

In deciding whether to grant Plaintiff a preliminary injunction, the Court considers the four *Dataphase* factors: (1) Plaintiff's likelihood of success on the merits; (2) the threat of irreparable harm to Plaintiff; (3) the balance between this harm and the injury that granting injunctive relief would inflict on other parties; and (4) whether the injunction is in the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

## III. Analysis

Before addressing the parties' specific arguments, the Court notes other federal district courts have considered cases like this one and granted an injunction or entered summary judgment for the plaintiff, generally ruling a restriction prohibiting the plaintiff from attending public events on public school property violates the plaintiff's free speech rights.[5] The Court finds these cases instructive as it turns to the issues below.

### A. The Court will grant a preliminary injunction.

Of the *Dataphase* factors, "the probability of success factor is the most significant," so the Court starts with it. *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (cleaned up). "Generally, if a party shows a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are deemed to have been satisfied." *Rodgers*

---

[5] *E.g.*, *Worthley v. Sch. Comm. of Gloucester*, 652 F. Supp. 3d 204 (D. Mass. 2023); *McBreairty v. Sch. Bd. of RSU 22*, 616 F. Supp. 3d 79 (D. Me. 2022); *Coffelt v. Omaha Sch. Dist.*, 309 F. Supp. 3d 629 (W.D. Ark. 2018); *Wilson v. N. E. Indep. Sch. Dist.*, 2015 WL 13716013 (W.D. Tex. Sept. 30, 2015); *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536 (D. Vt. 2014). *See also Hotchkiss v. Cedar Rapids Comm. Sch. Dist.*, 2023 WL 6163487 (N.D. Iowa Sept. 21, 2023) (ruling the plaintiff had stated plausible claims); *McNeally v. HomeTown Bank*, 2022 WL 2220922 (D. Minn. June 21, 2022) (same).

*v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019) (cleaned up). Accordingly, the Court begins by assessing Plaintiff's likelihood of success.

### 1. Plaintiff's likelihood of success on the merits

The parties dispute what showing Plaintiff must make, as "[t]here are two standards a district court may apply when assessing a movant's probability of success on the merits." *D.M. by Bao Xiong v. Minnesota State High Sch. League*, 917 F.3d 994, 999 (8th Cir. 2019). The applicable standard depends on what the plaintiff seeks to enjoin. *Id.* at 999-1000. When the plaintiff seeks to enjoin government policy that was implemented through legislation or regulation developed via the presumptively reasoned democratic processes, the "more rigorous" standard of "likely to prevail" applies. *Id.* Otherwise, the lower standard of "fair chance of prevailing" applies. *Id.* at 999. This lower standard applies "in most instances." *Id.*

Defendants argue the more stringent likely-to-prevail should apply, because a democratically elected Board of Education formally enacted Policy 1431, which underlies the Restriction Letter. (Doc. 16, p. 10.) The Court is skeptical, as Plaintiff is not challenging Policy 1431 but rather only the Restriction Letter, and there is no evidence in the Record that the Restriction Letter was enacted and issued in a manner akin to a state or federal statute or regulation. *See D.M. by Bao Xiong*, 917 F.3d at 1000. However, given federal courts appear to have taken different approaches, the Court concludes it need not definitively decide which standard applies here, as under either Plaintiff has shown a likelihood of success, for the reasons discussed below. *See, e.g.*, *L. H. v. Indep. Sch. Dist.*, 2023 WL 2192234, at *3 (W.D. Mo. Feb. 23, 2023) (surveying law and taking the same approach).

5

Plaintiff alleges the Restriction Letter violates his First Amendment free speech rights by prohibiting him from attending public fora on public school property. (Doc. 1 ¶¶ 107-124.) "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 44 (1983). Though the nomenclature used has varied, case law recognizes three broad categories of First Amendment fora: (1) the public forum; (2) the designated public forum; and (3) the limited public forum.[6] *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 334-35 (8th Cir. 2011).

"A limited public forum, like a nonpublic forum, may be limited to use by certain groups or dedicated solely to the discussion of certain subjects[.]" *Id.* at 334 (quotation omitted). Here, the parties agree that a limited public forum analysis applies to Plaintiff's claim. (Doc. 5, pp. 15-16; Doc. 16, pp. 11-12 & n.1; Doc. 21, p. 4.). The law supports this approach. *E.g.*, *Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012) ("For First Amendment purposes, the School Board meeting was what has variously been called a nonpublic or a limited public forum.").

At a limited public forum, a public official may restrict speech if the restriction is both reasonable and viewpoint-neutral. *Victory Through Jesus*, 640 F.3d at 334. "When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000).

Plaintiff's primary argument is that the Restriction Letter, which categorically prohibits him from accessing District property for one year—and thus prohibits him from speaking at public

---

[6] A limited public forum has sometimes also been called a nonpublic forum, because it arises only if a governmental entity has opened up a piece of property, thereby creating a forum for the public to use. *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 334–35 (8th Cir. 2011).

6

fora held there, including Board meetings—is not reasonable. The Court agrees. Courts have analyzed the reasonableness of a prohibition like the Restriction Letter by comparing the plaintiff's actions and the harm they caused or pose with the severity of the ban. *See, e.g.*, *Coffelt*, 309 F. Supp. 3d at 642-44. Here, while expressing his criticisms of the District's Board and Superintendent, Plaintiff caused some type of non-violent incident at three meetings, including the January 10 Board meeting. Given his actions, the Restriction Letter was not reasonable, as other federal district courts have ruled in similar circumstances.[7]

Defendants' arguments defending the Restriction Letter are not persuasive. First, Defendants argue a person does not have the right to unfettered access to school property and thus an individual like Plaintiff who is banned from school property does not have a viable constitutional claim. (*See* Doc. 16, pp. 11-12.) Defendants rely heavily on *Miller v. Montgomery Cnty. R-II Sch. Dist., Bd. of Educ.*, 2011 WL 1299536 (E.D. Mo. Apr. 1, 2011), but that case (and others like it) concern a person's general right to access school property. In contrast, this case specifically concerns Plaintiff's free speech right at a public forum on school property. In cases like this one, the legal principles Defendants rely on are inapplicable. *E.g.*, *Coffelt*, 309 F. Supp. 3d at 639 ("The issue in this case has never been whether a parent or member of the general public has an unfettered right to access school grounds during school hours[.]").

---

[7] *See, e.g.*, *Worthley*, 652 F. Supp. 3d at 212-15 (D. Mass. 2023) (finding it unreasonable to ban plaintiff for the rest of the school year, based on plaintiff inappropriately communicating with a student); *McBreairty*, 616 F. Supp. 3d at 96 (D. Me. 2022) (same regarding an eight-month ban, based on plaintiff not complying with board chair's instructions); *Coffelt*, 309 F. Supp. 3d at 642-44 (same regarding an indefinite ban, based on plaintiff losing temper during a closed-door meeting with school officials); *Wilson*, 2015 WL 13716013, at *1, *5-6 (same as to two-year ban, based on a conversation in which plaintiff called a school official a liar and twisted his fingers); *Cyr*, 60 F. Supp. 3d at 546-50 (same as two-year ban, based on plaintiff's actions which school officials found threatening).

7

Defendants also rely heavily on *Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012), which stated a public entity's ability to restrict speech in a limited public forum "necessarily included the authority to remove an unruly or disruptive member of the audience to prevent his badgering, constant interruptions, and disregard for the rules of decorum." (Doc. 16, p. 11.) But *Green* concerned whether school officials can, based on a person's behavior during a meeting, lawfully remove that person from the meeting. In contrast, here the issue is whether Defendants can prohibit Plaintiff from future meetings. *Green* does not support the Restriction Letter.

Next, Defendants defend their Restriction Letter based on Plaintiff's actions—which they characterize as a series of escalating disruptions during meetings—and attempt to distinguish one of the cases Plaintiff cites (*Wilson*) as involving a single hostile incident. (Doc. 16, pp. 12-16.) The Court is not persuaded, as the case law discussed above shows courts have rejected bans purportedly justified by actions ranging from meeting disruptions (*e.g.*, *McBreairty*) to a pattern of outwardly threatening conduct (*e.g.*, *Cyr*). Plaintiff cited numerous cases (including *McBreairty* and *Cyr*) and Defendants make no attempt to distinguish them. Moreover, Plaintiff's actions here—three incidents over the span of one year, each of which was non-violent and relatively minor—stand in stark contrast to cases in which a court has upheld a ban from school property against various challenges. *See, e.g.*, *Mejia v. Holt Pub. Sch.*, 2002 WL 1492205, at *1 (W.D. Mich. Mar. 12, 2002) (upholding ban based on allegations plaintiff masturbated or otherwise exposed himself in school parking lot); *Henley v. Octorara Area Sch. Dist.*, 701 F. Supp. 545 (E.D. Pa. 1988) (same, based on plaintiff dumping a slain livestock carcass on school grounds where it would be in plain view of students).

Finally, Defendants contend the Restriction Letter does not operate as a prior restraint on Plaintiff's speech, arguing they have restricted only his access to school property. (Doc. 16, p. 14-15.). The case law discussed herein is to the contrary: "While the [ban] issued here does not explicitly contemplate restricting [the plaintiff's] speech, because it acts to exclude her from school board meetings, it is effectively a categorical ban on all speech—including speech that would be protected in the context of a school board meeting." *Wilson*, 2015 WL 13716013, at *3. Given the Restriction Letter categorically prohibits Plaintiff from entering District property without first obtaining an exception from Superintendent Herl, the Court finds it constitutes a prior restraint. *See City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988). It is not relevant that Plaintiff has never asked for an exception and that Superintendent Herl has given others exceptions, because a prior restraint risks censorship and thus there is a heavy presumption it is not constitutional. *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975). Here, Defendants have not overcome that presumption.

Given the finding the Restriction Letter is not reasonable, the Court need not also analyze whether it is viewpoint-neutral.[8] Plaintiff has shown a likelihood of success on the merits on his free speech claim, and the Court proceeds to analyzing the remaining *Dataphase* factors.

### 2. The threat of irreparable harm to Plaintiff

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v.* Burns, 427 U.S. 347, 373 (1976). Accordingly, the Court

---

[8] However, the Court recognizes courts have come to differing conclusions on this point. *Compare Coffelt*, 309 F. Supp. 3d at 644 ("Given all of the above, the Court cannot conclude that [school district's] ban was reasonable or viewpoint-neutral.") *with Wilson*, 2015 WL 13716013, at *5 ("The [ban] was issued due to the concern that [the plaintiff] posed a threat to school system staff; it had nothing to do with the content of her speech or a particular viewpoint she espoused.").

finds Plaintiff has shown a threat of irreparable harm. The Court rejects Defendants' argument that, because Plaintiff did not ask Superintendent Hurl for an exception to the Restriction Letter, he cannot show an irreparable injury. (Doc. 16, pp. 18-19.)

> **3. The balance between the harm to Plaintiff and the injury that granting injunctive relief would inflict on other parties; and whether the injunction is in the public interest.**

The Court considers the balance-of-equities and public-interest factors together. The balance-of-equities analysis generally favors constitutional free speech. *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019). "It is always in the public interest to prevent the violation of a party's constitutional rights." *Brandt by & through Brandt v. Rutledge*, 47 F.4th 661, 672 (8th Cir. 2022) (cleaned up).

The Court finds these legal principles are also true here. If the Court enjoins the Restriction Letter, Defendants worry about their ability to conduct orderly public meetings. (Doc. 16, p. 19.) But the Restriction Letter applies only to Plaintiff, and it is not certain he will attend—let alone disrupt—a future meeting. If Plaintiff does cause a disruption, then Defendants can remove him and he may face arrest and prosecution, as occurred here. Thus, Defendants will maintain their ability to run orderly meetings and maintain a safe school environment. As for Plaintiff, the Record shows that—although his incidents were relatively minor and neither violent nor threatening—he will suffer a severe harm, as the Restriction Letter categorically prohibits his free speech rights at public fora on District property on a continuing and ongoing basis. *Coffelt*, 309 F. Supp. 3d 629, 636 (W.D. Ark. 2018) ("Compared to the irreparable harm that [the plaintiff] will suffer in the absence of injunctive relief, the Court finds that the harms to the [school district] are largely

illusory and speculative."). Thus, both the balance-of-equities and the public interest favor granting the injunction, and the Court will enjoin the Restriction Letter.

### B. The Court will waive security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Plaintiff asks the Court to waive security, and Defendants do not contest this point. Given the nature of the Restriction Letter, the Court finds no security is required and will waive the security requirement.

### IV. Conclusion

Defendants have a legitimate interest in maintaining a safe school environment and conducting orderly public meetings, but on the Record presented here the Restriction Letter is not reasonable. Accordingly, Plaintiff's Motion for Preliminary Injunction, (Doc. 3), is **GRANTED** as follows.

During this litigation or until further Court Order, Defendants are **ENJOINED** from enforcing the Restriction Letter against Plaintiff or otherwise prohibiting him from accessing District property it holds open to the public as a public forum.

**IT IS SO ORDERED.**

Date: December 11, 2023

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT