IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

JASON VOLLMECKE,            )
                               )
       Plaintiff,           )     Case No. 4:23-cv-00644-BP
                               )
   v.                    )
                               )
THE SCHOOL DISTRICT OF THE CITY   )
OF INDEPENDENCE DISTRICT NO. 30 (a/k/a  )
INDEPENDENCE SCHOOL DISTRICT),   )
BOARD OF EDUCATION OF INDEPENDENCE )
SCHOOL DISTRICT, and   )
DALE HERL, in his individual capacity,   )
                               )
       Defendants.       )

## FIRST AMENDED COMPLAINT

1.     Plaintiff Jason Vollmecke, D.C., C.M.E., is a resident of Independence, Missouri. He is a vocal, engaged member of the Independence community and concerned with the functioning of the Independence School District.

2.     Dr. Vollmecke has volunteered his time to assist the School District, teachers, and students for several years.

3.     In late 2021, Dr. Vollmecke began voicing concerns about the actions of the School District, the Board of Education of the Independence School District, and Superintendent Dale Herl. Dr. Vollmecke addressed the Board of Education at its monthly meetings on several occasions to discuss a variety of issues, including concerns over the School District's handling of the COVID-19 pandemic, proposed changes to a medical terminology course, removal of a book from an elementary school library, and a proposal to move to a four-day school week.

4. Dr. Vollmecke also submitted a request under the Missouri Sunshine Law for records pertaining to an increase in the number of discrimination lawsuits filed against the School District under Superintendent Herl's leadership.

5. On January 11, 2023, following Dr. Vollmecke's attempt to speak at a Board meeting, Superintendent Herl banned Dr. Vollmecke from "being present at or attending any event on Independence School District property" for an entire year (the "Ban").

6. The School District did not give Dr. Vollmecke any prior notice of the Ban or any opportunity to be heard and did not provide any way to contest or appeal the Ban.

7. Dr. Vollmecke brings this lawsuit to challenge the Ban as unconstitutional, to remedy the violations to his constitutional rights, and to seek an immediate end to the Ban. On December 11, 2023, the Court granted Dr. Vollmecke's motion for preliminary injunction to bar enforcement of the unconstitutional Ban.

## JURISDICTION AND VENUE

8. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of rights secured by the First and Fourteenth Amendments to the United States Constitution.

9. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all relevant events giving rise to the claims occurred within Independence, Missouri.

11. Divisional venue is proper in this Court because the events serving as the basis for Dr. Vollmecke's claims arose in Independence, Missouri, and at least one Defendant resides in Independence, Missouri.

2

## THE PARTIES

12. Plaintiff Jason Vollmecke is a citizen of Missouri. At all relevant times, he resided in Independence, Missouri.

13. Dr. Vollmecke is a graduate of Independence School District schools. He has a young son who will be a future student in the district.

14. Since at least November 2016, Dr. Vollmecke has regularly volunteered his time to assist the School District and its students. A Chiropractic Physician and Certified Medical Examiner, Dr. Vollmecke has been regularly invited to schools within the School District to conduct guest lectures, participate in career counseling, advise students on science projects, provide physicals and scoliosis screenings, and assist with teaching various courses.

15. Dr. Vollmecke has also been involved in the School District's ISD Academies, one of which offers a science, technology, engineering, and math program ("STEM Academy") for students interested in pursuing careers in the sciences, including medical fields.

16. From September 2018 until the Ban, Dr. Vollmecke was the Chair of the School District's Biomedical Sciences Advisory Committee, which advises on the curriculum and budgeting and funding issues for the School District's STEM Academy.

17. In 2018, the School District's annual ISD Academy Awards recognized Dr. Vollmecke as a Business Partner of the Year Honoree and recognized his practice, Vollmecke Chiropractic, with an Engagement Award.

18. Defendant The School District of the City of Independence District No. 30 (a/k/a Independence School District) is a Missouri school district that operates public schools within Independence, Missouri. Independence School District is a public school system organized and maintained under the laws of the State of Missouri.

3

19.     Defendant Board of Education of the Independence School District is the governing body of the School District.

20.     Defendant Dale Herl is the Superintendent of the School District and serves as the chief executive officer of the School District. Superintendent Herl banned Dr. Vollmecke from all School District property, including from events and activities open to the general public and from property where the Board of Education holds open public meetings.

21.     At all relevant times, the School District, Board of Education, and Superintendent Herl, as well as their agents, employees, officers, and representatives, have acted under color of state law in enforcing the Ban and policies of the Board of Education.

## FACTS

### *Policies of the Board of Education*

22.     Certain Board of Education Policies identified below were in effect before and at the time of Dr. Vollmecke's Ban from the School District on January 11, 2023. The Board revised its policies effective July 12, 2023. Where relevant, the revised policies are described below as "revised."

23.     Board of Education Policy 0310, which addresses the Board's purpose and role, stated that "the Board is accountable to the electorate" and "[t]he Board is responsible for keeping the district patrons informed about the schools, and for keeping itself and the school staff informed about the needs and wishes of the public."

24.     The revised purpose-and-role Policy, G-100-P, similarly states that "the Board will be accountable to the public" and "[t]he Board acts as a liaison between the District and the community by promoting school programs in the community and channeling concerns from community members to the appropriate District points of contact."

4

25.    Policy 0410 on public meetings stated "[t]he Board of Education shall meet in regular sessions within the [School] District boundaries throughout the year to transact such business as deemed necessary for the effective operation of the [School] District."

26.    Policy 0410 also stated "[a]ll meetings of the Board of Education shall be open to the public and the press, except closed sessions as authorized by law."

27.    The revised Policy C-135-P on public meetings similarly states that "Board meetings are open to the public unless closed as allowed by law," as does Policy G-155-P ("All meetings of the Board shall be open to the public except for when the Board meetings in executive session.").

28.    The Board of Education holds these public meetings every second Tuesday of the month at 6:00 p.m. at the School District Central Office, 201 N. Forest Avenue, Independence, Missouri 64050.

29.    Policy 0412 on public comments stated that "[t]he Board of Education is very interested in citizen viewpoints and problems" and "[a] period of up to thirty (30) minutes will be allotted for public comment by [School] District residents and staff members who seek to address the Board regarding an item on the agenda included in the notice of meeting."

30.    The revised public comment Policy C-140-P provides that "[i]n addition to written submissions, a specific time may be set aside at regular Board meetings for public comments regarding items from the posted agenda," and requires that "[a]t each meeting, up to thirty minutes will be allotted for public comment."

31.    Policy 1431 established a code of conduct for "all employees, parents, patrons, and visitors on school premises and at school activities." It stated: "All employees, parents, patrons,

and visitors will be expected to conduct themselves in a manner reflective of a positive role model for children. Public displays contrary to this expectation as provided in Regulation 1431 will result in sanctions which will limit a person's access to school activities and school premises."

32.     Defendants do not have any other policies or documents relating to or reflecting the meaning behind "positive role model for children."

33.     Regulation 1431 provided that, to ensure a "safe and orderly environment" for students to "maximize their educational and social development," "[v]erbally aggressive behavior" will result in limited access to school premises for up to one year. The regulation further stated, "The length of the restriction will be determined by the Superintendent of Schools."

34.     Policy 1431 and Regulation 1431 do not provide for notice or an opportunity to appeal a ban from school property.

35.     Similar to Policy 1431, the revised code-of-conduct Policy C-155-P provides that visitors to school property must demonstrate "appropriate behavior as good role models for the District's students." It further states: "Visitors who engage in disruptive conduct or exceed the scope of permission granted may be considered trespassers and subject to arrest and prosecution."

36.     This revised code-of-conduct Policy C-155-P gives complete discretion over bans from school property and events to the Superintendent: "The Superintendent or designee may limit or revoke permission to visit school property or parts of school property *at any time*. The Superintendent or designee may inform the visitor that he or she is not welcome back on District property or at District events *indefinitely* or for a specific period of time." (emphasis added).

37.     Policy C-155-P does not provide for notice or an opportunity to appeal a ban from school property.

38.     Board candidate Policy G-235-P sets forth the procedures for becoming a candidate for the Board of Education elections.

39.     It states that applicants for the "Board may file a declaration of candidacy during business hours in the Superintendent's office commencing at 8:00 a.m. on the seventeenth Tuesday prior to the election and ending at 5:00 p.m. on the fourteenth Tuesday prior to the election. The candidate shall declare his or her intent to become a candidate in person and in writing to the Secretary of the Board or designee."

***Dr. Vollmecke's Engagement in the School District and His Criticisms of the School District, Board of Education, and Superintendent Herl***

40.     As a graduate of the School District who is grateful for the education he was provided and a parent of a future student in the district, Dr. Vollmecke is interested in the policies and actions of the School District and Board of Education.

41.     Beginning sometime in mid-2020, Dr. Vollmecke began discussing with Superintendent Herl concerns with the way the School District was addressing issues arising from the COVID-19 pandemic.

42.     In addition, Dr. Vollmecke began regularly attending Board of Education meetings in December 2021. At those meetings, he raised similar concerns with the School District's approach to COVID-19 and also raised concerns regarding other School District actions or policies.

43.     In December 2021, Dr. Vollmecke filed his candidacy for a seat on the Board of Education.

44.     In an open forum featuring candidates for the Board of Education in March 2022, Dr. Vollmecke stated that he was running for the Board to restore accountability to the Board through transparency and communication, to help enforce the Board's executive duty to provide

effective oversight of the superintendent, and to help eliminate the hostile workplace and fear of retaliation that had developed in the district.

45.    Current Board members Jill Esry and Anthony J. Mondaine participated in this forum with Dr. Vollmecke.

46.    Although Dr. Vollmecke was not elected to the Board in the April 5, 2022 election, he remained engaged in issues relating to the School District.

47.    On April 12, 2022, following the election, Dr. Vollmecke spoke during the public comment period at the Board's monthly meeting.

48.    Dr. Vollmecke stated that public comments by incumbent Board members providing generic position statements on issues that don't vary from member to member and that mirror statements by the superintendent give the impression that Board members are deferring to the superintendent "rather than looking into things for yourself."

49.    Dr. Vollmecke said that the failure of Board members to make independent evaluations was "dangerous." He cited written examples from teachers and students describing mistreatment and a hostile work environment within the School District.

50.    Dr. Vollmecke said Board members either knew of the hostile work environment and approved of it, knew of it and have been made to feel powerless to do anything about it, or had no idea what is going on within the schools.

51.    Dr. Vollmecke stated his belief that between 1980 and 2012, there were four discrimination lawsuits filed against the District. Dr. Vollmecke stated that starting in November 2013, when Superintendent Herl took office, through 2021, there had been 16 such lawsuits filed against the District.

52.     Dr. Vollmecke also cited statistics that he said reflected that in recent years the percentage of School District teachers with advanced degrees had dropped and the rate of inexperienced teachers had increased.

53.     Dr. Vollmecke stated the School District's student standardized test scores compared unfavorably to other nearby districts.

54.     After citing additional concerns relating to student safety, Dr. Vollmecke concluded his statement by asking the Board, "Please, do better."

55.     The next day, on April 13, 2022, Dr. Vollmecke submitted a Missouri Sunshine Law request for documents relating to legal settlements in discrimination cases filed against the School District and/or Superintendent Herl.

56.     On August 9, 2022, Dr. Vollmecke again addressed the Board during the public comment period and sharply criticized the Board's recent decision to remove a particular book from elementary school libraries.

57.     Dr. Vollmecke stated the Board's actions were unconstitutional and based on a repeated failure by the District to recognize the challenges of its students, particularly students who were members of the LGBTQI+ community. Dr. Vollmecke criticized what he described as the School District's failure to recognize students' preferred pronouns, the district making teachers feel afraid for showing support for LGBTQ+ students, and the removal of a book based on its use of gender-neutral pronouns.

58.     He described the Board of Education's stated justification for the book ban as "asinine," "ignorant," and "such an absurd false dichotomy that brings into question your ability to make logical decisions for this district."

59.     Dr. Vollmecke further criticized the board for failing to educate itself before making its decision, saying it was "lazy and shameful."

60.     Dr. Vollmecke stated: "As a board, you failed to show due diligence, insight and basic cultural competency in what amounts to be an embarrassingly ignorant decision."

61.     Before the start of a Board meeting on September 13, 2022, Dr. Vollmecke told Superintendent Herl that he held Herl accountable for the death of a school nurse who died by suicide after she contracted COVID while working at the school and experienced long COVID symptoms.

62.     In late 2022, Dr. Vollmecke learned of the School District's plans to move to a four-day school week.

63.     Dr. Vollmecke opposed these plans, believing a four-day school week was not in the best interests of the students, staff, or community. He submitted questions about the proposed change at a community forum, but his questions were not read aloud or otherwise answered at the forum.

64.     In December 2022, Dr. Vollmecke planned to address the Board of Education regarding the proposed move to a four-day school week.

65.     Dr. Vollmecke was scheduled to address the Board of Education at the December 2022 meeting but was not able to attend because he tested positive for COVID.

66.     Superintendent Herl would not permit Dr. Vollmecke to have a proxy read his prepared statements at the December 2022 meeting. Superintendent Herl also would not permit Dr. Vollmecke to deliver his comments via videoconferencing.

67.     Unable to attend the meeting or have a proxy, Dr. Vollmecke submitted his questions to Superintendent Herl and all the Board members via email.

10

68.     Dr. Vollmecke notified the Board Secretary of his intent to address an agenda item at the next meeting, on January 10, 2023.

### *The January 2023 Board of Education Meeting and Dr. Vollmecke's Arrest for Trespass and Ban from School District Property*

69.     On the day of the January 10, 2023 meeting, Dr. Vollmecke was delayed leaving his workplace and was not able to arrive at the meeting by the 6:00 p.m. start time.

70.     The public comment period was listed as the second item on the agenda for that night's meeting.

71.     Because he knew the public comment period was typically early in the meeting, Dr. Vollmecke notified others who were in attendance that he was running late and asked them to advise the Board of Education that he was on his way.

72.     When Dr. Vollmecke arrived at the main entrance of the Central Office, a man who Dr. Vollmecke would later learn was the School District's director of public safety, Dennis Green, was waiting and let him in the building, as the building was often locked once the meeting began.

73.     Once inside the building, at approximately 6:03 p.m., Dr. Vollmecke and Mr. Green approached a reception desk, where Mr. Green had Dr. Vollmecke sign in and then gave him a copy of the Board packet.

74.     Mr. Green accompanied Dr. Vollmecke to the room where the Board meeting was taking place at about 6:04 p.m.

75.     When Dr. Vollmecke walked into the room, the Board had moved to other items on its agenda. Dr. Vollmecke did not want to interrupt, so he sat down with other members of the public and decided to wait to address the Board.

76.     When a member of the Board made a motion to adjourn the open meeting and move into closed session, Dr. Vollmecke raised his hand seeking to address his comments to the Board and walked to the podium.

77.     Members of the public had remained seated in the audience at this time, as the Board typically took a short break between the open and closed portion of its meeting. During this time, members of the Board sometimes left the dais and chatted with individuals in attendance, or individuals in attendance would approach the dais to chat with Board members, before the public left the meeting and the closed portion of the meeting began.

78.     When he approached the podium, several members of the Board and School District staff began speaking to Dr. Vollmecke at once, saying the Board was adjourned.

79.     Dr. Vollmecke responded that he had given notice of his intent to address the Board.

80.     Members of the Board said they had waited for Dr. Vollmecke at the beginning of the meeting, but he would no longer be allowed to give public comments at that meeting.

81.     Either Superintendent Herl or a member of the Board stated, "We're adjourned."

82.     Dr. Vollmecke, understanding there would be the usual break between the open public meeting and the closed meeting, said he would just stand and read his comments to anyone who wants to listen.

83.     Dr. Vollmecke then began to read his comments.

84.     At that time, many members of the public were still seated in the meeting room.

85.     Mr. Green, who did not identify himself, approached the podium and told Dr. Vollmecke that he needed to leave. No other members of the public were asked to leave.

86.     Dr. Vollmecke responded that he believed he had a right to be there. Mr. Green repeated he needed to leave.

12

87.     Mr. Green stated that if Dr. Vollmecke did not leave, he would be arrested for trespassing.

88.     Dr. Vollmecke offered his hands to the school resource officer, who had also approached the podium. The officer immediately escorted him from the room and placed him under arrest.

89.     At no point during this interaction did Mr. Green identify himself as the director of public safety.

90.     Dr. Vollmecke did not raise his voice, use aggressive language, harass, exhibit violent behavior, or have physical contact with any School District employee or other individual during the January 10, 2023 Board of Education meeting.

91.     While the school resource officer walked Dr. Vollmecke out of the meeting room, all other members of the public were allowed to remain.

92.     The next day, Dr. Vollmecke received a letter from Superintendent Herl ("Ban Letter"). (*See* Letter from Dale Herl to Jason Vollmecke, Jan. 11, 2023, Ex. 1.)

93.     The Ban Letter states that due to Dr. Vollmecke's conduct on January 10, 2023, he may not be present at any event or be present on any School District property until January 10, 2024 (the "Ban"). *Id.*

94.     The Ban Letter further prohibits Dr. Vollmecke from any involvement in ISD Academies, including "all interactions with students and any committees in which [he has] served upon," including the Biomedical Sciences Advisory Committee. The Ban Letter does not state an end date for this restriction.

95. Superintendent Herl and the members of the Board were aware of Dr. Vollmecke's frequent, sharp criticisms of their school policies and decisions when Superintendent Herl banned him from all school property.

96. Superintendent Herl's Ban Letter does not set out any process to contest or appeal the Ban, nor was any such process available.

97. The Ban Letter cites Board of Education Policy 1431 on code of conduct as authority for the Ban.

98. Policy 1431 stated "employees, parents, patrons, and visitors will be expected to conduct themselves in a manner reflective of a positive role model for children. Public displays contrary to this expectation as provided in Regulation 1431 will result in sanctions which will limit a person's access to school activities and school premises."

99. According to the Ban Letter, if Dr. Vollmecke enters any school property without Superintendent Herl's permission, "it will be considered trespassing by the School District and local law enforcement authorities will be called," and failure to comply with the restrictions will result in the School District "pursu[ing] all available civil or criminal remedies."

100. The Ban Letter provides Superintendent Herl with exclusive authority to determine whether Dr. Vollmecke will be allowed on School District property.

101. Superintendent Herl now attests that he banned Dr. Vollmecke based on the arrest for trespassing as well as for "prior disruptive conduct."

102. Superintendent Herl attests that he also imposed the Ban in part based on Dr. Vollmecke's alleged interruption of Dr. Randy Maglinger on or about January 11, 2022, a year before he imposed the Ban on Dr. Vollmecke.

14

103.     Superintendent Herl attests that he imposed the Ban in part based on a PTA Council meeting in which Dr. Vollmecke allegedly glared at him and based on comments Dr. Vollmecke made to Superintendent Herl between open and closed sessions of a Board meeting in which Dr. Vollmecke accused Dr. Herl of causing the death of a staff member.

104.     Until this Court enjoined Defendants from enforcing the Ban, the Ban prevented Dr. Vollmecke from attending Board of Education meetings that he would have otherwise attended since February (at least 13 meetings).

105.     But for the Ban, Dr. Vollmecke would have attended Board of Education meetings to learn about Board and School District activities and proposals, interacted with other concerned residents at those meetings, and spoken during public comment periods.

106.     But for the Ban, Dr. Vollmecke would have continued his leadership as Chair of the School District's Biomedical Sciences Advisory Committee, as well as providing his medical expertise and recommendations to the Committee.

107.     But for the Ban, Dr. Vollmecke would have continued conducting guest STEM lectures for students, providing physicals and scoliosis screenings, and assisting with the teaching of various courses, such as anatomy.

108.     The Ban also prevented Dr. Vollmecke from being present on School District property at times and during events that are otherwise open to the general public. Dr. Vollmecke could not take his son to a School District playground on the weekend.

109.     Dr. Vollmecke was not able to attend high school athletic events on School District property, preventing him from seeing kids he coached in youth sports play their high school games.

110.     School policies require that Dr. Vollmecke access school property to run for a seat on the Board of Education.

15

111.     For the next Board election on April 2, 2024, candidate Policy G-235-P required applicants to file for office in the Superintendent's office by the 14th Tuesday before the election, which was on December 26, 2023. It also required applicants to declare their intent to become a candidate, and obtain a petition form, in person with the Secretary of the Board (or designee).

<u>COUNT I – Impermissible Restriction on Speech in Public Forum</u>
**Violation of the First Amendment to the U.S. Constitution against all Defendants**
**(42 U.S.C. § 1983)**

112.     Dr. Vollmecke repeats the allegations set forth above as if fully set forth herein.

113.     The First Amendment to the U.S. Constitution prohibits the abridgment and chilling of free speech.

114.     The First Amendment is applicable to the states through the Fourteenth Amendment.

115.     Speech critical of the government and its officials, including Dr. Vollmecke's speech that criticized the School District, Board of Education members and district employees— including Superintendent Herl—is protected speech under the First Amendment.

116.     Persons violating the First Amendment under color of state law are liable at law and in equity under 42 U.S.C. § 1983.

117.     The public comment period of the open public meetings of the Board of Education constitutes a public forum.

118.     Sporting events held on school property and open to the public are also limited public forums.

119.     Because the public comment period of the open public meetings of the Board of Education and school sporting events are, at the least, limited public forums, Defendants cannot unreasonably exclude individuals from those meetings or events.

16

120.     Dr. Vollmecke engaged in constitutionally protected speech when he attended open public meetings of the Board of Education to voice his opinions and express disagreement with Defendants' policies and actions.

121.     Dr. Vollmecke was prevented, chilled, and inhibited from engaging in constitutionally protected First Amendment activity as a result of the Ban, because the Ban prevented him from attending and speaking at open public meetings of the Board of Education and public sporting events, which are held on School District property.

122.     Defendants, by banning Dr. Vollmecke from these meetings from January 11, 2023, to January 10, 2024, violated Dr. Vollmecke's free-speech rights under the First Amendment because the Ban unlawfully restrained Dr. Vollmecke's speech and participation in a public forum on matters of public interest and concern.

123.     Restrictions on speech in limited public forums must be both reasonable in light of the forum's purpose and viewpoint neutral. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

124.     The Ban burdened substantially more speech than was necessary for the School District to achieve any legitimate interest, failed to leave open alternative avenues for expression, and was unreasonable in light of the purpose of the forums.

125.     Defendants' knowledge of Dr. Vollmecke's criticisms and the timing and length of the Ban demonstrate that the Ban was motivated by Defendants' disagreement with Dr. Vollmecke's opinions and criticisms of School District policies and actions. The Ban thus also constituted unlawful viewpoint discrimination.

17

126. The Ban on Dr. Vollmecke further operated as an unconstitutional prior restraint on Dr. Vollmecke's speech because it prevented him from speaking at Board meetings absent permission from Superintendent Herl.

127. The permission requirement delegated unfettered discretion to a single official and constituted an unlawful prior restraint on Dr. Vollmecke's speech.

128. Dr. Vollmecke was forced to alter his constitutionally protected activities to avoid further adverse actions from the School District.

129. Until they were enjoined by this Court, Defendants continued to violate the First Amendment rights of Dr. Vollmecke by enforcing the Ban.

**COUNT II – Retaliation**
**Retaliation in Violation of the First Amendment**
**to the U.S. Constitution against all Defendants**
**(42 U.S.C. § 1983)**

130. Dr. Vollmecke repeats the allegations set forth above as if fully set forth herein.

131. Dr. Vollmecke engaged in constitutionally protected speech when he voiced his opinions and complaints regarding disagreements with School District, Board of Education, and Superintendent Herl's policies and actions.

132. Defendants banned Dr. Vollmecke from open public meetings of the Board of Education and from presence on other District property for a full year in retaliation for his constitutionally protected speech.

133. Defendants even prohibited Dr. Vollmecke from any involvement in ISD Academies, including any interactions with students or with the Biomedical Sciences Advisory Committee, of which he was the chair.

134. Defendants knew of Dr. Vollmecke's criticisms, disapproved of them, and banned Dr. Vollmecke shortly after he lodged those criticisms, preventing him from—among other

18

things—speaking at open public meetings of the Board of Education and from attending school events, such as athletic games, that are open to the public.

135. The Ban was motivated by Dr. Vollmecke's constitutionally protected activities, namely his criticisms of Superintendent Herl, the School District, and Board of Education policies at multiple Board meetings.

136. Superintendent Herl now attests that he banned Dr. Vollmecke based on the arrest for trespassing as well as for "prior disruptive conduct."

137. Superintendent Herl attests that he imposed the Ban in part based on a PTA meeting in which Dr. Vollmecke allegedly glared at him and in part on comments Dr. Vollmecke made to Superintendent Herl between open and closed sessions of a Board meeting in which Dr. Vollmecke accused Dr. Herl of causing the death of a staff member. Dr. Vollmecke's glare and comments are constitutionally protected expression.

138. Superintendent Herl notified Dr. Vollmecke that if he "enter[s] school property" without Herl's permission "it will be considered trespassing by the School District and local law enforcement authorities will be called."

139. Dr. Vollmecke was prevented, chilled, and inhibited from engaging in constitutionally protected First Amendment activity as a result of the Ban.

140. Dr. Vollmecke was forced to alter his constitutionally protected activities to avoid further adverse actions from the School District.

141. The Ban and Superintendent Herl's threats of legal action would chill a person of ordinary firmness from engaging in constitutionally protected First Amendment activity.

**COUNT III – Due Process**
**(Notice and Opportunity to be Heard)**
**Violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution**
**against all Defendants**
**(42 U.S.C. § 1983)**

142. Dr. Vollmecke repeats the allegations set forth above as if fully set forth herein.

143. Government entities and officials, including the School District, Board of Education, and Superintendent Herl, cannot deprive an individual of a property or liberty interest without due process of law.

144. Procedural due process requires both notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

145. Dr. Vollmecke has a strong First Amendment liberty interest in access to the public comment period of open public meetings of the Board of Education, which are at least limited public forums.

146. The Ban Letter did not set out a process for contesting the Ban, and Dr. Vollmecke did not have any opportunity to contest the Ban.

147. Any interest Defendants have in instituting and enforcing the Ban did not justify depriving Dr. Vollmecke of an opportunity to be heard or challenge the Ban.

148. The Board's code-of-conduct Policy 1431 permitted, and Policy C-155-P now permits, the Board of Education and Superintendent to deprive individuals of liberty interests in attending activities and events on School District property that are open to the general public, including public comment periods of open public meetings of the Board of Education and sporting events, without providing any process to contest the deprivation.

149. Because code-of-conduct Policy 1431 provided and Policy C-155-P now provides no opportunity for individuals to be heard in connection with a ban from School District property—

20

and there is no such opportunity otherwise available—they do not afford sufficient process prior to the deprivation of the liberty interests in attending activities and events on School District property open to the public, including public comment periods of open public meetings of the Board of Education and sporting events.

150.    Policy C-155-P gives complete discretion to the Superintendent to impose bans from school property, and the Superintendent can limit or revoke permission to visit school property "at any time" and "indefinitely."

151.    Dr. Vollmecke intends to continue to speak at Board meetings and to speak about Defendants and their policies. Based on the past Ban, Dr. Vollmecke is concerned that Defendants may enforce Policy C-155-P against him in the future to deprive him of access to attend Board meetings and to be present at other District events open to the public without notice or an opportunity to be heard.

152.    Dr. Vollmecke's right to expression is thus objectively chilled by Policy C-155-P.

153.    Declaratory and injunctive relief preventing enforcement of Policy C-155-P is required to protect Dr. Vollmecke's rights under the Due Process Clause.

**COUNT IV – Due Process**
**(Vagueness)**
**Violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution against all Defendants**
**(42 U.S.C. § 1983)**

154.    Dr. Vollmecke repeats the allegations set forth above as if fully set forth herein.

155.    If a government policy fails to provide the kind of notice that will enable a person of ordinary intelligence a reasonable opportunity to know what is prohibited, such policy is void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment.

21

156.    Superintendent Herl's Ban Letter states that Dr. Vollmecke was being banned due to his conduct on January 10, 2023, citing Policy 1431 as authority. (Ex. 1.)

157.    The Board's code-of-conduct Policy 1431 required visitors on school property to conduct themselves "in a manner reflective of a positive role model for children."

158.    Defendants do not have any other policies or documents relating to or reflecting the meaning behind "positive role model for children."

159.    Regulation 1431 permitted the Superintendent to limit access to school premises based on "[v]erbally aggressive behavior."

160.    Superintendent Herl made the decision to impose the Ban on Dr. Vollmecke entirely himself.

161.    Superintendent Herl had sole discretion whether to lift the Ban or grant Dr. Vollmecke permission to access school property.

162.    Dr. Vollmecke's due process rights were violated by the enforcement of Policy 1431 and Regulation 1431 against him because they fail to provide a person of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited and because they encourage arbitrary and discriminatory enforcement.

163.    Similarly, the Board's revised code-of-conduct Policy C-155-P requires visitors on school property to demonstrate "appropriate behavior as good role models for the District's students."

164.    Policy C-155-P gives complete discretion to the Superintendent to impose bans from school property, and the Superintendent may limit or revoke permission to visit school property "at any time" and "indefinitely."

22

165. Policy C-155-P is unconstitutionally vague because the subjective standard requiring "appropriate behavior as good role models for the District's students" fails to enable a person of ordinary intelligence a reasonable opportunity to know what is prohibited and to act accordingly and allows for arbitrary and discriminatory enforcement.

166. Dr. Vollmecke intends to continue to speak at Board meetings and to speak about Defendants and their policies. Based on the past Ban, Dr. Vollmecke is concerned that Defendants may enforce Policy C-155-P against him in the future to deprive him of access to attend Board meetings and to be present at other District events open to the public. Because Policy C-155-P is unconstitutionally vague, Dr. Vollmecke cannot understand what actions may subject him to its enforcement.

167. Declaratory and injunctive relief preventing enforcement of Policy C-155-P is required to protect Dr. Vollmecke's rights under the Due Process Clause.

**COUNT V – Board Policy**
**Policy C-155-P Impermissibly Restricts Speech in a Public Forum**
**Violation of the First Amendment to the U.S. Constitution**
**against all Defendants**
**(42 U.S.C. § 1983)**

168. Dr. Vollmecke repeats the allegations set forth above as if fully set forth herein.

169. Restrictions on speech in limited public forums must be both reasonable in light of the forum's purpose and viewpoint neutral. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

170. Defendants' Ban Letter cites Policy 1431 as authority for the Ban. (Ex. 1.)

171. Policy 1431 required visitors on school property to conduct themselves "in a manner reflective of a positive role model for children" and, under Regulation 1431, permitted "limited access" to school property based on "[v]erbally aggressive behavior."

23

172.     During Dr. Vollmecke's Ban, Policy 1431 and Regulation 1431 were replaced by Policy C-155-P, which similarly requires visitors to demonstrate "appropriate behavior as good role models for the District's students."

173.     Policy C-155-P states that the "Superintendent or designee may limit or revoke permission to visit school property or parts of school property at any time."

174.     Policy C-155-P therefore gives complete discretion to the Superintendent to impose bans and to limit or revoke permission to visit school property, including bans that restrict access to open, public meetings of the Board of Education that are limited public forums, "at any time."

175.     Consistent with Policy C-155-P, Superintendent Herl had sole discretion whether to lift the Ban and may, in his sole discretion, ban Dr. Vollmecke from access to limited public forums on school property in the future for reasons that do not relate to the purpose of those forums.

176.     Superintendent Herl may impose another ban on Dr. Vollmecke at any time in his discretion—for allegedly failing to conduct himself in as a "positive role model," for alleged disruptive conduct, exceeding the scope of permission granted, or any alleged "prior disruptive conduct."

177.     Under these broad terms, Policy C-155-P allows Superintendent Herl to restrict Dr. Vollmecke's access to limited public forums on school property for reasons unrelated to any purpose of the forum, in violation of the First Amendment.

178.     Dr. Vollmecke intends to continue to speak at Board meetings and other public forums. However, his right to free expression is objectively chilled by the existence of Policy C-155-P and the risk that Superintendent Herl—a frequent target of Dr. Vollmecke's criticism—can impose another ban at any time. *See 281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) ("Self-censorship can itself constitute injury in fact.").

179.     Declaratory and injunctive relief preventing enforcement of Policy C-155-P is required to protect Dr. Vollmecke's rights under the First Amendment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jason Vollmecke respectfully requests that this Court:

a.      Enter a permanent injunction forbidding Defendants from enforcing code-of-conduct Policy C-155-P to ban individuals from activities and events on School District property that are open to the public, including open public meetings of the Board of Education and sporting events, in the absence of notice and an opportunity to contest such a ban, and provide such further declaratory relief as this Court deems just and proper;

b.      Enter a permanent injunction forbidding Defendants from enforcing code-of-conduct Policy C-155-P to ban individuals from activities and events on School District property that are open to the public, including open public meetings of the Board of Education and sporting events, unless any such ban is both reasonable in light of the forum's purpose and viewpoint neutral, and provide such further declaratory relief as this Court deems just and proper;

c.      Enter a judgment declaring that the Defendants violated Dr. Vollmecke's First Amendment rights by banning him from open public meetings of the Board of Education, from sporting events, and from other activities and events on School District property that are open to the general public from January 11, 2023, to January 10, 2024 and by unlawfully retaliating against him for exercise of his First Amendment rights;

d.      Enter a judgment declaring that Defendants violated Dr. Vollmecke's Fourteenth Amendment rights by failing to provide him with an opportunity to contest the Ban and by banning him pursuant to an unconstitutionally vague policy that failed to provide reasonable

notice of what activities could subject him to a ban and by failing to set guidelines to prevent arbitrary and discriminatory enforcement;

e.   Enter a judgment declaring that the Defendants' Policy C-155-P is unconstitutionally vague and is unconstitutional on its face and as applied to Dr. Vollmecke insofar as it permits a single individual, the Superintendent, to restrict access to public forums on school property in his discretion, at any time, without regard for the purpose of the forum or protection for the viewpoint of the speaker;

f.   Award Plaintiff nominal damages on all counts;

g.   Award Plaintiff costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

h.   Grant such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Benjamin J. Wilson*
Lisa S. Hoppenjans, #63890 (MO)
Benjamin J. Wilson, #63329 (MO)
Matthew Blaney (law student entered under L.R. 83.8)
Alissa Gilmer (law student entered under L.R. 83.8)
Lauryn Masters (law student entered under L.R. 83.8)
First Amendment Clinic
Washington University in St. Louis School of Law
One Brookings Drive
St. Louis, MO 63130
Phone: (314) 935-8980
lhoppenjans@wustl.edu
benwilson@wustl.edu

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

/s/ *Benjamin J. Wilson*

26