**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JASON VOLLMECKE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:23-cv-00644-BP |
| | ) | |
| v. | ) | |
| | ) | |
| THE SCHOOL DISTRICT OF THE CITY OF | ) | |
| INDEPENDENCE DISTRICT NO. 20, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**SUGGESTIONS IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Table of Contents**

Summary of Argument ................................................................................................1

Statement of Uncontroverted Material Facts (SUMF) ..........................................3

Legal Standards ......................................................................................................23

Argument ................................................................................................................23

    I.    The Ban, issued pursuant to Policy 1431, violated Dr. Vollmecke's First Amendment rights because it was an unreasonable restriction on speech in a public forum and operated as an unconstitutional prior restraint (Count I)......... 23

        A.    The District's public board meetings and sporting events are limited public forums. ..................................................................................................... 23

        B.    The Ban was not reasonable in light of the purposes served by the limited public forums on school property and was imposed for viewpoint discriminatory reasons. .................................................................... 24

        C.    The Ban operated as an unconstitutional prior restraint by categorically prohibiting Dr. Vollmecke from accessing public forums on District property without first obtaining an exception from Dr. Herl. ................... 26

        D.    Dr. Herl is not entitled to qualified immunity for Dr. Vollmecke's First Amendment right to access public forums and for enforcing an unconstitutional prior restraint. .............................................. 27

    II.    The Ban and ongoing restriction on Dr. Vollmecke's involvement in ISD Academies was issued in retaliation for Dr. Vollmecke's constitutionally protected criticisms of Dr. Herl and the School Board (Count II)....................... 28

        A.    Dr. Vollmecke engaged in constitutionally protected activity through his repeated criticisms of Dr. Herl and the Board. ........................................ 29

        B.    The Ban from District property was, and the ongoing prohibition on involvement in the ISD Academies is, an adverse action that would chill a person of ordinary firmness from continuing to engage in the type of criticisms Dr. Vollmecke made................................................................. 30

        C.    Dr. Vollmecke's protected criticisms were a but-for cause of the Ban. ... 30

        D.    Dr. Herl is not entitled to qualified immunity for the retaliatory Ban and the ongoing retaliatory restriction on Dr. Vollmecke's involvement in the ISD Academies. ........................................................................................ 32

    III.    Dr. Vollmecke's rights to Due Process were violated by the Ban because it was issued pursuant to the unconstitutionally vague Policy 1431 and without any notice or an opportunity to be heard (Counts III & IV)....................................... 34

        A.    Dr. Vollmecke's Due Process rights were violated when he was banned pursuant to an unconstitutionally vague policy (Count IV)..................... 34

        B.    The Ban violated Due Process by depriving Dr. Vollmecke of a liberty interest without sufficient process because he had no opportunity to appeal (Count III). ............................................................................................... 36

      C.     Dr. Herl is not entitled to qualified immunity for the violations of Dr. Vollmecke's Due Process rights. ............................................................. 39

IV.    Policy C-155-P violates the First Amendment and Due Process Clause (Counts III, IV, and V). ...................................................................................... 40

      A.     Dr. Vollmecke has standing to challenge Policy C-155-P because there is credible threat of enforcement. ............................................... 40

      B.     Policy C-155-P impermissibly restricts speech in a public forum (Count V). ............................................................................................ 42

      C.     Policy C-155-P's language requiring "appropriate behavior as good role models for the District's students" is vague in violation of Due Process because it is subjective and does not provide an enforcement standard (Count IV). ............................................................................... 43

      D.     Policy C-155-P violates Due Process because it fails to provide any hearing or appeal relating to a property ban issued pursuant to it (Count III). ...................................................................................... 44

V.     The District and Board are liable for the violations of Dr. Vollmecke's First Amendment rights. ................................................................................ 44

VI.    Dr. Vollmecke is entitled to nominal damages and declaratory and injunctive relief. ............................................................................................... 45

Conclusion ........................................................................................................47

# Table of Authorities

**Cases**

*Am. C.L. of Mo. Found. v. Lombardi*, 23 F. Supp. 3d 1055 (W.D. Mo. 2014)...................... 34, 36

*Am. C.L. Union v. Mukasey*, 534 F.3d 181 (3d Cir. 2008) ........................................... 39

*Calderon v. Ashmus*, 523 U.S. 740 (1998) ......................................................... 46

*Carey v. Piphus*, 435 U.S. 247 (1978) ............................................................ 45

*City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988) ........................... 27

*City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp. Rel. Comm'n*, 429 U.S. 167 (1976)... 28, 33

*Clary v. City of Cape Girardeau*, 165 F. Supp. 3d 808 (E.D. Mo. 2016) ...................... 44, 45

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532  (1985) ..................................... 40

*Coates v. City of Cincinnati*, 402 U.S. 611 (1971) ............................................... 35

*Coffelt v. Omaha Sch. Dist.*, 309 F. Supp. 3d 629 (W.D. Ark. 2018).................................. 24, 25

*Curtiss v. Benson*, 583 F. App'x 598 (8th Cir. 2014) ............................................. 46

*Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536 (D. Vt. 2014)... 26, 36, 37, 38, 43

*Fayetteville Pub. Libr. v. Crawford County*, No. 23-CV-05086, 2023 WL 4845636 (W.D. Ark.

   July 29, 2023)...................................................................................... 35

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)...................................... 36, 37

*Friends of Georges, Inc. v. Mulroy*, 675 F. Supp. 3d 831 (W.D. Tenn. 2023)........................... 36

*Goss v. Lopez*, 419 U.S. 565 (1975) .............................................................. 40

*Grayned v. City of Rockford*, 408 U.S. 104 (1972)......................................... 34, 36, 39

*Green v. Nocciero*, 676 F.3d 748 (8th Cir. 2012) .......................................... 24, 27, 40

*Hall v. Mo. Highway Transp. Comm'n*, 235 F3d 1065 (8th Cir. 2000)........................ 40

*Hartman v. Moore*, 547 U.S. 250 (2006) ...................................................... 33

*Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004) .................................... 29

*Hope v. Pelzer*, 536 U.S. 730 (2002) ......................................................................................... 39

*Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, No. 23-CV-33-CJW-MAR, 2023 WL 6163487

    (N.D. Iowa Sept. 21, 2023) ................................................................................................... 33

*Isaacson v. Mayes*, 84 F.4th 1089 (9th Cir. 2023) ...................................................................... 42

*Jacobsen v. Petersen*, 728 F. Supp. 1415 (D.S.D. 1990) .............................................................. 38

*Johnson v. Perry*, 859 F.3d 156 (2d Cir. 2017) ......................................................................... 24

*Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752 (8th Cir. 2008) ........................ 46

*Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338 (N.D. Ga. 2022)...................... 28

*Mathews v. Eldridge*, 424 U.S. 319 (1976)................................................................................. 37

*McBreairty v. Sch. Bd. of RSU 22*, 616 F. Supp. 3d 79 (D. Me. 2022) ................................. 25, 43

*McNeally v. HomeTown Bank*, No. 21-CV-2614, 2022 WL 2220922 (D. Minn. June 21, 2022) 30,

    33

*Minn. State Bd. for Comm. Coll. v. Knight*, 465 U.S. 271 (1984) ................................................ 33

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) .................................................................... 44

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ................................................ 37

*Naucke v. City of Park Hills*, 284 F.3d 923 (8th Cir. 2002) ........................................................ 31

*Noon v. City of Platte Woods*, 94 F.4th 759 (8th Cir. 2024)............................................. 27, 31, 32

*Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658 (8th Cir. 2023) ... 34, 35, 40,

    41

*Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, 641 F. Supp. 3d 1218 (N.D. Fla. 2022)..... 42

*Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) ............................................ 47

*Phelps-Roper v. Koster*, 734 F. Supp. 2d 870 (W.D. Mo. 2010)................................................. 45

*Phelps-Roper v. Nixon*, 545 F.3d 685 (8th Cir. 2008) .................................................... 47

*Redlich v. City of St. Louis*, 51 F.4th 283 (8th Cir. 2022).......................................... 29

*Rinne v. Camden Cnty.*, 65 F.4th 378 (8th Cir. 2023) ................................ 28, 29, 30, 32

*Rinne v. Camden Cnty.*, No. 21-CV-04076, 2021 WL 5921465 (W.D. Mo. Nov. 19, 2021) ...... 31

*Sanimax USA, L.L.C. v. City of S. St. Paul*, 94 F.4th 551 (8th Cir. 2024)................................... 31

*Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F. Supp. 3d 521 (N.D. Cal. 2020)........... 41

*Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) .................................................. 26

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969) ........................................ 27

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) .................................... 23

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) ...................................................... 45

*Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329 (8th Cir. 2011) ...................................................................................... 24, 27

*Ware v. Jackson County*, 150 F.3d 873 (8th Cir. 1998)................................................ 44

*Williams v. City of Carl Junction*, 480 F.3d 871  (8th Cir. 2007)................................... 29, 32, 41

*Wilson v. N.E. Ind. Sch. Dist.*, 5:14-CV-140-RP, 2015 WL 13716013 (W.D. Tex. Sept. 30, 2015) .................................................................. 25, 26, 27, 38, 39, 49

*Worthley v. Sch. Comm. of Gloucester*, No. 22-CV-12060-DJC, 2023 WL 371034 (D. Mass. Jan. 24, 2023) ........................................................................................ 25

*Zinermon v. Burch*, 494 U.S. 113 (1990)................................................................. 40

**Other Authorities**

Fed. R. Civ. P. 56(a) .............................................................................. 23

## Summary of Argument

On January 11, 2023, Plaintiff Dr. Jason Vollmecke, a frequent critic of the Independence Board of Education ("Board"), was banned from all Independence School District ("District") property for one year in violation of his First and Fourteenth Amendment rights following a brief disagreement over whether he was permitted to speak between open and closed sessions of a Board meeting. This Ban prevented him from attending school board meetings, serving as a volunteer for the District, and attending sporting events and other public events on District property.

The Ban, and the authority under which it was issued, former Board Policy 1431, violated Dr. Vollmecke's First Amendment rights by unreasonably restricting him from access to public forums on school property. Board meetings, as well as athletic events on school property, are limited public forums, and the Ban was not reasonable in light of the forums' purpose nor viewpoint neutral, in violation of the First Amendment.

The Ban and a related, ongoing prohibition on Dr. Vollmecke's involvement in volunteer activities for the District further violated the First Amendment because they were issued in retaliation for Dr. Vollmecke's constitutionally protected criticisms of Dr. Herl and the Board. Dr. Herl specifically cited at least two instances of Dr. Vollmecke's critical—but protected—expression as reasons for the Ban and ongoing volunteer restriction. The Ban and ongoing volunteer prohibition are adverse actions that would chill a person of ordinary firmness from continuing to engage in the type of protected speech Dr. Vollmecke had engaged in.

In addition, former Board Policy 1431 and the Ban issued under its authority violate the Due Process Clause of the Fourteenth Amendment. Policy 1431 was unconstitutionally vague because its broad prohibition on conduct inconsistent with acting as a "positive role model" for students failed to provide notice that would allow a person of ordinary intelligence a reasonable

opportunity to know what was prohibited and vested officials with discretion to arbitrarily apply an entirely subjective standard. The Ban and Policy 1431 also violated Due Process because they deprived Dr. Vollmecke of his liberty interest in speaking in a public forum without notice or an opportunity to be heard.

Dr. Vollmecke is also entitled to an injunction to prevent enforcement of Revised Board Policy C-155-P, which replaced Policy 1431. The new policy, like Policy 1431, impermissibly restricts speech in a public forum by granting sweeping discretion to indefinitely ban individuals from public forums on school property without regard to whether such restriction relates to the purpose of the forums. It is also unconstitutionally vague, as it requires visitors, on penalty of sanctions that limit their access to school property, to maintain "appropriate behavior as good role models" for students. This broad language, which is not elsewhere defined, fails to put a person of ordinary intelligence on notice of what conduct is prohibited and provides officials with unfettered discretion to arbitrarily enforce the policy. Policy C-155-P also violates Due Process by depriving individuals of the right to participate in public forum without notice or the opportunity to be heard. Dr. Vollmecke faces a credible threat that Policy C-155-P will be enforced against him, as Dr. Vollmecke intends to continue speaking his mind at Board meetings and in communications with District officials on school property.

Plaintiff asks this Court to grant summary judgment in his favor and award declaratory and injunctive relief, nominal damages, and any further relief the Court deems just and proper.

2

**Statement of Uncontroverted Material Facts (SUMF)**

1.      Plaintiff Jason Vollmecke is a resident of Independence, Missouri. (Ex. A, Vollmecke Decl. 1 ¶ 3, Sept. 5, 2023.)

2.      Dr. Vollmecke is a graduate of Independence School District Schools. He has two young children who will be future students in the District. (Ex. B, Vollmecke Dep. 6:9-15, April 4, 2024.)

3.      Defendant The School District of the City of Independence District No. 30 (a/k/a Independence School District) is a Missouri school district that operates public schools within Independence, Missouri. Independence School District is a public school system organized and maintained under the laws of the State of Missouri. (Defs.' Answer to Pl.'s First Am. Compl. ¶ 18, Doc. 33.)

4.      Defendant Board of Education of the Independence School District is the governing body of the School District. (*Id.* at ¶ 19.)

5.      Defendant Dale Herl is the Superintendent of the School District and serves as the chief executive officer of the School District. (*Id.* at ¶ 20.)

## INDEPENDENCE SCHOOL BOARD POLICIES

6.      Independence School District Policy 0410, which was in effect from August 2015 until July 11, 2023, stated "[a]ll meetings of the Board of Education shall be open to the public and the press, except closed sessions as authorized by law." (Ex. C, Policy 0410; Defs.' Answer to Pl.'s First Am. Compl. ¶ 26.)

7.      Revised Independence School District Policy C-135-P, effective July 12, 2023, states that "Board meetings are open to the public unless closed as allowed by law." (Ex. D, Policy C-135-P; Defs.' Answer to Pl.'s First Am. Compl. ¶ 27.)

8.     Revised Independence School District Policy G-155-P, effective July 12, 2023, states "[a]ll meetings of the Board shall be open to the public except for when the Board meets in executive session." (Ex. E, Policy G-155-P; Defs.' Answer to Pl.'s First Am. Compl. ¶ 27.)

9.     Independence School District Policy 0412, which was revised December 2022 and in effect until July 11, 2023, stated that "[t]he Board is very interested in citizen viewpoints and problems" and "[a] period of time up to thirty (30) minutes will be allotted for public comment by District residents and staff members who seek to address the Board regarding an item on the agenda included in the notice of the meeting." (Ex. F, Policy 0412; Defs.' Answer to Pl.'s First Am. Compl. ¶ 29.)

10.    Revised Independence School District Policy C-140-P, effective July 12, 2023, provides that "[i]n addition to written submissions, a specific time may be set aside at regular Board meetings for public comments regarding items from the posted agenda," and requires that "[a]t each meeting, up to thirty minutes will be allotted for public comment." (Ex. G, Policy C-140-P; Defs.' Answer to Pl.'s First Am. Compl. ¶ 30.)

11.    Independence School District Policy 1431, which was in effect from December 2004 until July 11, 2023, "established a code of conduct for all employees, parents, patrons, and visitors on school premises and at school activities." It stated: "All employees, parents, patrons, and visitors will be expected to conduct themselves in a manner reflective of a positive role model for children. Public displays contrary to this expectation as provided in Regulation 1431 will result in sanctions which will limit a person's access to school activities and school premises." (Ex. H, Policy 1431; Defs.' Answer to Pl.'s First Am. Compl. ¶ 31; Ex. I, Herl Dep. 35:2-5, April 4, 2024.)

12.    The types of public displays contrary to the expectation that visitors conduct themselves in a manner reflective of a positive role model for children that will result in sanctions

that can limit a person's access to school property include a "wide range" of conduct including "saying profanities to staff, being argumentative, failure to follow a directive, [and] signs of aggression." (Ex. I, Herl Dep. 38:25, 39:1-13.)

13.     The District does not have any documentation or policy defining the meaning of "positive role model for children." (Ex. J, Defs.' First Supp. Resp. to Pl.'s First Request for Produc. No. 8; Defs.' Answer to Pl.'s First Am. Compl. ¶ 32.)

14.     When asked how someone would know if their conduct was reflective of a positive role model for children, Dr. Herl responded: "[M]ost people know it when they see it," and "I'm sure it's up to everyone's interpretation to some extent." (Ex. I, Herl Dep. 36:21-25, 37:1.)

15.     Dr. Herl agreed that "different people might have different opinions on what it means to conduct oneself in a manner reflective of a positive role model for children." (Ex. I, Herl Dep. 37:2-6; *see also id.* 37:12-19 (acknowledging that people may vigorously disagree about whether a drag queen reading books at drag queen story hour is a positive role model for children).)

16.     In his experience as a school administrator, Dr. Herl testified that he has heard from people who have different opinions on what it means to be a positive role model for children. (Ex. I, Herl Dep. 37:7-11.)

17.     Dr. Herl testified that what behavior might be reflective of a positive role model for children could differ depending on whether the child was a kindergartner versus a high schooler. (Ex. I, Herl Dep. 37:20-25, 38:1-4.)

18.     The superintendent ultimately decides whether someone has conducted themselves in a manner that is reflective of a positive role model for children under Policy 1431. (Ex. I, Herl Dep. 38:6-10, 38:20-24.)

19.     Dr. Herl testified that, under Policy 1431, he possessed the ultimate authority to determine whether an individual acted in manner reflective of a positive role model for children. (Ex. I, Herl Dep. 38:17-24, 28:23-25, 29:1.)

20.     Dennis Green, a former Director of Public Safety at the Independence School District, testified that he was tasked with enforcing Policy 1431. (Ex. K, Green Dep. 35:23-25, 36:1-7, April 4, 2024.)

21.     Dennis Green testified that people might disagree about what conduct violated Policy 1431. (Ex. K, Green Dep. 35:23-25, 39:11-18.)

22.     Independence School District Regulation 1431 provided that "[v]erbally aggressive behavior, which would include, but not be limited to, threats, intimidation, and profanity, will result in limited access to school premises and school activities for up to one (1) year." The regulation further stated "[t]he length of the restriction will be determined by the Superintendent of Schools." (Ex. L, Regulation 1431; Defs.' Answer to Pl.'s First Am. Compl. ¶ 33; Ex. I, Herl Dep. 40:2-14.)

23.     Verbally aggressive behavior includes "yelling, screaming, and cussing." (Ex. I, Herl Dep. 41:15-17.)

24.     Dr. Herl testified that whether use of profanity is verbally aggressive is up to the interpretation of the individuals involved in the communication and any bystanders, (Ex. I, Herl Dep. 41:25, 42:1-14), and other people could disagree whether a given use of profanity is verbally aggressive, (*id.* 42:20-22). For example, according to Dr. Herl, profanity would be verbally aggressive if, while addressing the school board, a person said to the Board: "I hope in the next election we vote all your asses out," (*id.* 42:15-20), or if at a high school football game, a fan screamed, "Damn you, ref," (*id.* 43:9-12).

6

25.     Revised Policy C-155-P, effective July 12, 2023, provides that "[a]ll visitors to school property or events must demonstrate appropriate behavior as good role models for the District's students." (Ex. M, Policy C-155-P; Defs.' Answer to Pl.'s First Am. Compl. ¶ 35.)

26.     Policy C-155-P states: "The Superintendent or designee may limit or revoke permission to visit school property or parts of property at any time. The Superintendent or designee may inform the visitor that he or she is not welcome back on District property or at District events indefinitely or for a specific period of time." (Ex. M, Policy C-155-P; Defs.' Answer to Pl.'s First Am. Compl. ¶ 36.)

27.     Policy C-155-P further states: "Visitors who engage in disruptive conduct or exceed the scope of permission granted may be considered trespassers and subject to arrest and prosecution." (Ex. M, Policy C-155-P; Defs.' Answer to Pl.'s First Am. Compl. ¶ 35.)

28.     Dr. Herl testified that he is the person in charge of enforcing Policy C-155-P, and he is not aware of any further documentation or policy defining "appropriate behavior as good role models for the District's students." (Ex. I, Herl Dep. 62:5-7, 62:22-25, 63:1-8.)

29.     According to Dr. Herl, Policy C-155-P's standard of appropriate behavior as good role models for students should be interpreted similarly to Policy 1431's manner reflective of a positive role model for children. (Ex. I, Herl Dep. 59:12-23, 60:6-19, 61:10-14 (noting that what behavior constitutes appropriate behavior as a good role model for the District's students depends on the age of the student).)

30.     Because Policies C-155-P and 1431 should be interpreted similarly, Dr. Herl agrees that different people may have different interpretations of what it means to display appropriate behavior as a good model for children. (Ex. I, Herl Dep. 61:6-9.)

31.     When asked how visitors to the District would know if their conduct is disruptive under Policy C-155-P, Dr. Herl explained: "it would be pointed out to them." (Ex. I, Herl Dep. 65:16-20.)

32.     Also similar to Policy 1431, Dr. Herl testified that he ultimately determines under Policy C-155-P whether a visitor has "engage[d] in disruptive conduct or exceed[ed] the scope of permission granted." (Ex. I, Herl Dep. 66:21-25, 67:1-4.)

33.     According to Dr. Herl, conduct need not be disruptive to be an appropriate basis for limiting or revoking permission to visit school property under Policy C-155-P, and Dr. Herl can limit or revoke permission to be on school property at any time he deems appropriate. (Ex. I, Herl Dep. 67:16-24.)

34.     Dr. Herl also agreed that, although there are exceptions to the Policy C-155-P, they may only be made for parents, guardians, or custodians of students enrolled in the district, and it would violate the policy for him to grant an exception to somebody not included within the groups listed in the Policy C-155-P exception. (Ex. I, Herl Dep. 69:14-25, 70:1-10.)

35.     Revised Policy S-100-P, effective July 12, 2023, provides a hearing for requests for residency waivers. "The Board will conduct this hearing to consider the request as soon as possible, but no later than 45 days after receipt of the request." (Ex. N, Policy S-100-P.)

36.     Revised Policy E-170-P, effective July 12, 2023, provides for "a hearing before the Board regarding administrative leave" when required by law.  (Ex. O, Policy E-170-P.)

37.     Revised Policy E-195-P, effective July 12, 2023, provides a "due process hearing conducted pursuant to District policy" for allegations of sexual misconduct. (Ex. P, Policy E-195-P.)

## PUBLIC COMMENTS ADDRESSED TO THE BOARD AND
## OTHER INTERACTIONS WITH DR. HERL

38.     Beginning sometime in mid-2020, Dr. Vollmecke began discussing with Dr. Herl concerns with the way the School District was addressing issues arising from the COVID-19 pandemic. (Defs.' Answer to Pl.'s First Am. Compl. ¶ 41.)

39.     Dr. Vollmecke began regularly attending Board of Education meetings in December 2021. At those meetings, he raised concerns with the District's approach to COVID-19 and other District actions or policies. (Ex. A, Vollmecke Decl. 1 ¶¶ 15–16; Defs.' Answer to Pl.'s First Am. Compl. ¶ 42.)

40.     In the past three years, Dr. Herl and Dr. Vollmecke have exchanged emails in which Dr. Vollmecke criticized the Board of Education. (Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 2.)

41.     Dr. Vollmecke filed candidacy for a seat on the Board in December 2021. (Defs.' Answer to Pl.'s First Am. Compl. ¶ 43.)

42.     In an open forum of the Board candidates, Dr. Vollmecke said he was running to restore accountability through transparency and communication, to enforce the Board's duty to provide effective oversight of the superintendent, and to eliminate the hostile workplace and fear of retaliation among teachers in the district. (Ex. A, Vollmecke Decl. 1 ¶ 18.)

43.     During a Board meeting on or about January 11, 2022, Randy Maglinger gave a presentation and Dr. Vollmecke was in attendance. (Ex. R, Herl Aff. ¶ 3, Oct. 9, 2023; Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 3.)

44.     Dr. Herl contends that Dr. Vollmecke interrupted Dr. Maglinger's presentation by asking questions. (Ex. R, Herl Aff. ¶ 4; Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 4.)

45.     Dr. Herl explained to Dr. Vollmecke that it "was not the appropriate time" for him to ask questions or speak." (Ex. R, Herl Aff. ¶ 4(a); Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 4.)

46.     Dennis Green attended the same meeting and testified that Dr. Vollmecke "made one comment," was asked not to speak, "and that was it." (Ex. K, Green Dep. 49:2-25.)

47.     Dr. Herl testified that Dr. Vollmecke's interruption did not qualify as verbally aggressive behavior. (Ex. I, Herl Dep. 104:6-15.)

48.     Sometime after the January 11, 2022 Board meeting, Dr. Herl gave a presentation at a Parent Teacher Association ("PTA") Council meeting. (Ex. R, Herl Aff. ¶ 5; Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 5.)

49.     During the PTA Council meeting, Dr. Vollmecke entered the room during Dr. Herl's presentation. (Ex. R, Herl Aff. ¶ 5(a).)

50.     According to Dr. Herl, Dr. Vollmecke "glared" at him "with arms crossed throughout the entirety of the presentation," which Dr. Herl "interpreted to be a tactic to intimidate" him. (Ex. R, Herl Aff. ¶ 5(a); Ex. I, Herl Dep. 82:5-23.)

51.     Dr. Vollmecke heard things he did not agree with during the presentation, including Dr. Herl's discussion of the use of District funds for tennis courts or football fields, while in Dr. Vollmecke's view there are teachers who are "sorely underpaid." (Ex. B, Vollmecke Dep. 36:15-25, 37:1-5.)

52.     Dr. Vollmecke did not interrupt the PTA Council meeting in any way. (Ex. I, Herl Dep. 83:12-14.)

53.     After Dr. Herl's presentation at the PTA Council meeting finished, he motioned for Dr. Vollmecke to step outside to speak with him. (Ex. R, Herl Aff. ¶ 5(b); Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 6; Ex. S, Vollmecke Decl. 2 ¶ 17, Oct. 23, 2023.)

54.     Dr. Herl and Dr. Vollmecke both agree that they spoke after the presentation about matters relating to Dr. Vollmecke's criticisms of the District and its officials. (Vollmecke Dep 37:18-25, 38:1-7; Herl Dep 95:20-25, 96:1-25; Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 7.)

55.     Specifically, Dr. Herl testified that they spoke about Dr. Vollmecke's email accusing Dr. Herl of having lied about the reasons why the District transfers teachers, and that it was not to get them to leave the District. (Ex. I, Herl Dep. 95:18-25, 96:1-12.)

56.     Dr. Herl also testified that, during the same conversation after the PTA Council meeting, Dr. Vollmecke accused Dr. Herl of not letting him speak at the recent Board meeting in which Dr. Maglinger presented. (Ex. I, Herl Dep. 96:20-25, 97:1-25; Ex. R, Herl Aff. ¶ 5.)

57.     Dr. Vollmecke testified that they spoke during this conversation about things he believed Dr. Herl had lied about as well as about the District's culture of retaliation and hostile work environment. (Ex. B, Vollmecke Dep. 38:1-11; Ex. S, Vollmecke Decl. 2 ¶ 19.)

58.     Dr. Vollmecke did not recall them discussing, during this conversation after the PTA Council meeting, the Board meeting in which Dr. Maglinger presented; Dr. Vollmecke testified that the Maglinger conversation took place in Dr. Herl's office a few days after the January Board meeting. (Ex. B, Vollmecke Dep. 39:1-11.)

59.     On April 12, 2022, Dr. Vollmecke addressed the Board "regarding teacher retention and student safety." (Ex. T, Board of Education Meeting Minutes, April 12, 2022; Ex. U, Defs.' Resp. to Pl.'s Second Req. for Admis. No. 29.)

60.     At the April 12, 2022, meeting Dr. Vollmecke told the Board: "I'm not saying that you were given talking points, but I am saying that having no variation in your statements gives the impression that you are deferring to the Office of the Superintendent rather than looking into things for yourself." He also critiqued the school's working environment and the Board's response: "You either know that this hostile work environment exists and approve of it, know of it and have been made to feel like you are powerless to do anything about it, or you really have no idea what is going on in the doors of the school." (Ex. V, Baird Decl. ¶ 11, Aug. 31, 2023; Ex. W, Baird Video of Board Meeting, April 12, 2022.)

61.     On August 9, 2022, Dr. Vollmecke addressed the Board during the public comment period and criticized the Board's recent decision to remove a book from elementary school libraries. He stated the Board's actions were unconstitutional and criticized the District's failure to recognize students' preferred pronouns. (Ex. X, Board of Education Meeting Minutes, Aug. 9, 2022; Ex. V, Baird Decl. ¶ 12; Ex. Y, Baird Video of Board Meeting, Aug. 9, 2022.)

62.     Dr. Vollmecke described the Board's stated justification for the book ban as "asinine," "ignorant," and "such an absurd false dichotomy that brings into question your ability to make logical decisions for this district." (Ex. A, Vollmecke Decl. 1 ¶ 32; Baird Video Aug. 9, 2022.)

63.     On the evening of a school board meeting, sometime prior to January 10, 2023, Dr. Vollmecke approached Dr. Herl and said he held Dr. Herl responsible for the death of a former school nurse. (Ex. I, Herl Dep. 101:5-25, 102:1-14; Defs.' Answer to Pl.'s First Am. Compl. ¶ 61; Ex. R, Herl Aff. ¶ 6.) Dr. Herl recalls this took place between open and closed sessions of the meeting. (Ex. I, Herl Dep. 101:20-23.)

64. Dr. Vollmecke indicated to Dr. Herl that he blamed the District for her death, due to the District's COVID protocols, and he held Dr. Herl responsible as the head of the District. (Ex. I, Herl Dep. 103:3-11.)

65. At no time before January 11, 2023, did Dr. Herl directly communicate with Dr. Vollmecke to issue any warning that his conduct related to the PTA Council meeting, Dr. Maglinger's presentation, or their conversation about the death of an ISD staff member, could next result in a ban. (Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 16.)

## THE JANUARY 2023 BOARD OF EDUCATION MEETING, DR. VOLLMECKE'S ARREST FOR TRESPASS, AND THE BAN FROM SCHOOL DISTRICT PROPERTY

66. On January 10, 2023, Dr. Vollmecke was scheduled to speak at a Board meeting that started at 6:00 p.m. (Ex. R, Herl Aff. ¶¶ 7, 9, 10.)

67. Dr. Vollmecke arrived to the Board meeting a few minutes late. (Ex. R, Herl Aff. ¶ 15-16.)

68. When Dr. Vollmecke arrived to the Board meeting room and sat in the audience, the public comment period had passed. (Ex. A, Vollmecke Decl. 1 ¶ 49; Defs.' Answer to Pl.'s First Am. Compl. ¶ 75.)

69. Dr. Vollmecke did not want to interrupt, so he sat down with other members of the public and waited to address the Board. (Ex. A, Vollmecke Decl. 1 ¶ 49; Defs.' Answer to Pl.'s First Am. Compl. ¶ 75.)

70. After the Board concluded its business, there was a motion to adjourn. (Ex. R, Herl Aff. ¶ 17.)

71. Dr. Vollmecke then raised his hand, but he was not acknowledged. (Ex. R, Herl Aff. ¶ 18.)

72.     The Board adjourned the open meeting at 6:50 p.m. (Ex. I, Herl Dep. 107:6-19; Ex. Z, Board Meeting Minutes, Jan. 10, 2023.)

73.     Once the motion to adjourn had passed, the open session was adjourned and no meeting was in session. (Ex. I, Herl Dep. 119:6-13.)

74.     Dr. Vollmecke then walked to the podium to speak. (Ex. R, Herl Aff. ¶ 19.)

75.     Dr. Vollmecke's understanding was that the Board took a short break between the open and closed portions of the meeting. (Ex. A, Vollmecke Decl. 1 ¶¶ 51, 56.)

76.     Either Dr. Herl or a member of the Board stated to Dr. Vollmecke, "We're adjourned." (Ex. A, Vollmecke Decl. 1 ¶ 55; Ex. I, Herl Dep. 120:1-24.)

77.     Dr. Vollmecke began reading his comments at the podium. (Ex. A, Vollmecke Decl. 1 ¶ 57; Ex. I, Herl Dep. 120:22-25, 121:1-2.)

78.     Dennis Green and School Resource Officer Brayer approached Dr. Vollmecke. (Ex. R, Herl Aff. ¶ 20.)

79.     Dennis Green told Dr. Vollmecke that he needed to leave. (Ex. A, Vollmecke Decl. 1 ¶ 59; Ex. K, Green Dep. 58:12-18.)

80.     Dr. Vollmecke told Dennis Green that he believed he had a right to be there. (Ex. A, Vollmecke Decl. 1 ¶ 60; Ex. K, Green Dep. 58:19-20.)

81.     Dennis Green told Dr. Vollmecke that if he did not leave, he would be arrested for trespassing. (Ex. R, Herl Aff. ¶ 30; Ex. K, Green Dep. 58:25, 59:1-2.)

82.     Dennis Green requested Officer Brayer arrest Dr. Vollmecke for trespassing and escort him out of the room. (Ex. R, Herl Aff. ¶ 34.)

83.     Dr. Vollmecke offered his hands to Officer Brayer, who escorted him from the meeting room and placed Dr. Vollmecke under arrest for trespassing. (Ex. A, Vollmecke Decl. 1

¶ 62; Ex. AA, ISD Video, Jan. 10, 2023; Ex. BB, Brent Clark Video, Jan. 10, 2023; Ex. II, Clark Decl. ¶¶ 12-16, 2023.)

84.　　Dennis Green testified that he chose not to place Dr. Vollmecke in handcuffs because Dr. Vollmecke was not a threat to him or Officer Brayer, but that he would have placed him in handcuffs if Dr. Vollmecke had been a threat to the Board. (Ex. K, Green Dep., 60:24-25, 61:1-8.)

85.　　When Dennis Green requested Dr. Vollmecke leave the meeting, other members of the public remained in the room. (Ex. I, Herl Dep. 130:7-13; Ex. A, Vollmecke Decl. 1 ¶ 59; Ex. BB, Brent Clark Video.)

86.　　Dr. Vollmecke did not threaten anybody at the January 10, 2023 meeting. (Ex. I, Herl Dep. 136:3-5.)

87.　　Dr. Herl agreed that Dr. Vollmecke remained fairly calm while he was at the podium. (Ex. I, Herl Dep. 137:6-9.)

88.　　At 6:53 p.m., Dr. Herl texted Dennis Green asking, "[c]an we press charges?" (Ex. CC, Herl Text to Green, Jan. 10, 2023; Ex. I, Herl Dep. 115:18-21; Ex. K, Green Dep. 62:2-20.)

89.　　At 6:59 p.m., Dennis Green texted Dr. Herl asking whether he wanted Dr. Vollmecke to go to jail or sign the court summons. (Ex. CC, Herl Text to Green.)

90.　　Dr. Herl responded: "Jail if we can." (Ex. CC, Herl Text to Green.)

91.　　Dr. Vollmecke was charged with trespassing under Independence Municipal Code § 12.05.008 arising from his arrest at the January 10 meeting. (Ex. DD, General Ordinance Summons, Jan. 10, 2023.)

92.　　On February 22, 2024, Dr. Vollmecke's trespass charge was dismissed pursuant to R.S.Mo. § 56.087. (Ex. EE, City Dismissal, Feb. 22, 2024.)

## THE BAN AND ITS AFTERMATH

*The Ban*

93.    The day after the January 10, 2023 Board meeting, Dr. Herl issued a letter to Dr. Vollmecke that was delivered to his house the same day ("Ban Letter"). (Ex. FF, Ban Letter, Jan. 11, 2023; Ex. R, Herl Aff. ¶ 38; Green Dep 69:16-20, 71:10-13.)

94.    The Ban Letter stated that due to Dr. Vollmecke's conduct on January 10, 2023, he could not be present at any event or be present on any School District property until January 10, 2024 (the "Ban"). (Ex. FF, Ban Letter.)

95.    The Ban Letter further prohibited Dr. Vollmecke from any involvement in ISD Academies (Ex. FF, Ban Letter), which include a science, technology, engineering, and math program for students interested in careers in the sciences (Ex. A, Vollmecke Decl. 1 ¶ 10).

96.    Dr. Vollmecke was also banned from "all interactions with students and any committees in which [he has] served upon." (Ex. FF, Ban Letter.)

97.    Further, according to the Ban Letter, if Dr. Vollmecke entered any school property without Dr. Herl's permission, it would be "considered trespassing by the School District and local law enforcement authorities will be called." (Ex. FF, Ban Letter.)

98.    The Ban Letter provided Dr. Herl with exclusive authority to determine whether Dr. Vollmecke would be allowed on School District property. (Ex. FF, Ban Letter; Defs.' Resp. to Pl.'s Req. for Admis. No. 16; Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 23.)

99.    The Ban Letter did not include instructions for how Dr. Vollmecke could obtain permission to access School District property from Dr. Herl. (Ex. FF, Ban Letter; Defs.' Resp. to Pl.'s Req. for Admis. No. 14.)

100.     The Ban Letter stated that failure to comply with the restrictions will result in the School District "pursu[ing] all available civil or criminal remedies." (Ex. FF, Ban Letter.)

***Contest/Appeal***

101.     Dr. Herl's Ban Letter does not set out any process to contest or appeal the Ban. (Ex. FF, Ban Letter; Defs.' Resp. to Pl.'s Req. for Admis. No. 11; Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 17.)

102.     As of January 11, 2023, School Board policies did not provide instructions for an individual to contest a ban order. (Defs.' Resp. to Pl.'s Req. for Admis. No. 12; Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 18.)

103.     There is no written procedure in place allowing individuals banned from School District property to contest or appeal their bans. (Defs.' Resp. to Pl.'s Req. for Admis. No. 13; Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 19.)

104.     Policy 1431, Regulation 1431, and Revised Policy C-155-P do not provide for notice or an opportunity to appeal a ban from school property. (Defs.' Answer to Pl.'s First Am. Compl. ¶¶ 34, 37.)

***Reasons Given for the Ban***

105.     Dr. Herl made the decision on the night of the January 10, 2023 Board meeting to issue the Ban against Dr. Vollmecke. (Ex. I, Herl Dep. 141:1-9; Defs.' Answer to Pl.'s First Am. Compl. ¶ 160.)

106.     The Ban Letter cites Board of Education Policy 1431 as authority for the Ban. (Ex. FF, Ban Letter.)

107.     The School District authorized Dr. Herl through Regulation 1431 to determine the length of the Ban. (Ex. L.)

108. The Ban Letter cites only Dr. Vollmecke's conduct on January 10, 2023, as its basis. (Ex. FF, Ban Letter; Defs.' Resp. to Pl.'s Req. for Admis. No. 10; Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 14.)

109. Prior to issuing the Ban, Dr. Herl was aware of Dr. Vollmecke's criticisms of the School District and School Board. (Defs.' Resp. to Pl.'s Req. for Admis. No. 7; Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. Nos. 2, 15.)

110. Dr. Herl later stated in a sworn affidavit that he issued the January 11, 2023 letter restricting Dr. Vollmecke from being on District property until January 10, 2024 "as a result of" the events on January 10 as well as what he described as "prior disruptive conduct." (Ex. R, Herl Aff. ¶ 38.)

111. The "prior disruptive conduct" referred to three incidents described in the affidavit. (Ex. R, Herl Aff. ¶ 3-5, 38; Ex. I, Herl Dep. 150:16-25, 151:1-3.)

112. The first incident was when, according to Dr. Herl, Dr. Vollmecke interrupted Randy Maglinger's presentation on January 11, 2022. (Ex. R, Herl Aff. ¶¶ 3–4; Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 4; *see also* SUMF ¶¶.43–47 (providing additional description of this incident).)

113. The second incident was when, as described by Dr. Herl, Dr. Vollmecke was "glar[ing]" with "arms crossed" during Dr. Herl's presentation at the PTA Council meeting and then, in a conversation after the meeting, Dr. Herl "could tell [Dr. Vollmecke] was upset" with him. (Ex. R, Herl Aff. ¶ 5; Ex. B, Vollmecke Dep. 37:1-13 (saying this PTA meeting was in April); *see also* SUMF ¶¶.48–58 (providing additional description of this incident).)

114. The third incident Dr. Herl described was when Dr. Vollmecke approached him on the evening of a school board meeting and told Dr. Herl that he held him responsible for the death

of a school nurse. (Ex. R, Herl Aff. ¶ 6; Ex. I, Herl Dep. 101:5-25, 102:1-14; Ex. A, Vollmecke Decl. 1 ¶ 35; *see also* SUMF ¶¶.63–64 (providing additional description of this incident).)

115. Prior to January 11, 2023, Dr. Herl did not communicate with Dr. Vollmecke to warn him that his conduct related to the incidents cited in Dr. Herl's affidavit could next result in a ban. (Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. No. 16.)

116. Before January 10, 2023, Dr. Vollmecke had never been asked to leave or been removed from School District property. (Ex. A, Vollmecke Decl. 1 ¶¶ 68–70.)

117. Dr. Herl testified that Dr. Vollmecke has never threatened him, nor has he heard of Dr. Vollmecke ever threatening anybody. (Ex. I, Herl Dep. 136:16-25, 137:1-2.)

***Adverse Effects of the Ban***

118. The Ban prevented Dr. Vollmecke from attending and voicing his opinions at all Board meetings from January 11, 2023, until the Court enjoined the Ban on December 11, 2023, without Dr. Herl's permission. (Defs.' Resp. to Pl.'s Req. for Admis. No. 15; Ex. Q, Herl's Resp. to Pl.'s First Req. for Admis. Nos. 20.)

119. Between the issuance of the Ban on January 11, 2023, and the date of this Court's preliminary injunction order on December 11, 2023, at least thirteen Board meetings took place that were open to the public. (Ex. I, Herl Dep. 72:20-23; 73:10-13.)

120. But for the Ban, Dr. Vollmecke would have attended Board of Education meetings to learn about Board and School District activities and proposals, interact with other concerned residents at those meetings, and speak during public-comment periods. (Ex. A, Vollmecke Decl. 1 ¶ 72.)

121. From September 2018 until the Ban, Dr. Vollmecke served as the Chair of the Biomedical Sciences Advisory Committee. (Ex. A, Vollmecke Decl. 1 ¶ 11.)

122.     But for the Ban, Dr. Vollmecke would have continued his leadership as Chair of the School District's Biomedical Sciences Advisory Committee, as well as provided his medical expertise and recommendations to the Committee. (Ex. A, Vollmecke Decl. 1 ¶ 73.)

123.     Before the Ban, Dr. Vollmecke was invited regularly to conduct guest lectures, participate in career counseling, advise students on science projects, provide physicals and scoliosis screenings, and assist with teaching various courses. (Ex. A, Vollmecke Decl. 1 ¶ 9.)

124.     But for the Ban, Dr. Vollmecke would have continued conducting guest STEM lectures, providing physicals and scoliosis screenings, and assisting with the teaching of various courses. (Ex. A, Vollmecke Decl. 1 ¶ 74.)

125.     Before the Ban, Dr. Vollmecke volunteered in the School District's ISD Academies. (Ex. A, Vollmecke Decl. 1 ¶ 10.)

126.     Dr. Vollmecke is still banned from volunteering his time in the ISD Academies. (Ex. I, Herl Dep. 145:3-5.)

127.     Dr. Herl testified that he "hadn't really thought of" a process by which Dr. Vollmecke can return to volunteering in the ISD Academies. (Ex. I, Herl Dep. 145:6-10.)

128.     Also, according to Dr. Herl, it is his decision whether or not to lift Dr. Vollmecke's restriction from the ISD Academies—which he testified he has not, and will not, consider yet. (Ex. I, Herl Dep. 145:11-20.)

129.     The Ban also prevented Dr. Vollmecke from being present on School District property at times and during events that are otherwise open to the general public. (Ex. A, Vollmecke Decl. 1 ¶ 75; Ex. FF, Ban Letter.)

130.     Dr. Vollmecke is a frequent attendee at sporting events in the School District. (Ex. A, Vollmecke Decl. 1 ¶ 69.)

131.    The Ban prevented Dr. Vollmecke from attending sporting events on School District property, which prevented him from seeing students he coached in youth sports participate in these events. (Ex. A, Vollmecke Decl. 1 ¶ 78; Ex. FF, Ban Letter.)

132.    Dr. Herl testified that sporting events on district property are generally open to the public and people are encouraged to attend, cheer on athletes, and bring signs expressing support for athletes. (Ex. I, Herl Dep. 33:15-25, 34:1-12.)

133.    Dr. Vollmecke could not take his son to a playground or start his son's swimming lessons during the Ban because the playground and public pool are on School District property. (Ex. A, Vollmecke Decl. 1 ¶¶ 76-77; Ex. FF, Ban Letter.)

134.    In April 2023, after the Ban, Dr. Herl requested that Dr. Maglinger "check to make sure that Jason Vollmecke was not invited" to an ISD Academies event taking place off District property. (Ex. GG, Emails between Dale Herl and Randy Maglinger, April 1, 2023, ISD 312.) Dr. Vollmecke was not invited to this event. (*Id.* ISD 306.)

135.    Dr. Vollmecke wants and intends to speak at future Independence School District Board of Education meetings. (Ex. HH, Vollmecke Decl. 3 ¶ 3, May 6, 2024.)

136.    Dr. Vollmecke intends to continue raising questions, concerns, and criticisms of the Board and Dr. Herl. (Ex. HH, Vollmecke Decl. 3 ¶ 4.)

137.    Dr. Vollmecke intends to raise those questions, concerns, and criticisms publicly, including during public comment periods at Board meetings, and he intends to raise those questions, concerns, and criticisms in emails and in conversations with the Board and Dr. Herl on District property, as he has done in the past. (Ex. HH, Vollmecke Decl. 3 ¶ 5.)

138.    Dr. Vollmecke is passionate regarding issues facing the District. His criticism has in the past included harsh and critical language regarding District policies and officials. He intends

to continue to harshly criticize District policies and officials when he thinks harsh criticism is merited. (Ex. HH, Vollmecke Decl. 3 ¶ 6.)

139.    Dr. Vollmecke understands that Dr. Herl has cited some of his past criticisms that were directed to Dr. Herl as a basis for the yearlong ban from District property that was imposed against him. (Ex. HH, Vollmecke Decl. 3 ¶ 7.)

140.    Based on his past experience, Dr. Vollmecke fears that Policy C-155-P will be enforced against him because his harsh criticisms of the Board and Dr. Herl might be considered behavior that does not conform to the requirement that visitors maintain "appropriate behavior as good role models for the District's students." (Ex. HH, Vollmecke Decl. 3 ¶ 8.)

141.    Dr. Vollmecke fears that he will be banned again from public meetings and events on school property under Policy C-155-P. (Ex. HH, Vollmecke Decl. 3 ¶ 9.)

142.    For this reason, Dr. Vollmecke has limited his criticisms of the District and its officials, and he has not applied to speak at any Board meetings since the Court's order granting the preliminary injunction on December 11, 2023. (Ex. HH, Vollmecke Decl. 3 ¶ 10.)

143.    Revised Independence School District Policy G-100-P, effective July 12, 2023, provides that among the Board's responsibilities is establishing a system of District policies and rules. (Ex. JJ, Policy G-100-P.)

144.    Dr. Herl testified that individuals who question their elected officials must maintain a "decorum that's expected" and "should only question their public officials politely." (Ex. I, Herl Dep. 91:21-25, 92:1-3.)

145.    Dr. Vollmecke has been a candidate for the Independence School District Board of Education twice. (Ex. I, Herl Dep. 7:21-24.)

146.    The District completely replaced its policies in July 2023. (Ex. I, Herl Dep. 24:7–10.)

<u>Legal Standards</u>

The movant is entitled to summary judgment if they can show that "there is no genuine dispute as to any material fact" and they are "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). After the movant carries this burden, the nonmovant must show the existence of "specific facts showing that there is a genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (internal quotation marks omitted). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

<u>Argument</u>

I.    <u>The Ban, issued pursuant to Policy 1431, violated Dr. Vollmecke's First Amendment rights because it was an unreasonable restriction on speech in a public forum and operated as an unconstitutional prior restraint (Count I).</u>

Defendants unconstitutionally restricted Dr. Vollmecke's access to public forums on District property, in violation of the First Amendment. Restrictions on speech in limited public forums, such as school board meetings, must be reasonable and viewpoint neutral. As this Court held in considering Dr. Vollmecke's motion for preliminary injunction, the categorical one-year restriction on Dr. Vollemecke's access to District property was not reasonable. Doc. 27 at 6–7. The material facts have not changed, nor has the relevant law.

**A. The District's public board meetings and sporting events are limited public forums.**

The District holds Board meetings generally open to the public, where the Board reserves up to 30 minutes for public comment. SUMF ¶¶ 6-8. The parties do not dispute that the District's Board meetings are, at least, limited public forums, and this Court previously recognized that a limited public forum analysis applies to Dr. Vollmecke's First Amendment claim. Doc. 27 at 6–7

(citing *Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012) (explaining that school board meetings are considered nonpublic or limited public forums)).[1]

Sporting events open to the public and held on the District's property are likewise limited public forums. *See, e.g.*, *Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017) (holding school gymnasium during a basketball game was a limited public forum); *Coffelt v. Omaha Sch. Dist.*, 309 F. Supp. 3d 629, 638 (W.D. Ark. 2018) (finding school district created limited public forums by opening a school to the general public for events, including board meetings and athletic events). Here, it is undisputed that the District's inter-scholastic sporting events are open to members of the public, who are encouraged to attend, to cheer on teams and even bring signs. SUMF ¶ 132.

**B. The Ban was not reasonable in light of the purposes served by the limited public forums on school property and was imposed for viewpoint discriminatory reasons.**

Because Board meetings and public sporting events are limited public forums, the District cannot restrict access to the forums unless the restriction is both reasonable in light of the forums' purpose and viewpoint neutral. *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 334–35 (8th Cir. 2011). The Ban was neither.

Categorically banning Dr. Vollmecke from open school board meetings and athletic events on District property is not reasonable in light of the purposes of these forums and the conduct on which the Ban was based. Defendants cite as support for the Ban the events of the January 10, 2023 board meeting, as well as three prior incidents. SUMF ¶¶ 111-14. Regarding the January 10, 2023 meeting, it is undisputed that Dr. Vollmecke never raised his voice, used aggressive language, threatened anyone, or exhibited violent behavior. SUMF ¶¶ 86-87. Dr. Vollmecke arrived late, but to avoid interrupting the Board, he sat down and quietly waited. SUMF ¶ 69.

---

[1] The Eighth Circuit has used the terms nonpublic forum and limited public forum interchangeably. *Green*, 676 F.3d at 753; *Victory Through Jesus*, 640 F.3d at 334–35.

When he finally made his way to the podium to try to address the board, the open meeting was already adjourned and no meeting was in session. SUMF ¶¶ 70-74. Other members of the public remained in the room. SUMF ¶ 85. When Mr. Green demanded Dr. Vollmecke leave or be arrested for trespassing, Dr. Vollmecke peacefully offered his hands for arrest. SUMF ¶¶ 81-83.

Regarding the other incidents cited by Defendants in Dr. Herl's declaration, as this Court previously acknowledged, these "relatively minor" incidents that were "neither violent nor threatening" do not justify the Ban and "stand in stark contrast to [the actions in] cases in which a court has upheld a ban from school property against various challenges." Doc. 27 at 8, 10. Courts have routinely rejected categorical bans based on alleged behavior far more serious than the incidents cited to ban Dr. Vollmecke. *See Worthley v. Sch. Comm. of Gloucester*, No. 22-CV-12060-DJC, 2023 WL 371034, at *6 (D. Mass. Jan. 24, 2023) (preliminarily enjoining ban from school property based on plaintiff's communications with a minor that the district alleged were inappropriate); *Coffelt*, 309 F. Supp. 3d at 632 (preliminarily enjoining ban on plaintiff attending events on school property open to the public where ban was based on plaintiff's heated argument with superintendent and coach, calling them a "liar" and "chicken shit"); *Wilson v. N.E. Ind. Sch. Dist.*, 5:14-CV-140-RP, 2015 WL 13716013, at *1, 5–6 (W.D. Tex. Sept. 30, 2015) (holding alleged assault on school official by grabbing his fingers during a hostile conversation was not sufficient to justify complete ban of plaintiff from school board meetings).

Even assuming Dr. Vollmecke's isolated conduct briefly delayed the closed session of the January 10 Board meeting, categorically banning one individual from all future meetings is not reasonable. *See McBreairty v. Sch. Bd. of RSU 22*, 616 F. Supp. 3d 79, 93–96 (D. Me. 2022) ("Singling out one individual, banning his (perhaps disfavored) speech, and essentially preventing him from engaging in a form of civil discourse that is available to everyone else in [the school

district] is unreasonable."); *see also Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 541, 548 (D. Vt. 2014) (explaining "a categorical ban on expressive speech singling out an individual does not even satisfy the lower threshold of reasonableness review"). In addition, the Ban from open sporting events held on school property had no relationship to the purpose of these public forums; none of the allegedly disruptive behavior cited by the District had anything to do with sporting events, nor has the District ever removed Dr. Vollmecke from, or asked him to leave, any open, public sporting events on District property. SUMF ¶ 116.

Not only was the Ban unreasonable, it was also viewpoint based. As explained further in Part II, *infra*, Defendants' reliance on the other incidents cited in Dr. Herl's declaration as reasons for the Ban—in particular, Dr. Vollmecke's private comment to Dr. Herl regarding the death of a school nurse, his displeased facial expressions during a presentation by Dr. Herl, and his complaints regarding being unable to speak at a 2022 meeting—demonstrates that the Ban was based on Dr. Vollmecke's vigorous, but protected, criticism of school officials.[2]

### C. The Ban operated as an unconstitutional prior restraint by categorically prohibiting Dr. Vollmecke from accessing public forums on District property without first obtaining an exception from Dr. Herl.

As this Court previously concluded, the Ban operated as a prior restraint due to its categorical restriction on Dr. Vollmecke's access to District property without first obtaining an exception from Dr. Herl. Doc. 27 at 9 (quoting *Wilson*, 2015 WL 13716013, at *3). The relevant facts remain unchanged.

Any system of prior restraints bears a heavy presumption against constitutional validity. *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975). Here, Dr. Vollmekce could return to District property only if and when his presence was approved by Dr. Herl. SUMF ¶¶ 97-98. Dr.

---

[2] The protected nature of the speech at issue in these incidents is discussed in Part II.A., *infra*.

Herl's unfettered discretion to grant or deny Dr. Vollmecke permission to participate in a public forum acted as an unconstitutional prior restraint. *See Wilson*, 2015 WL 13716013, at *6 (finding categorical ban excluding plaintiff from school board meetings without written permission was a prior restraint and granting summary judgment on plaintiff's First Amendment claim); *see also City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988) (explaining that "in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint").

### D. Dr. Herl is not entitled to qualified immunity for violating Dr. Vollmecke's First Amendment right to access public forums and for enforcing an unconstitutional prior restraint.

At the time of the Ban, Dr. Vollmecke's First Amendment right to access public forums on school property was clearly established, such that Dr. Herl had "fair notice" that the one-year ban from District property was unlawful. *See Noon v. City of Platte Woods*, 94 F.4th 759, 766 (8th Cir. 2024). It was clearly established that an open school board meeting with public comments is at least a limited public forum. *Green*, 676 F.3d at 753 ("For First Amendment purposes, the School Board meeting was what has variously been called a nonpublic or a limited public forum."). It was also clearly established that restrictions on speech in such a forum must be both reasonable and viewpoint neutral. *Victory Through Jesus*, 640 F.3d at 334.

Here, Dr. Herl had fair notice that issuance of the ban was unlawful because there was *no* evidence that imposing a blanket one-year ban on Dr. Vollmecke from all public forums on school property was reasonable in light of the purposes of any of these forums. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 153 (1969) ("[W]e have consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places."). Moreover, "[c]ourts have consistently held that categorically banning individuals from open school board meetings is unreasonable and

unconstitutional." *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1362 (N.D. Ga. 2022) (collecting cases).

As explained in Part II.D, *infra*, Dr. Herl separately and additionally had fair notice that the Ban violated the First Amendment because it restricted Dr. Vollmecke from accessing public forums on District property based on the viewpoints expressed in Dr. Vollmecke's critical speech. It was clearly established at the time of the Ban that an individual cannot be excluded from a public board meeting based on protected criticisms of government officials. *See infra* Part II.D.

Finally, it was also clearly established that an order that forbids an individual from appearing and speaking at school board meetings in the future operates as an unconstitutional prior restraint. *City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp. Rel. Comm'n*, 429 U.S. 167, 176–77 (1976); *Se. Promotions*, 420 U.S. at 553 (restraints that give "public officials the power to deny use of a forum in advance of actual expression" operate as prior restraints). Even in the case of content-neutral prohibitions on speech, the government "may not *condition* that speech on obtaining a license or permit from a government official in that official's boundless discretion." *City of Lakewood*, 486 U.S. at 764.

## II.  The Ban and ongoing restriction on Dr. Vollmecke's involvement in ISD Academies was issued in retaliation for Dr. Vollmecke's constitutionally protected criticisms of Dr. Herl and the School Board (Count II).

Dr. Herl unconstitutionally retaliated against Dr. Vollmecke by issuing the Ban in response to Dr. Vollmecke's constitutionally protected activity, including protected criticism that Dr. Herl admits formed the basis for the Ban. Government officials may not retaliate against citizens for exercising their First Amendment rights. *Rinne v. Camden Cnty.*, 65 F.4th 378, 384 (8th Cir. 2023). The undisputed evidence demonstrates that Dr. Vollmecke has met all three elements of a First Amendment retaliation claim: (1) he engaged in a constitutionally protected activity, (2) Dr. Herl's adverse action against him would chill a person of ordinary firmness from continuing the activity,

and (3) the adverse action was motivated, at least in part, by his exercise of the protected activity. *See Rinne*, 65 F.4th at 383.

### A. Dr. Vollmecke engaged in constitutionally protected activity through his repeated criticisms of Dr. Herl and the Board.

Dr. Vollmecke was a frequent critic of the Board and Dr. Herl. SUMF ¶¶ 40-42, 59-62. Dr. Herl stated the decision to ban Dr. Vollmecke was a result of not only on the January 10, 2023 meeting, but also on three other prior incidents involving Dr. Vollmecke, SUMF ¶¶ 111-14, at least two of which involve fully protected speech. These are: (1) a private conversation on the evening of a Board meeting (but while no meeting was in session) in which Dr. Vollmecke told Dr. Herl that he held him responsible for the death of a school nurse who died by suicide after contracting long-term COVID-19, SUMF ¶ 64; and (2) an encounter at a PTA Council meeting in April 2022 where Dr. Herl states Dr. Vollmecke glared at him during a presentation and, in a conversation after the meeting, accused Dr. Herl of not letting him speak during a prior board meeting,[3] SUMF ¶¶ 50, 56.

Criticism of government officials and their policies "lies at the heart of speech protected by the First Amendment." *Williams v. City of Carl Junction*, 480 F.3d 871, 874 (8th Cir. 2007); *see also Rinne*, 65 F.4th at 383. This includes facial expressions and body language communicating disapproval. *Redlich v. City of St. Louis*, 51 F.4th 283, 287 (8th Cir. 2022) (explaining the First Amendment protects conduct "sufficiently imbued with elements of communication"); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004) (raising a fist clearly expressed

---

[3] Dr. Vollmecke disputes that the conversation following the PTA Council meeting included discussion of his attempt to speak at the January 2022 board meeting, but agrees that he did have a conversation with Dr. Herl that included discussion of that topic and also agrees that he spoke with Dr. Herl following the April 2022 PTA meeting about District issues. SUMF ¶ 15. The disagreement about the precise timing of the conversation about the January 2022 board meeting is not material, as it is undisputed the conversation took place prior to the Ban. SUMF ¶ 43.

a generalized message of disagreement with a school official); *see also* SUMF ¶ 51 (Dr. Vollmecke explaining that during the presentation, he disagreed with the position Dr. Herl was taking). It is undisputed that at no time during these incidents—nor at any other time—did Dr. Vollmecke threaten Dr. Herl. SUMF ¶ 117. Nor were these incidents disruptive. SUMF ¶¶ 87, 111-14. They instead involve fully protected speech.

**B. The Ban from District property was, and the ongoing prohibition on involvement in the ISD Academies is, an adverse action that would chill a person of ordinary firmness from continuing to engage in the type of criticisms Dr. Vollmecke made.**

The Ban barred Dr. Vollmecke from District property for one year and threatened his arrest and further legal action. SUMF ¶¶ 94, 97. Because Dr. Vollmecke could not be present on District property, he was prevented from speaking at Board meetings, continuing to volunteer with the District's ISD Academies, and attending school sporting events. SUMF ¶¶ 118, 125-26, 131. These activities are ones that Dr. Vollmecke would have continued engaging in if not for the Ban. SUMF ¶¶ 120, 125-26, 131. The Ban thus imposed "concrete consequences" that would chill a person of ordinary firmness from engaging in First Amendment activity. *Rinne*, 65 F.4th at 384 (finding that a person of ordinary firmness would be chilled from engaging in protected activity upon a one-year prohibition from entering county-owned property under threat of enforcement); *see also McNeally v. HomeTown Bank*, No. 21-CV-2614, 2022 WL 2220922, at \*5–6 (D. Minn. June 21, 2022) (chilling effect on speech where superintendent barred plaintiff from district property, depriving plaintiff of ability to work, attend board meetings, and vote at polling places on school property).

**C. Dr. Vollmecke's protected criticisms were a but-for cause of the Ban.**

The one-year ban from District property and indefinite ban on Dr. Vollmecke's volunteer activities for the District were caused by Dr. Vollmecke's protected speech and expression. Dr. Vollmecke can prevail on the third element of retaliation if the adverse action "was motivated at

least in part by the exercise of the protected activity." *See Sanimax USA, L.L.C. v. City of S. St. Paul*, 94 F.4th 551, 558 (8th Cir. 2024). This means Dr. Vollmecke can prevail if his protected activity was a "but-for" cause of the Ban and the indefinite restriction on volunteer activities, such that these actions would not "have been taken absent [a] retaliatory motive." *Sanimax USA*, 95 F.4th at 559; *see also Noon*, 94 F.4th at 764 (noting the third element of a retaliation claim requires a showing that "the protected speech was a 'substantial or motivating factor' in the decision to take" the adverse action). Though causation is typically a factual question, it can be decided on summary judgment where the question is "so free from doubt" as to justify taking it away from the factfinder. *See Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002).

Here, there is no dispute the Ban was motivated at least in part by Dr. Vollmecke's protected activity. Dr. Herl's affidavit explained the basis for the Ban as follows: "[A]s a result of Plaintiff's conduct and arrest for trespassing on January 10, as well as his prior disruptive conduct, I issued to Plaintiff a letter restricting him from being on District property until January 10, 2024." SUMF ¶¶ 110-11. Dr. Herl testified that the alleged "prior disruptive conduct" he was referring to were the other three incidents described in his affidavit, SUMF ¶¶ 111, at least two of which involved fully protected speech, *see supra* Part II.A. The undisputed evidence thus reflects that Dr. Vollmecke's constitutionally protected criticisms were a substantial factor and but-for cause of the Ban because Defendants admit that the Ban was issued as a result of at least two instances of protected First Amendment activity. Dr. Herl's reference to these instances of protected speech as reasons for the Ban establish that Dr. Vollmecke's First Amendment activity, and Dr. Herl's retaliatory animus in response, motivated the Ban and permanent prohibition on volunteering for ISD Academies. *Cf. Rinne v. Camden Cnty.*, No. 21-CV-04076, 2021 WL 5921465, at *5 (W.D. Mo. Nov. 19, 2021) (finding that if defendants' stated reason for the ban included public criticisms,

those "would be protected [speech] and not a valid basis for the ban"), *appeal dismissed as moot*, 65 F.4th 378 (8th Cir. 2023). Dr. Herl's admission makes it "free from doubt" that Dr. Vollmecke's protected speech was a but-for cause of the Ban.

Moreover, while Dr. Herl's concrete admission establishes his retaliatory animus as a matter of law, other evidence bolsters it. Dr. Herl testified that individuals who question their elected officials must maintain a "decorum that's expected" and "should only question their public officials politely." SUMF ¶ 144. In addition, despite Dr. Vollmecke's non-violent and non-threatening behavior at the January 10, 2023 meeting, when Dr. Herl was asked if he wanted Dr. Vollmecke to be released with a summons for trespassing or taken to jail, Dr. Herl responded: "Jail if we can." SUMF ¶¶ 89-90.

### D. Dr. Herl is not entitled to qualified immunity for the retaliatory Ban and the ongoing retaliatory restriction on Dr. Vollmecke's involvement in the ISD Academies.

Dr. Herl may be held liable in his individual capacity for the unconstitutional retaliation against Dr. Vollmecke because it violated Dr. Vollmecke's clearly established First Amendment rights, such that a reasonable official would have known that issuing the Ban was unlawful. *Noon*, 94 F.4th at 766.[4]

It was clearly established at the time Dr. Herl issued the Ban that that the First Amendment protects verbal criticism of government officials. *See Williams*, 480 F.3d at 874 ("The criticism of public officials lies at the heart of speech protected by the First Amendment."). It was also clearly established that "a government official may not retaliate against a citizen for the exercise of his First Amendment rights." *Rinne*, 65 F.4th at 384 (holding right was clearly established at time of

---

[4] As explained in Part VI *infra*, Dr. Vollmecke is entitled to declaratory relief and injunctive relief against Dr. Herl's continued enforcement of the retaliatory ban on Dr. Vollmecke's involvement in the ISD Academies regardless of whether the law was clearly established.

defendants' March 2021 one-year ban of plaintiff from county property (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006))). Even more specifically, "[b]inding and persuasive authorities show that at the time of the Ban it was "clearly established" that an individual may "not be excluded from a public board meting in retaliation for First Amendment activities." *McNeally*, 2022 WL 2220922, at *10 (finding that binding and persuasive authority "gave fair and clear warning to a reasonable official" that restricting access to school board meetings in retaliation for criticisms of government officials and advocating opposing viewpoints before the board "would violate a person's clearly established First Amendment rights"); *see also Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, No. 23-CV-33-CJW-MAR, 2023 WL 6163487, at *7 (N.D. Iowa Sept. 21, 2023) (denying, at motion to dismiss stage, claim for qualified immunity where plaintiff alleged he was not disruptive or threatening and had been banned from school board meetings after expressing his viewpoint). The Supreme Court has held that when a school board conducts its business and hears the views of citizens in open meeting, it "may not be required to discriminate between speakers on the basis of . . . the content of their speech." *City of Madison,* 429 U.S. at 176 (1976); *see also Minn. State Bd. for Comm. Coll. v. Knight*, 465 U.S. 271, 281 (1984) (describing *City of Madison* as holding that the First Amendment was violated by "selective closure of a generally open forum"—the school board meetings at issue "were suddenly closed to one segment of the public even though they otherwise remained open for participation by the public at large"). The Eighth Circuit has similarly held that that when a board had "chosen to conduct its business in public and to hear citizen views, [it] could not deny access to the meeting and . . . it could not discriminate against a speaker based on his viewpoint." *Green*, 673 F.3d at 754. Any reasonable government official would understand that the Ban violated Dr. Vollmecke's clearly established First Amendment rights.

**III. Dr. Vollmecke's rights to Due Process were violated by the Ban because it was issued pursuant to the unconstitutionally vague Policy 1431 and without any notice or an opportunity to be heard (Counts III & IV).**

Dr. Vollmecke's Due Process rights were violated by the Ban issued pursuant to Policy 1431 because Policy 1431 was unconstitutionally vague and because there was no opportunity to be heard regarding the Ban nor an opportunity to contest it.

**A. Dr. Vollmecke's Due Process rights were violated when he was banned pursuant to an unconstitutionally vague policy (Count IV).**

A policy is unconstitutionally vague if it fails to provide the kind of notice that would enable a "person of ordinary intelligence a reasonable opportunity to know what is prohibited" or fails to establish "explicit standards" for enforcement authorities to avoid "arbitrary and discriminatory enforcement." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Policy 1431, which required that visitors must behave "in a manner reflective of a positive role model for children" or face "sanctions which will limit a person's access to school activities and school premises," SUMF ¶ 11, was unconstitutionally vague for both reasons.

The issuance of the Ban pursuant to Policy 1431 violated Dr. Vollmecke's Due Process rights because its requirement that visitors behave "in a manner reflective of a positive role model for children" or face sanctions that limit their access to school property failed to provide a person of ordinary intelligence a reasonable opportunity to know what was prohibited. *See Am. C.L. of Mo. Found. v. Lombardi*, 23 F. Supp. 3d 1055, 1062 (W.D. Mo. 2014) (holding plaintiffs stated a liberty interest by alleging they were deprived of their right to free speech without fair notice). Where "a school policy reaches speech protected by the First Amendment, the vagueness doctrine demands a greater degree of specificity than in other contexts." *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 668 (8th Cir. 2023) (internal quotation marks omitted). Here,

however, the District admitted it has no further documentation or explanation of what it means for a visitor to behave "in a manner reflective of a positive role model for children." SUMF ¶ 13.

The term "positive role model for children" is subjective, such that an ordinary person "must necessarily guess at its meaning." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). Where a regulation uses an undefined term that can have various meanings, it fails to provide adequate notice. The Supreme Court has held that the term "annoy" in an ordinance rendered it void for vagueness because "conduct that annoys some people does not annoy others, so no standard is specified at all." *Id*. at 614. Similarly, the Eighth Circuit held that a school disciplinary policy requiring students to "respect a student's gender identity" was unconstitutionally vague because "respect" was undefined and had various meanings. *Parents Defending*, 83 F.4th at 668.

Dr. Herl agreed that "different people might have different opinions on what it means to conduct oneself in a manner reflective of a positive role model for children" and some people might "vigorously" disagree about whether certain conduct meets this standard. SUMF ¶ 15. When asked how someone would know if their conduct was reflective of a positive role model for children, Dr. Herl responded: "[M]ost people know it when they see it . . . I'm sure it's up for everyone's interpretation to some extent." SUMF ¶ 14. Dr. Herl further explained a "wide range" of behavior could be considered to violate the "positive role model" requirement. SUMF ¶ 12.

Second, the vagueness of Policy 1431 is compounded by the requirement that visitors be a positive role model "for children." Courts have found standards like "appropriateness" for minors and "harmful to minors" vague because they apply to a broad range of minors, and different conduct and speech could be appropriate for differently aged children. *See Fayetteville Pub. Libr. v. Crawford County*, No. 23-CV-05086, 2023 WL 4845636, at *17 (W.D. Ark. July 29, 2023) (finding "appropriateness" for minors "fatally vague"); *Friends of Georges, Inc. v. Mulroy*, 675 F.

Supp. 3d 831, 875 (W.D. Tenn. 2023) (finding "harmful to minors" vague). Here, Dr. Herl testified

that whether behavior is reflective of a positive role model for children "could differ depending on

whether the child was a kindergartner versus a high-schooler." SUMF ¶ 17.

The issuance of the Ban pursuant to Policy 1431 also violated Dr. Vollmecke's Due Process

rights because the policy failed to establish explicit standards for enforcement. Since what

constitutes conduct that is a "positive role model for children" is up to the interpretation of the

enforcer, there is nothing to prevent the policy from being applied in an arbitrary and

discriminatory manner. *Grayned*, 408 U.S. 110, 108 (1972). Because "positive role model" is

subjective and not further defined, SUMF ¶¶ 13-15, Dr. Herl could arbitrarily decide what behavior

violated the policy.

### B. The Ban violated Due Process by depriving Dr. Vollmecke of a liberty interest without sufficient process because he had no opportunity to appeal (Count III).

The Ban further violated Due Process because Dr. Vollmecke was not provided with notice

of the Ban or an opportunity to contest it. SUMF ¶¶ 101-05. A plaintiff establishes a procedural

due process claim by demonstrating: (1) a deprivation of a liberty interest and (2) that such

"deprivation was without sufficient process." *Am. C.L. of Mo. Found.*, 23 F. Supp. 3d at 1062.

Dr. Vollmecke's freedom of speech, including the right to speak during public comment

periods of Board meetings and to be free from prior restraints, is a liberty interest under Due

Process. *See First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 779 (1978) (holding that freedom

of speech is "within the *liberty* safeguarded by the Due Process Clause of the Fourteenth

Amendment from invasion by state action"); *Cyr*, 60 F. Supp. 3d at 550–51 (recognizing plaintiff's

liberty interest in attending school board meetings where he had a right to express himself).

Under Policy 1431, Dr. Vollmecke was deprived of this liberty interest without sufficient

process. To deprive an individual of a liberty interest, Due Process requires notice and an

opportunity to be heard. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Ban provided neither. SUMF ¶ 101. Dr. Vollmecke received no process; there was no notice or opportunity to be heard before he was banned, nor a chance to appeal his Ban after it was issued, which created a high risk of erroneous deprivation. SUMF ¶¶ 101-05.

Due Process requires something more than the complete lack of opportunity to be heard that Dr. Vollmecke faced under the District's policies. To determine what Due Process requires, courts balance: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest . . . and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens" of additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, Dr. Vollmecke "has a strong interest in attending school board[] meetings, where he has a right to express himself." *Cyr*, 60 F. Supp. 3d at 551. Dr. Vollmecke has two children who will attend school in the District, has volunteered for the District activities, and has been active in discussions relating to District policies, including running for school board twice. SUMF ¶¶ 2, 39, 125, 145. As a result of his engagement in the District, Dr. Vollmecke has strong First Amendment interests in speaking during public comment periods of Board meetings. *See Bellotti*, 435 U.S. at 779–80.

Second, the Ban created a "high risk of erroneous deprivation" of Dr. Vollmecke's right to speak in a limited public forum because there was no process to contest the Ban. *Cyr*, 60 F. Supp. 3d at 551. The Ban Letter did not identify any opportunity to be heard or appeals process. SUMF ¶ 101. Policy 1431 does not provide for notice or a pre-deprivation hearing, nor does it provide for any type of post-deprivation opportunity to contest a decision to ban an individual from District

property. SUMF ¶ 104 & Ex. H. There is no other written procedure in place allowing individuals banned from District property to contest their bans. SUMF ¶ 103. The lack of any procedural safeguards before an individual is deprived of their First Amendment rights violates Due Process. *See, e.g.*, *Wilson*, 2015 WL 13716013, at *7 (finding risk of erroneous deprivation high where school "failed to provide any genuine process" for appeal); *Jacobsen v. Petersen*, 728 F. Supp. 1415, 1423 (D.S.D. 1990) ("In light of the important First Amendment interests at stake in this case, and the lack of *any* existing procedural safeguards . . . [plaintiff's] due process rights were violated."); *see also Cyr*, 60 F. Supp. 3d at 552 (finding failure to provide meaningful opportunity to contest property ban contributed to "high risk of erroneously depriving [plaintiff] of his First Amendment right to freedom of expression").

Here, there was a particularly high risk of erroneous deprivation because Policy 1431 was vague and gave Dr. Herl unfettered discretion to enforce the policy. *See supra* Part III.A. This "broad discretion to ban members of the public from school premises and, consequently, school board meetings" increases the risk of erroneous deprivation. *See Cyr*, 60 F. Supp. 3d at 551. Given the broad discretion to ban individuals and the lack of any process, the value of additional procedural safeguards, such as an opportunity to challenge the ban, is high.

Finally, additional safeguards would not impose a significant burden on the District, particularly when weighed against the high costs of a yearlong deprivation of First Amendment rights. *See Cyr*, 60 F. Supp. 3d at 552 (finding a "significant interest" in implementing a policy was "not so overwhelming, taxing, or immediate" that the district "did not have time to set out reasons for their decision and provide [plaintiff] an opportunity to be heard"); *Wilson*, 2015 WL 13716013, at *7 (finding significant government interests "do not justify the denial of rudimentary

process after the deprivation of a person's First Amendment rights"). In fact, the District already provides hearings before the Board for many other issues. SUMF ¶¶ 35-37.

That the Ban Letter left open the possibility to secure permission from Dr. Herl to enter District property does not cure the Due Process violation. *See Wilson*, 2015 WL 13716013, at *7. The Ban Letter states: "If you enter school property without [the Superintendent's] permission, it will be considered trespassing by the School District." SUMF ¶ 97. In *Wilson*, the plaintiff was banned from school property unless she obtained "written permission" from the principal or campus police. *Wilson*, 2015 WL 13716013, at *6. The court found Due Process lacking because the "school system failed to provide any *genuine* process for appealing" the ban from school property. *Wilson*, 2015 WL 13716013, at *7 (emphasis added). Like in *Wilson*, the narrow avenue of asking for permission from Dr. Herl—the very person who issued the Ban—does not cure the lack of process. Further, it functions as a prior restraint on speech. *Wilson*, 2015 WL 13716013, at *6.

### C. Dr. Herl is not entitled to qualified immunity for the violations of Dr. Vollmecke's Due Process rights.

"[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Here, given the undisputed testimony regarding the broadly subjective nature of the "positive role model" standard, it is obvious that issuance of the Ban pursuant to Policy 1431 violates the constitutional prohibition on regulations that fail to provide "a person of ordinary intelligence a reasonable opportunity to know what is prohibited" and that fail to provide explicit standards for enforcement. *Grayned*, 408 U.S. at 108; *see also Am. C.L. Union v. Mukasey*, 534 F.3d 181, 205 (3d Cir. 2008) (holding prohibition on posting material "harmful to minors" was impermissibly vague because

regulated party would have to guess at the "bottom end of the range of ages" to which the restriction applied).

It is also clearly established that due process requires that deprivation of a liberty interest "be preceded by notice and an opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted); *see also Goss v. Lopez*, 419 U.S. 565, 579 (1975) (explaining that due process requires "at a minimum" notice and opportunity for hearing). Even in the limited circumstances where pre-deprivation hearing is not be possible, a post-deprivation hearing is required. *Zinermon v. Burch*, 494 U.S. 113, 132 (1990). It is also clearly established that citizens have a liberty interest in access to school board meetings that are public forums. The Eighth Circuit has long held that "no right is more clearly established than freedom of speech," *Hall v. Mo. Highway Transp. Comm'n*, 235 F3d 1065, 1068 (8th Cir. 2000), and further has recognized that, "having chosen to conduct its business in public and to hear citizen views," a school board cannot deny access to its meetings, *Green*, 676 F.3d at 753–54. Accordingly, a reasonable official in Dr. Herl's position would have known that depriving Dr. Vollmecke of the ability to attend public school board meetings, without any notice and without any opportunity to be heard, violated clearly established rights.

## IV. Policy C-155-P violates the First Amendment and Due Process Clause (Counts III, IV, and V).

### A. Dr. Vollmecke has standing to challenge Policy C-155-P because there is credible threat of enforcement.

"A plaintiff claiming an abridgment of the right to free speech has standing to seek pre-enforcement review of a policy under circumstances that render the threatened enforcement sufficiently imminent." *Parents Defending*, 83 F.4th at 666 (internal quotation marks omitted). A plaintiff can establish an injury-in-fact that confers standing to challenge a policy where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest,"

that is proscribed or "arguably proscribed" by a policy, and there is a credible threat of enforcement. *Id.* at 666–67.

Dr. Vollmecke has standing to challenge revised Policy C-155-P because he intends to continue harshly criticizing the District and its officials when he disagrees with their actions and to continue speaking at board meetings. SUMF ¶¶ 137-38. This activity is core political speech that is protected by the First Amendment. *Williams*, 480 F.3d at 874. Under the revised policy, however, Dr. Vollmecke's speech has been chilled because he is concerned that his criticisms of the district may run afoul of Policy C-155-P, which requires visitors to maintain "appropriate behavior as good role models for the District's students" and allows the Superintendent to limit or revoke an individual's access to District property "at any time." SUMF ¶¶ 26, 140.

Dr. Vollmecke's intended activity of engaging in vigorous criticism of the District and his officials, both in and outside board meetings, is "arguably proscribed by the policy." *Parents Defending*, 83 F.4th at 667. Conduct that constitutes "appropriate behavior" as a "good role model[] for students" is a subjective standard that means vastly different things to different people. SUMF ¶¶ 29-30. There are no documents that define what this standard means. SUMF ¶ 28. Dr. Herl testified that the standard should be interpreted similarly to the "positive role model for children" standard under Policy 1431, under which Dr. Vollmecke has already been banned based on activities that included protected political speech—his comment to Dr. Herl regarding the death of a school nurse, his facial expressions in response to Dr. Herl's presentation, and his criticism of Dr. Herl regarding his ability to speak at a prior meeting. SUMF ¶ 29; *see Williams*, 480 F.3d at 874 (recognizing "criticism of public officials" as core protected speech). The policy, in short is "so vague that it is impossible . . . to determine what conduct is prohibited." *Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F. Supp. 3d 521, 543 (N.D. Cal. 2020); *see also Pernell v. Fla.*

*Bd. of Governors of State Univ. Sys.*, 641 F. Supp. 3d 1218, 1267–68, 1272 (N.D. Fla. 2022) (holding plaintiffs had standing to bring a pre-enforcement challenge on vagueness grounds to a law requiring them to instruct curriculum in an "objective manner").

Additionally, there is a credible threat of enforcement. Dr. Vollmecke has already been banned under the predecessor to Policy C-155-P. SUMF ¶ 94. Policy C-155-P's "good" role model standard is not meaningfully different from Policy 1431's "positive role model standard." Dr. Herl testified they should be interpreted similarly. SUMF ¶ 29. As such, Dr. Vollmecke's fear of being banned from District property under such a broad policy, SUMF ¶ 141, is hardly speculative. It already happened. Furthermore, Dr. Vollmecke is injured by over-complying with the requirement to display "appropriate behavior as good role models for the District's students" in an effort to avoid future bans from access to District property. SUMF ¶ 142; *see Isaacson v. Mayes*, 84 F.4th 1089, 1095–96 (9th Cir. 2023) (finding an injury sufficient for standing when a statute's vagueness caused plaintiffs to over-comply instead of risking prosecution).

**B. Policy C-155-P impermissibly restricts speech in a public forum (Count V).**

Revised Policy C-155-P, similar to Policy 1431, is an impermissible restriction on speech in a public forum because it provides the Superintendent with unfettered discretion to indefinitely "limit or revoke permission to visit school property or parts of school property at any time," including public forums on school property. SUMF ¶ 26. Thus, the Superintendent may issue a blanket ban from District property (similar to the January 11, 2023 Ban) for a visitor failing to be a good role model for children whenever he pleases, without regard to whether such restriction is reasonable as it pertains to public forums on District property.

Permitting the Superintendent to limit or revoke access to District property indefinitely and at any time is not reasonable, nor is it related to the purpose of limited public forums on school

property. Categorically banning one individual from all future school board meetings is not reasonable. *See McBreairty*, 616 F. Supp. 3d at 93–96; *see also Cyr*, 60 F. Supp. 3d at 548. Under the revised policy, the Superintendent may limit or revoke access to District property at any time and for any reason if he subjectively feels an individual is not a good role model for children. Such a broad and subjective policy allows the Superintendent to ban individuals from District property for a plethora of reasons unrelated to the purpose of public board meetings or athletic events on school property.

### C. Policy C-155-P's language requiring "appropriate behavior as good role models for the District's students" is vague in violation of Due Process because it is subjective and does not provide an enforcement standard (Count IV).

Policy C-155-P suffers from infirmities similar to those of former Policy 1431. Policy C-155-P, requires "appropriate behavior as good role models for the District's students" and allows the Superintendent to limit permission to visit school property "at any time." SUMF ¶¶ 25-26. The District does not have any further documentation defining the meaning of the phrase "appropriate behavior as good role models for the District's students." SUMF ¶ 28. Dr. Herl testified that people may have different interpretations of what constitutes appropriate behavior as a good role model. SUMF ¶ 30. Dr. Herl also testified that what behavior constitutes appropriate behavior as a good role model for the District's students depends on the age of the student. SUMF ¶ 29.[5]

Policy C-155-P is impermissibly vague because it fails to provide notice of the conduct that is prohibited. First, "good role models" for students is a subjective standard that fails to put an ordinary person on notice of what conduct would be violative. *See supra* Part III.A. Second, Policy C-155-P applies to a broad range of ages, contributing to its vagueness. *See supra* Part III.A.

---

[5] Policy C-155-P also refers to disruptive conduct that could result in a decision to revoke permission to visit school property. SUMF ¶ 27. Dr. Herl testified, however, that conduct need not be disruptive to subject a visitor to a ban and that he has the authority to revoke permission even when a visitor's conduct is not disruptive. SUMF ¶ 33.

Finally, it provides no explicit standard for enforcement, permitting enforcement authorities to apply it in an arbitrary and discriminatory manner. *See supra* Part III.A.

Beyond the vague language itself, Policy C-155-P permits the Superintendent to ban someone "at any time" "indefinitely." SUMF ¶ 26. This discretion compounds the risk of the vagueness. *See Clary v. City of Cape Girardeau*, 165 F. Supp. 3d 808, 822 (E.D. Mo. 2016) ("Vesting law enforcement officials with complete discretion to decide whether a violation has occurred is the hallmark of a vague regulation.").

### D. Policy C-155-P violates Due Process because it fails to provide any hearing or appeal relating to a property ban issued pursuant to it (Count III).

Policy C-155-P provides for bans from public forums on school property of a specified length or indefinitely without any opportunity to be heard. SUMF ¶¶ 26, 104. The District completely replaced its policies in July 2023. SUMF ¶ 146. Dr. Vollmecke's Ban, though issued under Policy 1431, was continued and maintained under Policy C-155-P. For the same reasons the complete absence of process under Policy 1431 violated Dr. Vollmecke's Due Process rights, so too does Policy C-155-P. *See supra* Part III.B. The lack of any process is particularly striking in light of the other topics the District provides a hearing before the Board for prior to making a decision. SUMF ¶¶ 35-37.

### V. The District and Board are liable for the violations of Dr. Vollmecke's First Amendment rights.

The District and Board are liable under Counts I, III, IV and V because the violations of Dr. Vollmecke's rights established under those counts were completed through "action pursuant to official municipal policy." *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). The District and Board are liable for violations of Dr. Vollmecke's First Amendment and Due Process rights and nominal damages under Counts I and IV because the Ban was issued pursuant to the unconstitutionally vague Policy

1431, which was a policy adopted by the Board as the governing body for the district. SUMF ¶ 143. The District and Board promulgated Policy 1431, the policy is unconstitutionally vague, and Dr. Vollmecke was banned pursuant to the policy. *Clary*, 165 F. Supp. 3d at 830 (holding city liable under *Monell* because "it promulgated the [o]rdinance, the [o]rdinance is unconstitutionally vague, and plaintiff was cited and arrested pursuant to the [o]rdinance"). The District and Board are also liable for the violation of Dr. Vollmecke's Due Process rights under Count III because Policy 1431 deprived Dr. Vollmecke of his liberty interest in accessing public forums without sufficient (or indeed, any) process. Dr. Vollmecke is also entitled to declaratory and injunctive relief against the Board and District under Counts III, IV, and V because he seeks review of Policy C-155-P, which was a policy adopted by the Board as the governing body for the District and promulgated by the Board on behalf of the District. SUMF ¶ 143.

## VI.    **Dr. Vollmecke is entitled to nominal damages and declaratory and injunctive relief.**

Dr. Vollmecke is entitled to nominal damages for the past violations of his First Amendment and Due Process rights as a result of the Ban and Policy 1431. Although the policy and regulation cited in the Ban letter are no longer in effect, Dr. Vollmecke's claim for nominal damages for past violations of his rights is sufficient to maintain a justiciable cause of action. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (holding "nominal damages provide the necessary redress for a completed violation of a legal right"). Dr. Vollmecke has established a completed violation of his constitutional rights and is entitled to nominal damages. *Id.*; *see also Carey v. Piphus*, 435 U.S. 247, 266–67 (1978) (holding establishment of denial of right to procedural due process entitles plaintiff to at least nominal damages).

Declaratory judgment is appropriate relief in a § 1983 claim seeking equitable relief, such as this case. *See, e.g.*, *Phelps-Roper v. Koster*, 734 F. Supp. 2d 870, 882 (W.D. Mo. 2010), *aff'd in part, rev'd in part on other grounds, and remanded*, 713 F.3d 942 (8th Cir. 2013). Declaratory

judgment is appropriate where resolution of a controversy would benefit from "specific relief through a decree of a conclusive nature, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Calderon v. Ashmus*, 523 U.S. 740, 745 (1998). In this case, Dr. Vollmecke is entitled to a declaration that the ongoing Ban from involvement in the ISD Academies constitutes unconstitutional retaliation in violation of his First Amendment rights.[6] Dr. Vollmecke is also entitled to a declaration that Policy C-155-P is unconstitutional in violation of the First Amendment and Due Process Clause.

Dr. Vollmecke is also entitled to a permanent injunction preventing Dr. Herl from continuing to enforce the retaliatory ban on Dr. Vollmecke's involvement in ISD Academies in violation of First Amendment and preventing all Defendants from enforcing unconstitutional Policy C-155-P. A permanent injunction is appropriate where plaintiffs show: (1) actual success on the merits; (2) irreparable harm; (3) that the harm to the plaintiff outweighs any harm to others from an injunction; and (4) that an injunction serves the public interest. *Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 762 (8th Cir. 2008). Summary judgment in Dr. Vollmecke's favor constitutes success on the merits. Dr. Vollmecke will suffer irreparable harm if an injunction does not issue, because, absent an injunction, he will remain subject to an ongoing retaliatory ban from ISD Academies in violation of the First Amendment and he will be chilled from exercising his right to free speech due to a credible threat of enforcement of Policy C-155-P. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The balance of equities

---

[6] Dr. Vollmecke need not demonstrate that it was "clearly established" that the retaliatory ban from ISD Academies violated his First Amendment rights for his claims for declaratory and injunctive relief against Dr. Herl. "[T]he doctrine of qualified immunity does not apply to [plaintiff's] claims for declaratory and injunctive relief." *Curtiss v. Benson*, 583 F. App'x 598, 599 (8th Cir. 2014).

weighs in favor of an injunction because there is no evidence of harm to others from the injunction and because the "balance of equities . . . generally favors the constitutionally-protected freedom of expression." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) (en banc). Finally, because "it is always in the public interest to protect constitutional rights," *Phelps-Roper*, 545 F.3d at 690, the public interest also favors entry of an injunction.

## Conclusion

For the foregoing reasons, Dr. Vollmecke respectfully requests that this Court grant summary judgment as follows:

A) Enter a judgment in Dr. Vollmecke's favor and against all Defendants on Count I, finding that Defendants violated Dr. Vollmecke's First Amendment right to access public forums by banning him from open public meetings of the Board, from sporting events, and from other activities and events on District property that are open to the general public from January 11, 2023, to January 10, 2024, and awarding nominal damages;

B) Enter a judgment in Dr. Vollmecke's favor and against Dr. Herl on Count II, finding that Dr. Herl unlawfully retaliated against Dr. Vollmecke for exercise of his First Amendment rights by banning him from all District property for one year and by indefinitely banning him from participation in ISD Academies; awarding nominal damages; declaring that the ongoing ban from ISD Academies is unlawful retaliation in violation of Dr. Vollmecke's First Amendment rights; and enjoining Dr. Herl from continued enforcement of the retaliatory ongoing ban from ISD Academies;

C) Enter a judgment in Dr. Vollmecke's favor and against all Defendants on Count III, finding that Defendants violated Dr. Vollmecke's rights under the Due Process Clause by depriving

him of his liberty interest in accessing public forums on District property without sufficient process in issuing the Ban pursuant to Policy 1431 and awarding nominal damages; declaring that Policy C-155-P violates Due Process by depriving individuals of their liberty interest in access public forums on District property without sufficient process; and enjoining Defendants from enforcing Policy C-155-P;

D) Enter a judgment in Dr. Vollmecke's favor and against all Defendants on Count IV, finding that Defendants violated Dr. Vollmecke's rights under the Due Process Clause by banning him from all District property pursuant to unconstitutionally vague Policy 1431 and awarding nominal damages; declaring that Policy C-155-P is unconstitutionally vague; and enjoining Defendants from enforcing Policy C-155-P;

E) Enter a judgment in Dr. Vollmecke's favor and against all Defendants on Count V, declaring that Policy C-155-P violates the First Amendment by vesting the Superintendent with authority to restrict access to public forums on school property whenever a visitor is deemed to have engaged in behavior inconsistent with a "positive role model" for students or indefinitely "at any time";

F) Award Plaintiff nominal damages, reasonable costs, and attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

G) Provide such other relief as the Court deems just and proper.

DATED: May 7, 2024            Respectfully Submitted,

*/s/ Benjamin J. Wilson*
Lisa S. Hoppenjans, #63890 (MO)
Benjamin J. Wilson, #63329 (MO)
Matthew Blaney (law student entered under L.R. 83.8)
Alissa Gilmer (law student entered under L.R. 83.8)
Lauryn Masters (law student entered under L.R. 83.8)
First Amendment Clinic
Washington University in St. Louis
School of Law
One Brookings Drive
MSC 1120-250-102
St. Louis, MO 63130
Phone: (314) 935-8980
lhoppenjans@wustl.edu
benwilson@wustl.edu

**ATTORNEYS FOR PLAINTIFF**


**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify that on May 7, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Video exhibits that could not be filed are being shared with the Court and Defense counsel via Box links.

*/s/ Benjamin J. Wilson*