# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | | |
|---|---|---|
| JASON VOLLMECKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-00644-CV-W-BP |
| | ) | |
| INDEPENDENCE SCHOOL DISTRICT, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART DEFENDANTS' AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, Dr. Jason Vollmecke, brought this suit against Independence School District No. 30 (the "District"), the District's Board of Education (the "Board"), and the District's Superintendent, Dale Herl ("Herl"), asserting violations of his First Amendment and procedural due process rights. Pending are cross-motions for summary judgment. For the following reasons, Plaintiff's Motion, (Doc. 49), and Defendants' Motion, (Doc. 47), are each **GRANTED IN PART.**

## I. BACKGROUND

The District is a public school district in Independence, Missouri. It is governed by the Board which creates Independence School District Policy, including rules for conduct. The Board conducts monthly meetings open to the public; these meetings are the primary avenue for public feedback and include a period during which the Board takes public comment. Herl has been the District's Superintendent since July 2013

Plaintiff is a resident of Independence, Missouri. Starting in 2018, he served as the Chair of the District's Biomedical Sciences Advisory Committee. He also regularly conducted guest lectures in the District, participated in career counseling, provided physicals and scoliosis

screenings, and served on the board of ISD Academies (a District program for students interested in science, technology, engineering, and math).

In 2020, Plaintiff began publicly commenting on the District's management; and later began regularly attending Board meetings. In his comments at meetings, Plaintiff has been repeatedly critical of how the District has been run and directed his criticisms at the Board and Herl. (Doc. 51-10, p. 3; Doc. 51-18, ¶ 15.)[1] He has also sent emails to Herl criticizing the Board and Herl. Generally, Plaintiff has alleged the District's leadership is not transparent, that the District engages in discrimination, and that the District is a hostile work environment for teachers. (*See*, *e.g.*, Doc. 51-10, p. 37, 41-42; Doc. 51-20, ¶ 19; Doc. 51-2, ¶¶ 18, 25, 29, 31.) There is no evidence that any of Plaintiff's comments extended beyond criticisms of the way the Board governs the District or the conduct of school officials within the context of their job.

A few of Plaintiff's interactions with the Board and Herl are relevant to the issues in the case. On or about January 11, 2022, Dr. Randy Maglinger presented at a Board meeting; Plaintiff raised his hand and made a statement about whether to move certain biology classes online. (Doc. 51-19, ¶ 4.) Herl announced that this was not the time for him to speak. (Doc. 51-18, ¶¶ 3-4.) Plaintiff then said, "you just silenced the chair of the Biomedical Sciences Advisory Committee." (Doc. 48-1, pp. 6-7; *see also* Doc. 51-10, p. 43.) A member of the Board told Plaintiff again that this was not the time for him to speak, and Plaintiff fell silent. (*See* Doc. 48-2, pp. 3-4.) Plaintiff asserts that this interaction occurred after the presentation, (Doc. 48-1, p. 6), while Defendants assert Plaintiff's statements occurred during the presentation. (Doc. 51-19, ¶ 4.)

Sometime soon after, Herl presented at a Parent Teacher Association ("PTA") Meeting; Plaintiff entered the meeting and, according to Herl, stood in the back of the room with his arms

---

[1] All citations to the record refer to the documents and page numbers as listed in the CM/ECF system.

crossed, glaring at Herl. (Doc. 51-18, ¶¶ 5-11.) The two spoke privately after that meeting;[2] Plaintiff expressed his frustrations with Herl, accused him of lying about teacher transfers, and complained about his actions in preventing Plaintiff from speaking at the meeting where Maglinger presented. (Doc. 51-10, pp. 41-44; Doc. 51-18, ¶¶ 5-7.)

On the evening of another Board meeting in 2022, Plaintiff confronted Herl about the recent death of a school nurse and attributed her suicide to the District's COVID-19 policies after she struggled with a severe case of long COVID. (Doc. 51-10, p. 44-46; Doc. 51-2, ¶ 35.) This interaction occurred before the start of the meeting.

On January 10, 2023, the Board held a meeting where Plaintiff planned to speak. He notified the Board of this intention in advance. (Doc. 51-18, ¶ 9.) Plaintiff arrived a few minutes late and sat in the audience without disruption, (Doc. 51-19, ¶¶ 15-16; Doc. 51-2, ¶ 49; Doc. 34, ¶ 75), but the public comment period had passed by the time Plaintiff arrived. After the Board concluded its business, but before the meeting was officially adjourned, Plaintiff raised his hand to speak but the Board did not acknowledge him.

After the public meeting was concluded, the Board moved into a closed session. Between the meetings, while no meeting was in session and other members of the public remained in the room, (Doc. 51-10, p. 53), Plaintiff approached the podium to read the speech he had intended to present at the meeting. (Doc. 51-19, ¶¶ 18-19; Doc. 51-10, p. 50.) Plaintiff was told the meeting was adjourned and Dennis Green, the School District's Director of Public Safety, and Officer Brayer, the School Resource Officer, approached Plaintiff. (Doc. 51-2, 1 ¶ 55; Doc. 51-10, pp. 51-52.) Green told Plaintiff he needed to leave, and Plaintiff said he believed he had a right to be there. (Doc. 51-2, ¶ 59-60; Doc. 51-12.) Green told Plaintiff that if he did not leave, Plaintiff

---

[2] The exact location and time are in dispute but immaterial to the legal analysis.

would be arrested. Officer Brayer approached Plaintiff to arrest him, and Plaintiff offered the officer his hands to be cuffed. (Doc. 51-10, pp. 52.) Green and Officer Brayer escorted Plaintiff out, while other members of the public were left in the room. (Doc. 51-2, ¶ 59; Doc. 51-10, pp. 52-53.) The entire interaction took, at most, three minutes.[3]

Herl acknowledges that Plaintiff never yelled or threatened anyone on January 10, 2023, and that he remained calm while speaking. (Doc. 51-18, ¶ 10; Doc. 51-10, pp. 54-55.) Nonetheless, after Plaintiff was escorted from the Board meeting, Herl asked Green whether he could press charges against Plaintiff and requested that Plaintiff be taken to jail. (Doc. 51-30.) Plaintiff spent the night in jail and was charged in Independence Municipal Court with trespassing.[4]

In January 2023, Independence School District Policy 1431 ("Policy 1431") proscribed adult visitor conduct in schools. It provided that "[a]ll employees, parents, patrons, and visitors will be expected to conduct themselves in a manner reflective of a positive role model for children. Public displays contrary to this expectation as provided in Regulation 1431 will result in sanctions which will limit a person's access to school activities and school premises." (Doc. 51-9.) Policy 1431 references and was accompanied by Regulation 1431, which lists examples of conduct considered to be contrary to the "positive role model" requirement. Examples included "[v]erbally aggressive behavior, which would include, but not be limited to, threats, intimidation, and profanity, . . . physical or violent behavior [,] . . . [and] [f]ailure to comply with the restricted access

---

[3] After Plaintiff began to speak, he was quickly cut off; after being cut off, Green and Officer Brayer intervened. All parties agree the public meeting was adjourned at 6:50 p.m. and text messages between Herl and Green after Plaintiff was escorted out are time stamped 6:53 p.m. (Doc. 51-10, p. 48; Doc. 51-30.) Thus, the interaction could not have lasted more than three minutes.

[4] Plaintiff was convicted at his municipal court bench trial, (Doc. 48-10), but appealed to the circuit court for a trial *de novo*. Before that trial proceeded, the city voluntarily dismissed the charge. (Doc. 48-11.) Plaintiff has no conviction on his record associated with the facts of this case.

provided in these regulations." (Doc. 51-13.) Policy 1431 and Regulation 1431 vest the Superintendent with the authority to impose restrictions following violations of the Policy. (Doc. 51-13; Doc. 51-10, p. 14.)

On January 11, 2023, Herl sent a letter to Plaintiff, stating that Plaintiff's activity on January 10, 2023 violated the Adult Code of Conduct contained in Policy 1431. (Doc. 51-33.) The letter banned Plaintiff from all District property for one year, expelled him from participation with ISD Academies and any other District committees, and prohibited him from contact with any students. (Doc. 51-33.) These restrictions are collectively referred to as the Ban. The letter also warned Plaintiff that violating the Ban by entering District property without permission from Herl would result in the District pursuing all available civil or criminal remedies. As a result of the Ban, Plaintiff was unable to attend at least 13 Board meetings in 2023 and could not submit himself as a candidate for the Board (because to do so would require entering school property).[5] (Doc. 51-2, ¶¶ 71-72; Doc. 51-10, pp. 30-31; Doc. 51-18, ¶¶ 20, 24-26.) Prior to the letter being sent, Plaintiff received no warning that his past conduct violated Board Policy. (Doc. 51-18, ¶ 16.)

At his deposition, Herl testified that he imposed the Ban based on four prior incidents: (1) the January 2022 interruption of Maglinger's presentation, (2) the conduct at the later PTA meeting and resulting conversation, (3) the conversation with Herl regarding the death of the nurse, and (4) the January 10, 2023 incident.[6] (Doc. 51-10, pp. 59-60.) Herl said that he perceived Plaintiff's past behavior as "aggressive" and a potential safety risk. (Doc. 51-10, pp. 39, 55.) When asked to clarify, Herl specified that he was concerned by Plaintiff's harsh questioning of him, accusations

_____

[5] The Court entered an Order Granting Preliminary Injunction ("Preliminary Injunction"), (Doc. 27), in December 2023, enjoining the District from restricting Plaintiff's access to School Board Meetings for the final month of the Ban.

[6] Herl also refers to this broader reasoning in his affidavit. (*See* Doc. 51-19, ¶ 38.)

from Plaintiff that he did not believe Herl was being truthful, Plaintiff's demeanor (raising his voice and leaning forward while speaking), and Plaintiff's discussion of the difficult personal experiences that inspired him to become passionate about education policy. (Doc. 51-10, pp. 33-40, 54.) Herl acknowledged that Plaintiff has never threatened him nor is he aware of any threatening behavior by Plaintiff in the past. (Doc. 51-10, pp. 39, 54.)

In July 2023, while the Ban was in effect, the Board replaced Policy 1431 with Policy C-155-P, which provides that "[a]ll visitors to school property or events must demonstrate appropriate behavior as good role models for the District's students." (Doc. 51-10, pp. 18-19; Doc. 51-14.) Policy C-155-P does not elaborate further on what constitutes a violation beyond "disruptive conduct" and "exceed[ing] the scope of permission granted[.]" It also states that "[t]he Superintendent . . . may limit or revoke permission to visit school property or parts of property at any time. The Superintendent . . . may inform the visitor that he or she is not welcome back on District property or at District events indefinitely or for a specific period of time." (Doc. 51-14.) While Policy C-155-P references disruption as prohibited conduct, Herl asserts that disruption is not the only basis for limiting or revoking school permission under this policy and he can impose such restrictions at any time he deems appropriate. (Doc. 51-10, p. 25.) When asked to describe the conduct prohibited under Policy C-155-P, Herl testified that what constitutes a "positive" or "good role model" or "appropriate" behavior is up to individual interpretation and may mean different things to different people. (Doc. 51-10, pp. 10-11, 18-20.) When asked how to know if an individual violated the Policy, Herl remarked that a person would realize when it was "pointed out to them" but offered no objective criteria or further explanation. (Doc. 51-10, p. 23.)

Neither policy contains a process for appealing violations, (Doc. 51-18, ¶¶ 17-18, 23); thus, enforcement of property restrictions is at Herl's sole discretion. (Doc. 51-10, pp. 4-6, 12,

17.)  Other Board policies allow for appeals to the School Board in similar situations, such as where students or employees are subject to discipline following violations of district policy.  (*See*, *e.g.*, Doc. 51-15; Doc. 51-16; Doc. 51-17.)

The prohibition on Plaintiff entering school property expired by its terms in January 2024. However, Plaintiff is still restricted from participation with ISD Academies because Herl does not believe Plaintiff is a good role model.  (Doc. 51-10, pp. 58.)  Plaintiff intends to once again be involved with the District and to speak out against the Board and Herl when he believes their actions merit criticism.  (Doc. 51-35, ¶¶ 3-6, 8; Doc. 51-2, ¶¶ 74-75.)

In September 2023, Plaintiff filed this case.  (Doc. 1.)  In the Amended Complaint, (Doc. 33), Plaintiff alleges five constitutional violations.  Each count is brought against each Defendant—the District, the Board, and Herl (in his individual capacity).

- Count I asserts that the Ban impermissibly restricted speech in a public forum, a First Amendment Violation.

- Count II claims the Ban is retaliation for the exercise of First Amendment protected speech.

- Count III claims that the Ban, Policy 1431, and Policy C-155-P violate procedural due process by not offering a meaningful opportunity to be heard.

- Count IV asserts that Policy 1431 and Policy C-155-P violate due process because they are vague.

- Count V is a facial challenge to Policy C-155-P, asserting that it per se violates the First Amendment.

Plaintiff seeks declaratory relief and nominal damages on each Count against all Defendants. Plaintiff also seeks a permanent injunction from the Court, enjoining the enforcement of (1) his continued restriction from ISD Academies, (2) Policy 1431, and (3) Policy C-155-P.

7

Defendants collectively filed a Motion for Partial Summary Judgment, (Doc. 47), on Counts II-V and on the defense of qualified immunity as it applies to Herl. Soon after, Plaintiff filed a cross-Motion for Summary Judgment, (Doc. 49), on all counts seeking all relief requested in the Amended Complaint. The Court resolves the Parties' arguments below.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only after a showing that "there is no genuine issue of material fact and [that party] is entitled to a judgment as a matter of law." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012); Fed. R. Civ. P. 56(c)). "A fact is material if it might affect the outcome of the suit," and a genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (cleaned up; citations omitted). "[A]ll justifiable inferences are to be drawn in favor of non-moving party." *Harry Stephens Farms, Inc. v. Wormald Americas., Inc.*, 571 F.3d 820, 821 (8th Cir. 2009) (per curiam) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986)). The non-moving party must point to evidence in the record demonstrating the existence of a factual dispute, Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909–10 (8th Cir. 2010), and "cannot rest solely on . . . [m]ere allegations, unsupported by specific facts or evidence . . . " *Morgan v. A.G. Edwards & Sons*, *Inc.*, 486 F.3d 1034, 1039 (8th Cir. 2007). Here, the parties agree on many material facts, but where material disputes exist, this Court resolves any inferences in Plaintiff's favor when resolving Defendants' Motion and in favor of the Defendants for Plaintiff's Motion.

### A. Summary judgment on Count I—alleging the Ban impermissibly restricted speech in a limited public forum—is granted to Plaintiff.

####      i.      First Amendment Violation

Speech which takes place in a public forum is protected under the First Amendment. *See McCullen v. Coakley*, 573 U.S. 464, 477 (2014). Whether and when a member of the public has a right to access the forum "differ[s] depending on the character of the property at issue." *Bowman v. White*, 444 F.3d 967, 974 (8th Cir. 2006). In the context of the First Amendment, a forum is characterized as either a traditional public forum, a designated public forum, or a limited public forum. *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R 7 Sch. Dist.*, 640 F.3d 329, 334 (8th Cir. 2011). Here, the parties agree that a public school board meeting is a limited public forum.[7] (*E.g.*, Doc. 51, p. 23; Doc. 56, p. 5.)

While the First Amendment provides fewer protections to speech in a limited public forum, any restrictions on speech in a limited public forum must still be "reasonable and viewpoint-neutral." *Victory Through Jesus Sports*, 640 F.3d at 335 (citing *Christian Legal Soc. Chapter of Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 2984 n.11 (2010)). Whether a restriction is reasonable depends on the purpose and circumstances of the forum. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 808 (1985); *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 49 (1983).

Schools are generally afforded greater latitude in managing conduct than other public entities,[8] but the full extent of a school's latitude reserved for educating children does not

---

[7] This conclusion is supported by *Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012). Plaintiffs claim that sporting events (which Plaintiff was also barred from attending) are also limited public fora, (Doc. 51, p. 24), but the Court believes it is unnecessary to the analysis to make that determination at this time.

[8] *See generally*, *Carey v. Brown*, 447 U.S. 455 (1980); *Goss v. Lopez*, 419 U.S. 565 (1975); *Dyer v. Atlanta Indep. Sch. Sys.*, 852 F. App'x 397 (11th Cir. 2021); *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999).

automatically apply when it allows public comment at a school board meeting. *Monroe v. Houston Indep. Sch. Dist.*, 794 F. App'x 381, 386 (5th Cir. 2019). In the context of a school board meeting, school officials can impose certain restrictions to "protect the public from . . . boisterous and threatening conduct," *Carey v. Brown*, 447 U.S. 455, 470 (1980) (citations omitted), including "remov[ing] an unruly or disruptive member of the audience to prevent his badgering, constant interruptions, and disregard for the rules of decorum." *Green v. Nocciero*, 676 F.3d 748, 753-54 (8th Cir. 2012) (internal quotations omitted).

However, a school may not exert unnecessary control over protected speech. Circuit courts have only upheld such limitations on protected speech where a true threat or disruption existed. *See*, *e.g.*, *Davison v. Rose*, 19 F.4th 626, 641 (4th Cir. 2021) (ban upheld for a speaker at a school board meeting who made allusions to the movie American Sniper, called the school a "target rich environment," and "made a reference to public officials meeting their creator"); *Lovern v. Edwards*, 190 F.3d 648, 656 (4th Cir. 1999) (ban upheld because of a "continuing pattern of verbal abuse and threatening behavior towards school officials," including phone harassment, repeated threats to report nonexistent illegal activity, and threats of frivolous lawsuits); *see also Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015) (property ban from the state senate building after one instance of disruption "clearly exceeds the bounds of reasonableness").

Similarly, district courts have found bans unreasonable where unfulfilled safety risks were alleged. *See*, *e.g.*, *Worthley v. Sch. Comm. of Gloucester*, 2023 WL 371034, at *6 (D. Mass. Jan. 24, 2023) (adult plaintiff solicited the number of a minor and texted her about personal topics; the resulting no trespass order was preliminarily enjoined as overbroad and unreasonable); *Coffelt v. Omaha Sch. Dist.*, 309 F. Supp. 3d 629, 632 (W.D. Ark. 2018) (plaintiff banned from the district after a heated argument where plaintiff cursed at the superintendent; ban preliminarily enjoined as

unreasonable); *Wilson v. N.E. Ind. Sch. Dist.*, 2015 WL 13716013, at *1, 5-6 (W.D. Tex. Sept. 30, 2015) (visitor grabbed a school official's fingers during a heated argument; the resulting school property ban was unreasonable); *Brown v. City of Jacksonville*, 2006 WL 385085, at *1 (M.D. Fla. Feb. 17, 2006) (plaintiff violated rules for public comment by swearing and was charged with resisting an officer after his removal; the ban from city council meetings was preliminarily enjoined as not appropriately tailored).

In this case, Plaintiff's speech has never reached the level of a true threat, and the evidence reflects only very minimal disruption. The Court first considers the events of the January 2023 meeting. Although Plaintiff arrived four minutes late to the meeting, no evidence suggests that he disrupted the meeting in doing so. Taking the facts as Herl alleges them, after the public meeting concluded, Plaintiff calmly began reading a speech, asserted that he had a right to be there and to speak, and allowed Green and Officer Brayer to escort him out when they insisted Plaintiff was trespassing. Defendants argue that in doing so Plaintiff delayed the beginning of a closed meeting. However, the uncontroverted evidence demonstrates otherwise. Herl acknowledged that the room was not cleared of other members of the public nor was any attempt made to clear the room of the other members of the public during the time Plaintiff spoke. Plaintiff's actions may have delayed some of Defendants' steps in advance of the closed meeting; but to the extent that this occurred, it was only for three minutes or less. Further, even if Plaintiff's conduct constituted a disruption, prohibiting Plaintiff from all District property for one year is not proportional to, and thus not justified by, Plaintiff's conduct on January 10, 2023 (even when taken in light most favorable to the Defendants).

The Court arrives as the same conclusion when considering the events of the January 2023 meeting in combination with the other events Herl discussed in his deposition and affidavit.

Construed in the light most favorable to Defendants, the first instance cited had Plaintiff raising his hand and speaking without acknowledgement during a presentation. During the second instance, Plaintiff stood silently in the back of a meeting, with his arms crossed, and a glare on his face.[9] The third incident involved a conversation where Plaintiff told Herl that Plaintiff believed Herl's COVID-19 policies were responsible for the death of a nurse. Over the course of the year these three incidents occurred, no one warned Plaintiff that his conduct violated school policy. Where Plaintiff attended Board meetings all year and these were the only instances of note during that time, any concerns of disruption could not be considered persistent or widespread. None of these instances are so disruptive as to justify such a broad Ban. Further, banning Plaintiff from all school contact for a year is not tailored to address these specific instances, as is required to survive a First Amendment challenge. Construed in Defendants' favor and giving the benefit of all reasonable inferences, the Ban was not proportionate, and thus not a reasonable response, to Plaintiff's conduct.

Consistent with the Court's conclusion when entering the Preliminary Injunction, (Doc. 27), a blanket ban from a limited public forum is not reasonable where no evidence of actual threat or disruption exists. Because of the unreasonable restriction on speech in a limited public forum, the Court concludes that, as a matter of law, the Ban violated the First Amendment to the extent that it unreasonably restricted Plaintiff's access to speak at a limited public forum.[10]

---

[9] Herl interpreted this instance as an attempt by Plaintiff to intimidate him. Assuming Plaintiff's intention is as Herl suspected, an intention to intimidate through crossed arms and a glare does not affect the analysis. Heated arguments, *Coffelt*, 309 F. Supp. at 632, or even physical contact, *Wilson*, 2015 WL 13716013, at *1, 5-6, were not enough to make similar bans reasonable. Consistent with other district courts, this Court concludes that an individual's intention on one occasion to intimidate a school official in a non-threatening manner does not make the year-long ban reasonable.

[10] The parties analyze the issue of prior restraint at length; however, the Court finds it is unnecessary to decide the issue given the Court's conclusion on the pure limited public forum issue.

ii.    <u>Relief Warranted</u>

a. *The School*

For this Count, Plaintiff seeks declaratory relief, nominal damages, and an injunction against all Defendants. While not discussed by the parties, the Court concludes that for all intents and purposes involved in this litigation, there is no meaningful distinction between the Board and the District. The Board makes policies for and is the governing body of the District and, in this case, the District takes no action that is not through the Board or Herl. Thus, the Court will refer to the Board and the District, collectively, as the "School."

For the School to be held liable for money damages, the Court must consider the role of the School in the offensive conduct. Section 1983 "plainly imposes liability on a government that, under color of some official policy, causes an employee to violate another's constitutional rights" where an "execution of a government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692, 694 (1978) (quotations omitted). "[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)); *see also Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405-06 (1997). Plaintiff argues that *Monell* liability applies here; Defendants do not respond to this claim. The parties do not dispute that the Board has the sole authority to create official District policy and passed Policy 1431, granting ultimate authority to enforce it to the Superintendent. The policy both allowed for the action in question and for Herl to take the action in question. Thus, the Court concludes implementation of the Ban was not simply Herl's individual action but an exercise of official policy. Therefore,

*Monell* liability attaches to the School; nominal damages are awarded to Plaintiff against the School on Count I.

### b. *Superintendent Herl*

Superintendent Herl, sued in his individual capacity, has raised the defense of qualified immunity on each count.  In suits under § 1983, "[q]ualified immunity shields [] state officials from money damages unless a plaintiff [proves] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Having concluded Herl violated Plaintiff's First Amendment right, the Court considers whether the right violated was clearly established at the time Herl sent the Ban letter.  "A right is clearly established if 'a reasonable official would understand that what he is doing violates that right.'" *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Existing precedent need not be directly on point, but it must place the constitutionality of the official's particular conduct "beyond debate." *Ashcroft*, 563 U.S. at 741.

The Court concludes that, at the time Herl issued the Ban, caselaw clearly established that restrictions on speech in a limited public forum must be reasonable and view-point neutral. *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 2984 n.11 (2010); *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 335 (8th Cir. 2011).  Further, at the time Herl issued the Ban, courts were clear that such bans were reasonable only in situations of threat, constant harassment, or consistent disruption.  *See Davison v. Rose*, 19 F.4th 626, 641 (4th Cir. 2021); *Jackson v. McCurry*, 762 F. App'x 919, 929 (11th Cir. 2019); *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 144 (3d Cir. 2017); *Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017); *Reza v. Pearce*, 806

F.3d 497, 505 (9th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 655-56 (4th Cir. 1999). As discussed above, the Court concludes the Ban was not reasonable as Plaintiff's conduct did not constitute an actual threat or disruption.

Although Defendants correctly point out that no Eighth Circuit case exists with exactly the same facts, that does not change the Court's conclusion. A plaintiff need not identify "a case directly on point," where "a robust consensus of persuasive authority" puts the "constitutional question 'beyond debate.'" *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023) (quoting *Ashcroft*, 563 U.S. at 741-42 (2011)). A sufficient number of courts have definitively concluded that an individual may be banned from speaking at a limited public forum only when the individual has engaged in actual threats or disruption. Thus, Herl was on notice that his actions violated well established law, his request for qualified immunity is denied and the Court awards nominal damages to Plaintiff.

### c. *Injunctive Relief*

Plaintiff asks the Court to enjoin the School and Herl from enforcing the Ban's restrictions on Plaintiff's ability to access limited public fora in the District. Plaintiff's request for injunctive relief on Count I is, however, moot. When an injurious provision or prohibition "expire[s] by [its] own terms," a plaintiff no longer presents a "live case or controversy." *Burke v. Barnes*, 479 U.S. 361, 363 (1987); *see also Trump v. Hawaii*, 583 U.S. 941, 941 (2017). The Eighth Circuit recently determined that the expiration of a similar ban mooted a claim for injunctive relief. *Rinne v. Camden Cnty.*, 65 F.4th 378, 385-86 (8th Cir. 2023). The Ban expired automatically in January 2024, making any injunction on its enforcement moot.

15

**B. Summary judgment on Count II—alleging that the Ban constituted impermissible retaliation against Plaintiff's exercise of his First Amendment rights—is denied as to both parties.**

    i.    <u>First Amendment Violation</u>

The First Amendment also protects citizens from state retaliation when they exercise their protected right to speech. A First Amendment retaliation claim requires that a plaintiff prove "(1) that he engaged in a constitutionally protected activity; (2) the defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated in part by his exercise of his constitutional rights." *Scheffler v. Molin,* 743 F.3d 619, 621 (8th Cir. 2014).

First, the parties agree that Plaintiff's criticisms of the District and Herl were protected speech, (*e.g.*, Doc. 56, p. 18); the Court agrees. "The First Amendment guarantees wide freedom in matters of adult public discourse," *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682-83 (1986), and criticism of public officials and the administration of governmental policies "lies at the heart of speech protected by the First Amendment." *Williams v. City of Carl Junction*, 480 F.3d 871, 874 (8th Cir. 2007). Political speech "is often vituperative, abusive, and inexact," yet nonetheless protected by the First Amendment. *Watts v. United States*, 394 U.S. 705, 708 (1969). Political speech which does not amount to a true threat or disruption is generally protected. *See id*. Plaintiff's criticisms were neither true threat nor disruption and are protected.

Second, the Court concludes the Ban was an adverse action which would chill protected speech. Whether a particular action would chill speech for First Amendment retaliation purposes "is an objective test: [t]he question is not whether the plaintiff [him]self was deterred . . ." *Rinne v. Camden Cnty.*, 65 F.4th 378, 383-84 (8th Cir. 2023). Prohibitions from entering government property imposed because of speaking to government officials are "concrete consequence[s]"

16

which are objectively chilling.  *Id.*  Further, a prohibition and threat of enforcement is sufficient to chill speech.  *Id.*  Consistent with the Eighth Circuits ruling in *Rinne*, the Court concludes Herl's imposition of the Ban is an objectively chilling adverse action—especially where the Ban letter threatens criminal and civil enforcement.

However, to be retaliation, the Ban must have been motivated by Plaintiff's protected speech.  To prove motivation, the Plaintiff must prove that a protected act is the "but-for" cause of the state's retaliatory action.  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019). When considering the undisputed facts, the Court cannot conclude whether, in imposing the Ban, Herl was motivated by protected speech.  Herl testified that he imposed the Ban because of four instances: (1) in January 2022, when Plaintiff raised his hand and briefly interrupted a presentation,[11] (2) in Spring 2022, when Plaintiff crossed his arms and glared while watching Herl give a presentation to the PTA and the pair had a tense conversation afterwards, (3) sometime in 2022, when Plaintiff told Herl his policy decisions resulted in the death of a nurse, and (4) the January 10, 2023 incident at the school board meeting.  Herl's list includes both unprotected conduct and protected speech and the parties agree that the at least two of the instances constitute protected speech.  (Doc. 51, p. 35; Doc. 56, p. 18.)  Further, in testifying as to why these incidents were significant enough to motivate the Ban, Herl repeatedly invoked Plaintiff's protected speech.[12]  Plaintiff argues that this evidence

---

[11] Whether Plaintiff interrupted the presentation to ask this question is in dispute.  Consistent with the requirement to considering disputed facts in the light most favorable to the nonmoving party, the Court takes Defendants' view of events here.

[12] For example, Herl justifies the inclusion of the second incident by calling it an attempt to intimidate him.  When asked in his deposition to explain why Herl believed Plaintiff was intimidating him, Herl said it was because Plaintiff was "aggressive."  When asked what aggressive meant, Herl specifically cited instances of Plaintiff's protected speech including that: Plaintiff regularly asks pointed questions to Herl (in his official capacity) and sends many passionate emails; Plaintiff has accused Herl of lying within his position as superintendent; in conversations with Herl, Plaintiff cites his prior personal struggles as reasons for his passion for education; and Plaintiff accused him of trying to run teachers off or transfer them to get them to leave the district.  Herl later clarified that Plaintiff did not "shout" and that Plaintiff had never threatened him or anyone else.

17

shows Herl issued the Ban in retaliation for Plaintiff's long history of protected speech and suggest that reference to the disruptive incidents is mere pretext. However, Defendants argue that the Ban was based solely on Plaintiff's conduct in Board meetings January 2022 and January 2023, without regard to Plaintiff's speech, and that therefore the instances of speech were not but-for causes of the Ban.

Whether Herl would have issued the Ban but for Plaintiff's exercise of his First Amendment Rights is a disputed fact that the Court cannot resolve on the record before it. Causation is usually a question of fact, unless "the question is 'so free from doubt as to justify taking it from the jury.'" *Ricketts v. City of Columbia, Mo.*, 36 F.3d 775, 779 (8th Cir. 1994) (quoting *Trudeau v. Wyrick*, 713 F.2d 1360, 1366–67 (8th Cir. 1983)); *see also Naucke v. City of Park Hills*, 284 F.3d 923 (8th Cir. 2002) (summary judgment was not appropriate in a First Amendment retaliation case because motivation is a jury question and the evidence did not otherwise resolve the issue beyond doubt). Determining motivation here requires finding the fact of causation, which is in dispute. After hearing the evidence, a reasonable factfinder could determine that Herl implemented the Ban to punish Plaintiff for criticizing him and the School. Conversely, a factfinder could determine Herl implemented the Ban because of Plaintiff's arrest and what Herl perceived as Plaintiff's attempts at intimidation. Therefore, neither party is entitled to summary judgment on Count II because the third prong of retaliation is still in contention.[13]

    ii.    <u>Qualified Immunity</u>

Herl also argues that, even if he improperly retaliated against Plaintiff, he is entitled to qualified immunity. Because Defendants raise the issue of qualified immunity, the Court presumes

---

[13] Plaintiff asserts that, should he ultimately succeed on Count II, the appropriate remedy includes ordering the School to restore Plaintiff's prior role at ISD academies. While the Court need not decide the issue at this time, it doubts whether this remedy is appropriate to impose.

all facts in favor of Plaintiff. The above analysis demonstrates a factfinder could find Herl improperly retaliated against Plaintiff. Thus, qualified immunity applies only if Plaintiff's right to be free from retaliation was not clearly established when Herl sent the Ban letter. The Eighth Circuit, in *Rinne*, held that "it was clearly established [in 2021] that a government official may not retaliate against a citizen for the exercise of his First Amendment rights." 65 F.4th at 384 (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)); *Baribeau v. City of Minneapolis*, 596 F.3d 465, 480–81 (8th Cir. 2010). Taking the facts in the light most favorable to Plaintiff and therefore presuming First Amendment speech motivated the Ban, the law was clearly established that a retaliatory ban violated Plaintiff's First Amendment rights. Herl is not entitled to qualified immunity on Count II.

### C. Summary judgment on Count III—alleging that the Ban and school policies associated with it deprive Plaintiff of his procedural due process rights—is granted as to Plaintiff.

i. Due Process Violation

Whether procedural due process is implicated in state action depends upon a showing that (1) there exists a protected life, liberty, or property interest at stake, and (2) that sufficient process was not provided to protect that interest. *Krentz v. Robertson*, 228 F.3d 897, 902 (8th Cir. 2000). Process usually comes in the form of notice and an appropriate opportunity to be heard. *Jones v. Flowers*, 547 U.S. 220, 223 (2006).

The parties dispute whether the Ban restricts a liberty or property interest. Defendants characterize the proposed interest as an unfettered right to access school property, which, as they demonstrate, is neither a liberty nor property right.[14] However, Plaintiff characterizes the claim

---

[14] "A parent does not have the right to unfettered access to school property." *Miller v. Montgomery Cnty. R-II Sch. Dist., Bd. of Educ.*, 2011 WL 1299536, at *3 (E.D. Mo. Apr. 1, 2011) (citing *Porter v. Duval Cty. Sch. Bd., No. 10–11944*, 2010 WL 5395641, at *2 (11th Cir. Dec. 30, 2010); *see also Lovern v. Edwards*, 190 F.3d 648, 656 (4th Cir.1999)).

not as a right to enter school property, but as a liberty interest in engaging in free speech in a limited public forum. Defendants do not address this argument, and the Court agrees with Plaintiff that such an interest is protected under the Due Process Clause.

In the context of due process, "there can be no doubt that the meaning of 'liberty' must be broad indeed." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972). In determining whether an interest is protected as a liberty interest by the Fourteenth Amendment, courts consider "not [] the weight but [] the nature of the interest at stake." *Id.* (quotations omitted). The freedom of speech was incorporated to the states through the Fourteenth Amendment Due Process Clause. *Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 707 (1931). In explaining why, the Supreme Court remarked that it would be "impossible to conclude that this essential personal liberty of the citizen was left unprotected by the general guaranty of fundamental rights of person and property." *Id.* at 707. Accordingly, the Court concludes the First Amendment freedom of speech constitutes a due process liberty interest.[15]

Given that Plaintiff had a protected liberty interest in his free speech right to access the limited public forum, the Court must next determine what process Plaintiff is due before that interest can be taken from him. "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005) (quoting *Baldwin v. Hale*, 1 Wall. 223, 233 (1864)). Plaintiff does not challenge the use of the letter as notice for the Ban; he challenges the lack of an opportunity to appeal the Ban.

---

[15] This conclusion was also accepted in *Am. C.L. of Missouri Found. v. Lombardi*, 23 F. Supp. 3d 1055, 1062 (W.D. Mo. 2014) and *Wilson v. N. E. Indep. Sch. Dist.*, 2015 WL 13716013 (W.D. Tex. Sept. 30, 2015), and is supported by *Rinne v. Camden Cnty.*, 2024 WL 3203317, *6-7 (W.D. Mo. June 27, 2024).

"The fundamental requisite of due process of law is the opportunity to be heard," *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). The Due Process Clause requires not just an opportunity to be heard, but an opportunity "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). These requirements for a meaningful opportunity to be heard exist even in the school context. As the Supreme Court remarked in *Goss v. Lopez*, "[w]e do not believe that school authorities must be totally free from notice and hearing requirements if their schools are to operate with acceptable efficiency." 419 U.S. 565, 581 (1975).

Policies 1431 and C-155-P do not specify any form of formal appeal process or opportunity to be heard. Plaintiff claims he received no opportunity to be heard, let alone a meaningful one. Defendants assert that the Ban letter provided an opportunity to appeal by stating "plaintiff could receive permission" to enter school property during the period of the Ban. (Doc. 48, p. 11, 17.) However, the Ban letter actually warns Plaintiff: "[i]f you enter school property without [Herl's] permission, it will be considered trespassing by the School District and local law enforcement authorities will be called." Mention of an exception couched in a threat cannot be considered a meaningful invitation to be heard. Further, the sole discretion and appeal permission is vested in Herl, the individual who initially implemented the Ban. Even in the context of school conduct violations, where free speech is concerned, sufficient opportunity to be heard will not be found in a request to reconsider directed at the same person who imposed the Ban.[16] Contrary to Defendants' contentions, the Court concludes Plaintiff had no opportunity to be heard.

In considering what process is due, courts must weigh (1) the private interest affected; (2) the risk of erroneous deprivation; (3) and the government's interest, including the fiscal and

---

[16] This is especially true in the First Amendment context where, one person's "[u]nbridled discretion in" licensing is suspect because of the opportunity for censorship. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988).

administrative burdens of additional procedures. *Mathews*, 424 U.S. at 335. Procedural due process is "flexible" and highly dependent on the demands of a particular situation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "Where a pre-deprivation hearing is impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligation by providing the latter." *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir.1984), *cert. denied*, 469 U.S. 932 (1984).

Here, where the School may need to remove a disruptive or threatening person to properly carry out business, a pre-deprivation process is impractical. However, a post-deprivation appeal allows the school to protect its interests in efficiently carrying out business without depriving an individual of the necessary opportunity to be heard. In considering the *Mathews v. Eldridge* factors, the Court concludes that a policy permitting a school official to prohibit access to limited public fora requires some post-deprivation hearing. First, the private liberty interest at stake is the ability to exercise freedom of speech—an important interest worthy of procedural safeguards. Second, as demonstrated by the outcome of Count I, the policy at issue can easily lead to erroneous deprivation. Further, by placing sole discretion for enforcement on one person, the policy increases the risk of retaliatory or ad hoc deprivation. *Cf. City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988). Finally, this Court is not persuaded that imposing further process would cause much burden for the government, especially where the District already has policies in place for other similar disciplinary matters which provide for a hearing before the Board. These policies show the feasibility and the practicality of a post-deprivation hearing before a neutral body within the context of the School. The Court rejects Defendants' argument that providing an opportunity to be heard negatively impacts the School's interest in preventing disruptions, as a post-deprivation process does not affect the School's ability to remove a disruptive person in the moment. Where the burden to the government is relatively light and the private interest and

22

opportunity for erroneous enforcement are weighty, due process requires an opportunity to be heard through an appeal of the Superintendent's decision.

The Court does not go so far as to create for the District a new policy which complies with due process—especially not without briefing from the parties—but the Court concludes that due process is violated where Policy 1431 restricted and C-155-P restricts a person from speaking in a limited public forum without a meaningful opportunity to be heard through some type of appeal process.

ii.  Relief Warranted

Plaintiff seeks injunctive relief only as to Policy C-155-P against all Defendants.[17] Where Policy C-155-P is applied to restrict an individual's access to limited public fora, Herl and the School are enjoined from enforcing the restriction without providing the individual a meaningful opportunity to be heard through an appeal process.

 Plaintiff also seeks nominal damages against all Defendants. Nominal damages are appropriate where Plaintiff can prove "a completed violation of a legal right" occurred. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021). Although Plaintiff was never subjected to Policy C-155-P, he was subjected to Policy 1431 via the Ban, which violated due process. This completed violation of due process entitles Plaintiff to nominal damages. As discussed above, the

---

[17] Although not disputed by Defendant, the Court is required to determine whether Plaintiff has standing to seek injunctive relief over Policy C-155-P, a policy that has yet to be enforced against him. To have standing to seek injunctive relief, a plaintiff must demonstrate (1) he is "under threat of suffering a concrete and particularized injury," (2) the threat must be "actual and imminent," and (3) it must be "fairly traceable to the challenged action of the Defendant." *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016). "A plaintiff claiming an abridgment of the right to free speech has standing to seek preenforcement review of a policy under circumstances that render the threatened enforcement sufficiently imminent." *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 666 (8th Cir. 2023) (internal quotations omitted); *see also Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979). Plaintiff intends to continue to criticize the District and Herl when he believes it is merited, and Herl has stated he believes Plaintiff is not a good role model, contrary to Policy C-155-P, granting him authority to remove Plaintiff from the school on those grounds. Because of Herl's opinions of Plaintiff and his current role as the final decisionmaker, Plaintiff is at risk of having Policy C-155-P enforced against him, fulfilling the requirements of preenforcement standing.

Court concludes that the Board and the District are liable under *Monell*. Because application of Policy 1431 against Plaintiff infringed his constitutional right to due process, the Court awards nominal damages to Plaintiff against the School on Count III.

The Court next considers Herl's qualified immunity defense. While the concepts and framework of procedural due process are well established, the Court has not uncovered, and Plaintiff does not provide, more than a few district court cases which discuss these concepts and apply the law to similar circumstances. Therefore, it cannot be clearly established that Plaintiff had a liberty interest in the limited public forum for speech which would be violated by either policy. Thus, Herl is protected by qualified immunity on this Count.

### D. Summary judgment on Count IV—alleging that Policies 1431 and C-155-P are unconstitutionally vague—is granted in part as to Plaintiff.

In Count IV, Plaintiff challenges Policies 1431 and C-155-P, arguing that language requiring visitors to the School to be "good" or "positive" role models violates due process by being unconstitutionally vague. As discussed below, Plaintiff challenges each policy differently. Plaintiff challenges Policy 1431 as it was applied to Plaintiff's conduct (forming the justification for the Ban), whereas Plaintiff challenges Policy C-155-P on its face as vague in that it fails to give proper notice of what conduct is prohibited.

When a policy fails to "provide adequate notice of the proscribed conduct" and "lend[s] itself to arbitrary enforcement," then that policy is unconstitutionally vague, in violation of procedural due process. *United States v. Barraza*, 576 F.3d 798, 806 (8th Cir. 2009). Where a term is unmodified, undefined, and broad in meaning, it is too vague to "provide adequate notice of the proscribed conduct." *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 668 (8th Cir. 2023). Further, when a policy is open to highly subjective or "unpredictable interpretations," the policy creates a risk of arbitrary enforcement, as officials are left to determine

on an "ad hoc and subjective basis" what is a violation.  *Id.*  As Defendants concede, the Eighth

Circuit has held that "school disciplinary rules need not be as detailed as a criminal code [,] . . .

[b]ut when a school policy reaches speech protected by the First Amendment, the vagueness

doctrine demands a greater degree of specificity than in other contexts."  *Parents Defending Educ.*,

83 F.4th at 668 (quotation omitted).

For example, a school board policy which turns on whether conduct is "respectful" was

found void for vagueness by the Eighth Circuit.  *Id.* at 668-69.  Further, words like "disorderly" or

"annoy" without more instruction have also been held void for vagueness in criminal statutes.  *See*,

*e.g.*, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, (1972); *Coates v. City of Cincinnati*,

402 U.S. 611, 614 (1971);  *Groppi v. Froehlich*, 311 F. Supp. 765, 770 (W.D. Wis. 1970).  A

policy based on "appropriateness" for minors has also been held "fatally vague."  *See Fayetteville*

*Pub. Libr. v. Crawford County*, 2023 WL 4845636, at *17 (W.D. Ark. July 29, 2023)

Plaintiff first challenges Policy 1431 as vague as it was applied to him through the Ban.

As applied challenges ask whether a statute or ordinance sufficiently put a plaintiff on notice that

his particular conduct would be considered a violation, and whether the vagueness in the law

resulted in an arbitrary application in the plaintiff's case. *United States v. Stupka*, 418 F. Supp. 3d

402, 406 (N.D. Iowa 2019) (citing *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 258

(2012)).  An as applied challenge must necessarily analyze the law in the context of the plaintiff's

allegedly violative conduct.

As the Court noted in the analysis for Count II, the reasoning for the Ban is in dispute,

which includes what conduct allegedly violated Policy 1431.  Without knowing what conduct to

analyze, the Court cannot resolve this claim.[18]  Because questions of fact essential to the analysis remain in contention, the Court denies summary judgment on this claim for both parties.

Plaintiff challenges Policy C-155-P on its face.[19]  Policy C-155-P requires visitors to "demonstrate appropriate behavior as good role models for the District's students."  It also prohibits "disruptive conduct" and "exceed[ing] the scope of permission granted."  The Superintendent is vested with the authority to "limit or revoke permission to visit school property" indefinitely "at any time" Herl deems "appropriate."

A policy is facially vague where "no standard of conduct is specified at all," such that "men of common intelligence must necessarily guess at its meaning." *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S. Ct. 1686, 1688, 29 L. Ed. 2d 214 (1971) (as opposed to "an imprecise but comprehensible normative standard").  Facial challenges succeed where a plaintiff can "demonstrate that the law is impermissibly vague in all of its applications."  *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982).  However, a vague provision is not constitutionally acceptable merely because "there is some conduct that clearly falls within the provision's grasp."  *Johnson v. United States*, 576 U.S. 591, 602 (2015).  Further, "[i]n evaluating a facial challenge to a state law, a federal court must . . . consider any limiting construction that a state court or enforcement agency has proffered."  *Ward v. Rock Against Racism*, 491 U.S. 781, 795-96 (1989) (citation omitted).

Plaintiff's challenge is a pre-enforcement challenge – Policy C-155-P has not been applied to him and Plaintiff provides no examples of how the policy has been applied to others.  In arguing

---

[18] The conclusion to defer ruling is necessitated by the need to fully develop a legal and factual record before deciding this type of challenge.  *United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016).

[19] Plaintiff has standing to challenge Policy C-155-P in this Count for the same reasons he could challenge it in Count IV.  Preenforcement standing applies to void for vagueness challenges.  *See Parents Defending Educ.*, 83 F.4th at 666-67.

the Policy provides insufficient notice of what conduct is covered and places unfettered discretion in the hand of the superintendent, Plaintiff primarily focuses on Herl's deposition testimony in which he stated that his ability to remove visitors from school is not dependent upon the "disruptive conduct" modifier and that he can revoke permission to visit the school at any time he deems appropriate. (Doc. 51-10, p. 25.) Herl admits that what does or does not qualify as a "good role model" or "appropriate" behavior "[i]s up for everyone's interpretation to some extent" and that the School does not have any further definition of what would violate the requirement. Herl was unable to give a more precise definition, nor do any of the policies reference any helpful modifiers.[20] *Id.* Herl acknowledged in his deposition that visitors would have to be told they violated Policy C-155-P to know for sure whether they had.

Herl's testimony certainly gives the Court pause as to whether the language of the policy provides sufficient notice of proscribed conduct and whether the policy is susceptible to arbitrary enforcement using subjective criteria. However, the parties briefing only analyzes the Policy in very broad terms and fails to discuss the legal standard applied to a pre-enforcement vagueness challenge that intersects with the First Amendment. Without additional briefing and discussion of a fairly complex issue, the Court denies summary judgment to both parties as this time.

**E. Summary judgment on Count V—alleging Policy C-155-P violates the First Amendment on its face—is granted as to Defendants.**

Finally, Count V brings a facial challenge against Policy C-155-P claiming that it violates the First Amendment by being overbroad and by unconstitutionally restricting free speech. To be unconstitutional, a statute must be "substantially overbroad" so much so that the "application of the provision will lead to the suppression of speech." *Nat'l Endowment for the Arts v. Finley*, 524

---

[20] In fact, his deposition suggests the restrictions allowed in the policy are without limit at all and that Herl is not confined to finding a violation of policy in order to permanently restrict a person from District property.

U.S. 569, 580 (1998).  The regulation must "prohibit[] a substantial amount of protected speech relative to its plainly legitimate sweep" meaning it must be "far more likely to restrict protected speech than it is to serve any appropriate purpose." *United States v. Hansen*, 599 U.S. 762, 770 (2023) (internal quotations omitted). "Facial challenges to statutes that restrict speech are granted 'sparingly and only as a last resort.'"  *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 337 (8th Cir. 2011) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

Having a policy that allows the Superintendent to prohibit a person from attending school board meetings, even though they are limited public fora, is not per se unreasonable.  Clearly, circumstances exist where school officials may need to prohibit a person from attending school board meetings and courts have upheld such prohibitions.[21]  Thus, the policy serves an appropriate purpose, and the question becomes whether it is more likely to restrict protected speech than serve the legitimate purpose. Plaintiffs argue that by permitting the superintendent to limit or revoke access to school property at any time, the Policy is likely to restrict more prohibited speech than serve a legitimate purpose.  The Court disagrees.  The fact that Defendants misused or even abused their discretion regarding an otherwise constitutional policy on one occasion and have the potential to do so on future occasions does not make the policy unconstitutional.  Policy C-155-P does not facially violate the First Amendment.  Plaintiff's motion for summary judgment on Count V is denied; Defendant's motion for summary judgment on Count V is granted.[22]

---

[21] *See, e.g.*, *Dyer v. Atlanta Indep. Sch. Sys.*, 852 F. App'x 397 (11th Cir. 2021); *see also Monroe v. Houston Indep. Sch. Dist.*, 794 F. App'x 381, 386 (5th Cir. 2019).

[22] Therefore, the Court need not determine whether Herl is entitled to qualified immunity.

## III. CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. Plaintiff's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. The Court orders the following:

- On Count I, Plaintiff is granted summary judgment. The Court awards declaratory relief, nominal damages, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 against all Defendants.

- On Count II, summary judgment is denied for both parties.

- On Count III, Plaintiff is granted summary judgment. The Court awards declaratory relief and enjoins Defendants from enforcing Policy C-155-P by banning members of the public from limited public fora without some process for appeal to the School Board or another authority beyond the Superintendent. Plaintiff is awarded nominal damages and reasonable attorney's fees as to the District and the Board. Qualified immunity applies to Herl on Count III.

- For Count IV, summary judgment is denied for both parties.

- For Count V, Defendants are granted summary judgment and Count V is dismissed.

The entirety of Counts II and IV remain. The case proceeds to trial solely on these claims.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: October 11, 2024          UNITED STATES DISTRICT COURT